## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

GREEN STAR ENERGY SOLUTIONS, LLC,

*Plaintiff*,

vs.

EDISON PROPERTIES, LLC, EDISON
CONSTRUCTION MANAGEMENT, LLC, UA
BUILDERS CORP., PASQUALE SURIANO
and JOE PIPIA,

*Defendants*.

Case No.: 1:21-cv-02682-LJL

**OMNIBUS MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
SEVER CLAIMS, TRANSFER VENUE AND EXTEND TIME TO ANSWER**

**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
(973) 228-5700
*Attorneys for Defendants Edison Properties,
LLC, Pasquale Suriano, Edison
Construction Management, LLC and Joseph
Pipia*

On the Brief:
Michael H. Ansell, Esq.

BE:11695685.1/EDI022-279842

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................ iv

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ...................................................................................2

LEGAL ARGUMENT..........................................................................................5

    I.     The Removed Case Is A Core Proceeding To The Hollister Bankruptcy, Or At Least Related To The Hollister Bankruptcy, Thereby Giving The Bankruptcy Court Jurisdiction ..........................................................................5

          A.    The Bankruptcy Court has Jurisdiction over the Claims Related to the New Jersey Project Asserted in the Removed Case...................................5

          B.    The Removed Case is a "Core" Proceeding ................................................8

    II.    The Claims Related To The New Jersey Project Should Be Severed From The Claims Related To The New York Project ....................................................13

          A.    Green Star's Claims Arise out of Different Transactions and/or Occurrences.................................................................................................15

          B.    Green Star's Claims Present Different Questions of Law and Fact..........16

          C.    Settlement of the Claims and Judicial Economy will be Facilitated by Severance ...................................................................................................17

          D.    Prejudice will be Avoided by Granting Severance ...................................18

          E.    Different Witnesses and Evidence are Required for the Separate Claims .......................................................................................................19

    III.    Transfer Of The Claims Related To The New Jersey Project Asserted In The Removed Case To The United States District Court For The District Of New Jersey, For Referral to The United States Bankruptcy Court For The District Of New Jersey, Is Appropriate..................................................................20

          A.    Transfer is Appropriate Under Section § 1412 .........................................21

                1.    The Interests of Justice and Judicial Economy Favor Transfer to the Bankruptcy Court for the District of New Jersey ...............22

                2.    The Remaining Factors Support Transfer......................................23

ii

      B.    In the Alternative, Defendants have met the Threshold for Transfer under Section 1404(a) ...................................................................................26

IV.   The Court Should Grant Defendant's Motion to Extend Time To Answer Or Otherwise Plead ..........................................................................................................26

CONCLUSION.............................................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re 1031 Tax Group, LLC,*
    397 B.R. 670 (Bankr. S.D.N.Y. 2008) ....................................................................12

*A.H. Robins Co. v. Piccinin,*
    788 F.2d 994 (4th Cir. 1986) .........................................................................11, 12

*Alessi v. Monroe Cnty.,*
    No. 07-cv-6163 (MAT), 2008 WL 398509 (W.D.N.Y. Feb. 12, 2008) .................17

*In re Ames Dep't Stores, Inc.,*
    190 B.R. 157 (S.D.N.Y. 1995) ..........................................................................5, 6

*Berman v. Informix Corp.,*
    30 F. Supp. 2d. 653 (S.D.N.Y. 1998) ....................................................................26

*In re Best Prods. Co., Inc.,*
    68 F.3d 26 (2d Cir. 1995) ...............................................................................5, 6, 9

*Blam v. Smart Source, LLC,*
    No. 17-CV-9142 (SHS), 2018 WL 2021762 (S.D.N.Y. Apr. 12, 2018) ................27

*Bond Street Assocs. v. Ames Dep't Stores,*
    174 B.R. 28 (S.D.N.Y. 1994) ................................................................................7

*Burnette v. Racette,*
    No. 92-CV-0785E(F), 1993 WL 328048 (W.D.N.Y. Aug. 9, 1993) ....................27

*In re Calpine Corp.,*
    365 B.R. 401 (S.D.N.Y. 2007) ............................................................................13

*Capitol Records, LLC v. Greene,*
    No. 5:07-CV-0969, 2008 WL 11355365 (N.D.N.Y. Nov. 5, 2008) .....................27

*Celotex Corp. v. Edwards,*
    514 U.S. 300 (1995) ..........................................................................................5, 6

*Chi. Rock Island & Pac. R.R. Co. v. Williams,*
    245 F.2d 397 (8th Cir. 1957) ...............................................................................14

*Comprehensive Care Corp. v. Bank of Tokyo Trust Co.,*
    1991 WL 150220 (S.D.N.Y. July 30, 1991) ........................................................22

iv

*In re Cuyahoga Equip. Corp.*,
    980 F.2d 110 (2d Cir. 1992)............................................................................5

*In re Enron Corp.*,
    349 B.R. 108 (Bankr. S.D.N.Y. 2006) .........................................................9

*Goggins v. Alliance Capital Mgmt, L.P.*,
    279 F. Supp. 2d 228 (S.D.N.Y. 2003)........................................................22

*Hershman v. UnumProvident Corp.*,
    658 F. Supp. 2d 598 (S.D.N.Y. 2009)........................................................25

*ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*,
    565 B.R. 241 (Bankr. S.D.N.Y. 2017) .......................................................26

*In re Labrum & Doak, LLP*,
    No. 98-0826, 1999 WL 138875 (Bankr. E.D. Pa. Mar. 11, 1999).............10

*In re Lehman Brothers Holdings Inc.*,
    594 B.R. 33 (Bankr. S.D.N.Y. 2018) .........................................................20

*Lustgraaf v. Behrens (In re Green)*,
    No. 8:08-cv-335, 2012 WL 5050594 (Bankr. D. Neb. Oct. 18, 2012), *adopted*
    *by sub nom. Lustgraaf v. Sunset Fin. Servs., Inc.,* 2012 WL 5996955 (D. Neb.
    Nov. 7, 2012) ..............................................................................................14

*In re Masterwear Corp.*,
    241 B.R. 511 (Bankr. S.D.N.Y. 1999) .........................................................7

*Mastr. Asset Backed Sec. Trust 2007-WMC1 et. rel. U.S. Bank Nat. Assn v. WMC*
    *Mortgage LLC*,
    880 F. Supp. 2d 418 (S.D.N.Y. 2012)..........................................17, 22, 24

*In re Millenium Seacarriers, Inc.*,
    458 F.3d 92 (2d Cir. 2006).........................................................................5, 8

*Mt. McKinley Ins. Co. v. Corning Inc.*,
    399 F.3d 436 (2d Cir. 2005).........................................................................9

*N. Jersey Media Grp. Inc. v. Fox News Network, LLC*,
    312 F.R.D. 111 (S.D.N.Y. 2015) ..........................................................14, 15

*Orange Theatre Corp. v. Rayherstz Amusement Corp.*,
    139 F.2d 871 (3d Cir. 1944)........................................................................27

*Pawaroo v. Countrywide Bank*,
    No. CV-09-2924 (ARR), 2009 WL 4544359 (E.D.N.Y. Nov. 30, 2009)...............27

*In re Petrie Retail*,
    304 F.3d 223 (2d Cir. 2002)..................................................................*passim*

*Prospect Capital Corp. v. Bender*,
    2009 WL 4907121 (S.D.N.Y. Dec. 21, 2009) .......................................................15

*In re PSINet, Inc.*,
    271 B.R. 1 (Bankr. S.D.N.Y. 2001) ...................................................................9

*Queenie, Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003)...........................................................................11

*In re River Ctr. Holdings*,
    288 B.R. 59 (Bankr. S.D.N.Y. 2003) ...................................................................7

*Robertson v. Cartinhour*,
    2011 WL 5175597 (S.D.N.Y. Oct. 28, 2011) ........................................................25

*S.E.C. v. Pignatiello*,
    No. 97-cv-Civ. 9303, 1998 WL 293988 (S.D.N.Y. June 5, 1998) .........................................16

*Smartmantic USA Corp. v. Dominion Voting Systems Corp.*,
    2013 WL 5798986 (S.D.N.Y. Oct. 22, 2013) .......................................................21

*Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*,
    215 F.R.D. 621 (D. Kan. 2003)...................................................................15, 19

*In re Hollister Construction Services, LLC*,
    Case No. 19-27439 (MBK) (Bankr. D.N.J.) ...........................................................1, 2

*In re United Health Care Organization*,
    210 B.R. 228 (Bankr. S.D.N.Y. 1997) ..................................................................13

*In re United States Lines, Inc.*,
    197 F.3d 631 (2d Cir. 1999)...................................................................9, 10, 11

*Weisman v. Southeast Hotel Props. Ltd. P'ship*,
    1992 U.S. Dist. LEXIS 7736 (S.D.N.Y. June 3, 1992)..................................................7

*In re Winimo Realty Corp.*,
    270 B.R. 108 (Bankr. S.D.N.Y. 2001) ..................................................................7

*In re WorldCom, Inc. Sec. Litig.*,
    293 B.R. 308 (Bankr. S.D.N.Y. 2003) ..................................................................7

*Yahoo, Inc. v. Nakchan*,
    No. 08 CIV. 4581 LTS THK, 2011 WL 666678 (S.D.N.Y. Feb. 22, 2011)..........................27

**Federal Statutes**

28 U.S.C. § 157.....................................................................................................7, 8, 9, 10

28 U.S.C. § 1334(b)....................................................................................................5, 8, 20

28 U.S.C. § 1404(a)............................................................................................20, 21, 23, 26

28 U.S.C. § 1412..............................................................................................20, 21, 23, 25

28 U.S.C. § 1452(a)........................................................................................................5

Bankruptcy Code § 362(a)(1)...........................................................................................11

**Rules**

Bankruptcy Rule 9006(b)(1)..............................................................................................26

Fed. R. Bankr. P. 7021...................................................................................................14

Fed. R. Bankr. P. § 7022..................................................................................................4

Fed. R. Bankr. R. § 9019.................................................................................................3

Fed. R. Civ. P. 6(b).......................................................................................................26

Fed. R. Civ. P. 21....................................................................................................14, 15

Fed. R. Civ. P. § 22........................................................................................................4

Rule 10b–5...............................................................................................................16

S.D.N.Y. Rule 9006-2.....................................................................................................26

## PRELIMINARY STATEMENT

In an effort to avoid the jurisdiction of the United State Bankruptcy Court for the District of New Jersey and the lack of personal jurisdiction over Defendants Edison Properties, LLC ("Edison Properties") and Pasquale Suriano ("Suriano"), Plaintiff Green Star Energy Solutions, LLC ("Green Star" or "Plaintiff") mis-joined unrelated defendants and claims in a single Complaint filed in the New York State Supreme Court, New York County.  However, Green Star's claims related to a project in New Jersey are inextricably intertwined with, and core proceedings to a pending bankruptcy in the United States Bankruptcy Court for the District of New Jersey filed by Hollister Construction Services, LLC ("Hollister").  This fact is evidenced by Green Star's filing of a Proof of Claim in the bankruptcy proceeding filed by Hollister captioned *In re Hollister Construction Services, LLC,* Case No. 19-27439 (MBK) (Bankr. D.N.J.),  pending in the United States Bankruptcy Court for the District of New Jersey (the "Hollister Bankruptcy"), for the same amount and covering the same period as it now seeks from Edison Properties and Suriano in this action.  Moreover, the New Jersey Project claims filed by Green Star in this action are also likely precluded by a Settlement Agreement and Channeling Injunction in the Hollister Bankruptcy.

As a result, Defendants Edison Properties, Edison Construction Management. LLC ("ECM"), Suriano, and Joseph Pipia (collectively, "Defendants"), hereby respectfully move for an Order:  (i) to sever the claims related to the work at 110 Edison Place, Newark, Jersey (the "New Jersey Project"), from the other claims against Defendants related to work at 543 West 43rd Street, New York, New York (the "New York Project"); (ii) to transfer venue of the New Jersey Project claims to the Hollister Bankruptcy, before the Honorable Michael B. Kaplan as arising in or related to the pending bankruptcy matter of *In re Hollister Construction Services, LLC,* Case No. 19-27439 (MBK) (Bankr. D.N.J. filed on September 11, 2019); and (iii) extending Defendants' time

to Answer or otherwise respond to Green Star's Complaint until after the Court issues a decision on the severance and transfer of venue.

## <u>STATEMENT OF FACTS</u>

On or around September 7, 2018, Newark Warehouse Urban Renewal, LLC ("NWUR"), a New Jersey limited liability company affiliated with Defendant, Edison Properties, LLC, entered into a General Contractor Construction Contract (among other contracts) (together with all amendments, the "3rd Floor Office Fit Out Contract") with Hollister for the construction of a project more commonly referred to as 110 Edison Place, Newark, NJ  07102 (the "New Jersey Project").  *See* Declaration of Pasquale Suriano, dated April 5, 2021 ("Suriano Decl."), at ¶ 5 and **Exhibit A**.  After entering into the 3rd Floor Fit Out Contract with NWUR, Hollister engaged Green Star as one of its subcontractors on the New Jersey Project for the 3rd Floor Fit Out.  *See* Declaration of Michael H. Ansell, Esq., dated April 5, 2021 ("Ansell Decl."), at ¶ 4 and **Exhibit A** at ¶ 19.

On September 11, 2019, Hollister filed a voluntary Chapter 11 petition commencing a bankruptcy case, *In re Hollister Construction Services, LLC,* Case No. 19-27439 (MBK), that remains pending in the United States Bankruptcy Court for the District of New Jersey (the "Hollister Bankruptcy"). *See* Ansell Decl. at ¶ 5; Hollister Bankruptcy ECF No. 1.  In the Hollister Bankruptcy, Hollister identified Plaintiff Green Star as a creditor, for services Green Star rendered to Hollister on the New Jersey Project arising out of the 3rd Floor Fit Out Contract, which were allegedly unpaid by Hollister.  *See* Ansell Decl. at ¶ 6; Hollister Bankruptcy ECF No. 198 at p. 19. The Hollister Bankruptcy has been ongoing since September 11, 2019 and is being administered by Judge Michael B. Kaplan in the District of New Jersey Bankruptcy Court.  *See* Ansell Decl. at ¶ 7; Hollister Bankruptcy ECF No. 3.

On November 21, 2019, Green Star filed a Proof of Claim in the Hollister Bankruptcy with Hollister's Claims Agent, Prime Clerk, in the amount of $220,060.58, for "[s]ervices performed per contract at 110 Edison Place, Newark, NJ", i.e. the New Jersey Project.  *See* Ansell Decl. at ¶ 8 and **Exhibit B**.  Attached to Green Star's Proof of Claim is an Application and Certification for Payment identified by Green Star as "RFP # 8 110 Edison Green Star 9-26-19," for the period through May 30, 2019 for the New Jersey Project.  *See* Ansell Decl. at ¶ 9 and **Exhibit B**.

On or about July 20, 2020, Hollister, NWUR and its affiliate, Newark Warehouse Redevelopment Company ("the NWUR Entities") filed a Joint Motion to Approve a Settlement and Compromise pursuant to Fed. R. Bankr. R. § 9019 regarding claims by and between Hollister, the NWUR Entities and all of the NWUR Entities' affiliates, assigns, employees, and agents, including Defendants Edison Properties, ECM, Suriano, and Pipia (the "NWUR Parties") arising from Hollister's services as the general contractor on the New Jersey Project.  *See* Ansell Decl. at ¶ 10; Hollister Bankruptcy ECF No. 1263.  On or about July 6, 2020, Hollister filed an Adversary Complaint against all of its creditors who had filed construction liens against the New Jersey Project and *quantum meruit* claims against the NWUR Parties, seeking approval of a Channeling Injunction requiring lien claimants and *quantum meruit* claimants relating to the New Jersey Project, to seek payment through a separate claim fund and release all parties, including Edison Properties, LLC, Edison Construction Management, LLC, Suriano, and Pipia as affiliated and/or employees of NWUR.  The Adversary Proceeding is entitled *Hollister Construction Services, LLC v. Arch Insurance Company, et. al.*, 20-1396(MBK).  *See* Ansell Decl. at ¶ 11; Hollister Bankruptcy ECF No. 1237.

On January 8, 2021, the District of New Jersey Bankruptcy Court entered an Order approving the Settlement Agreement.  *See* Ansell Decl. at ¶ 12; Hollister Bankruptcy ECF No.

1598.  On the same date, the District of New Jersey Bankruptcy Court entered an Order in the Adversary Proceeding approving the Channeling Injunction.  *See* Ansell Decl. at ¶ 13; Hollister Bankruptcy Adversary ECF No. 58.

Following Bankruptcy Court approval of the Settlement, on or about February 26, 2021, Green Star commenced this case in the Supreme Court of the State of New York[1] under the docket *Green Star Energy Solutions, LLC v. Edison Properties, LLC, et al..,* Index No. 651345/2021 (the "Removed Case"), which includes claims stemming from its work on the New Jersey Project that are the subject of the Hollister Bankruptcy and which are the subject of Green Star's Proof of Claim filed in the Hollister Bankruptcy.  *See* Ansell Decl. at ¶ 14 and **Exhibit A**.

The Removed Case asserts claims against Defendants arising out of Green Star's work on the New Jersey Project pursuant to its contract with Hollister and as previously asserted by Green Star in its Proof of Claim in the Hollister Bankruptcy.  *See* Ansell Decl. at ¶ 15; *compare* **Exhibit A** with **Exhibit B**.

On March 29, 2021, Defendants filed a Notice of Removal, removing this case from the Supreme Court of the State of New York to this Court (the "Removed Case").  *See* Ansell Decl. at ¶ 16; ECF No. 1.

---

[1]    Greenstar joined the wrong parties in this lawsuit and Defendants reserve all rights, including the right to interplead pursuant to Fed. R. Civ. P. § 22 and Fed. R. Bankr. P. § 7022.

## LEGAL ARGUMENT

I.   **The Removed Case Is A Core Proceeding To The Hollister Bankruptcy, Or At Least Related To The Hollister Bankruptcy, Thereby Giving The Bankruptcy Court Jurisdiction.**

This proceeding was removed to this Court pursuant to 28 U.S.C. § 1452(a), which governs "Removal of claims related to bankruptcy cases."  28 U.S.C. § 1452(a).  The district courts have jurisdiction over, *inter alia,* all civil proceedings arising under, arising in a case under or related to a case under title 11.  *See* 28 U.S.C. § 1334(b).  The Removed Case unquestionably falls within the District of New Jersey's bankruptcy jurisdiction because each of the claims asserted by Green Star related to the New Jersey Project is "related to a case under title 11," *i.e.,* the Hollister Bankruptcy, and is in fact a "core" proceeding to the Hollister Bankruptcy.

A.   **The Bankruptcy Court has Jurisdiction over the Claims Related to the New Jersey Project Asserted in the Removed Case.**

The scope of bankruptcy jurisdiction is broad.  *See In re Millenium Seacarriers, Inc.,* 458 F.3d 92, 95 (2d Cir. 2006); *In re Petrie Retail,* 304 F.3d 223, 229 (2d Cir. 2002) ("Congress ... intended that the [bankruptcy court's] jurisdiction would be construed as broadly as possible ..."); *In re Best Prods. Co., Inc.,* 68 F.3d 26, 30-31 (2d Cir. 1995).  A proceeding is within bankruptcy jurisdiction under § 1334(b) if its outcome might have any "conceivable effect" on the bankruptcy estate.  *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 114 (2d Cir. 1992) (citation omitted); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n.6 (1995) ("...whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy ... (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original)).  A proceeding is within bankruptcy jurisdiction if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  *In re Ames Dep't Stores,*

*Inc.,* 190 B.R. 157, 160 (S.D.N.Y. 1995) (quoting *Pacor,* 743 F.2d at 994); *see also Celotex*, 514 U.S. at 308 n.6 (same).  The proceeding "need not necessarily be against the debtor or against the debtor's property."  Ames Dep't Stores, 190 B.R. at 160 (quoting *Pacor,* 743 F.2d at 994); *see also Celotex,* 514 U.S. at 308 n.6 (same); *In re Petrie Retail*, 304 F.3d at 230-31 (bankruptcy court had jurisdiction over contract dispute between two non-debtor parties); *In re Best Prods. Co., Inc.,* 68 F.3d at 31-32 (bankruptcy court had jurisdiction to enforce pre-petition subordination agreement between two creditors).

The Removed Case is a civil proceeding that is directly related to the Hollister Bankruptcy in multiple respects.  Specifically, the Removed Case asserts a claim related to the New Jersey Project that was subject to the Settlement Agreement with Hollister and the Channeling Injunction issued in the Hollister Bankruptcy requiring lien claimants on the Project and parties who asserted *quantum meruit* claims against the NWUR Parties and their officers and affiliates (i.e. Edison Properties and Pasquale Suriano) to seek payment through a separate claim fund established in the Hollister Bankruptcy.  *See* Ansell Decl. at ¶ 17(a); Hollister Bankruptcy ECF Nos. 1263, 1237, 1598, Hollister Bankruptcy Adversary ECF No. 58.  The fact that Hollister, an indispensable party, was not named as a party in the Removed Case does not preclude it from being related to the Hollister Bankruptcy.  *See Celotex Corp. v. Edwards,* 514 U.S. 300, 308, n.6 (1995) ("the proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to a bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.") (citation omitted).

Moreover, the Complaint in the Removed Case alleges that Defendants owe Green Star $220,060.58 for work performed by Green Star on the New Jersey Project through May 30, 2019

pursuant to Green Star's subcontract with Hollister. *See* Ansell Decl. at ¶ 17(b) and **Exhibit A** at ¶¶ 19, 33-34. Green Star filed a Proof of Claim in the Hollister Bankruptcy in the amount of $220,060.58, for "[s]ervices performed per contract at 110 Edison Place, Newark, NJ" (*i.e.* the New Jersey Project) through May 30, 2019. *See* Ansell Decl. at ¶ 17(c) and **Exhibit B** at pp. 2, 8. Thus, the claims asserted in the Removed Case are, in substance and effect, the same claims asserted by Green Star in its Proof of Claim in the Hollister Bankruptcy, which itself renders the claims related to the New Jersey Project in the Removed Case a core proceeding. *See* 28 U.S.C. § 157(b)(2); *In re Winimo Realty Corp.,* 270 B.R. 108, 120 & n.7 (Bankr. S.D.N.Y. 2001) ("The fact that a defendant, by filing a proof of claim subjected itself to the Bankruptcy Court's equitable jurisdiction may by itself be a sufficient basis for finding a proceeding core") (citations omitted).

Moreover, "[i]n litigation involving non-debtors, 'relatedness' often turns on the estate's obligation to indemnify the losing party." *In re River Ctr. Holdings,* 288 B.R. 59, 65 (Bankr. S.D.N.Y. 2003) (citation and internal quotation marks omitted); *In re WorldCom, Inc. Sec. Litig.,* 293 B.R. 308, 321 (Bankr. S.D.N.Y. 2003) (bankruptcy jurisdiction over underlying non-debtor litigation because of defendant's potential right to contribution from debtor); *Bond Street Assocs. v. Ames Dep't Stores,* 174 B.R. 28, 32-33 (S.D.N.Y. 1994) (bankruptcy jurisdiction over underlying claim against non-debtor even in the absence of an indemnification agreement where third party defendant would "normally have a claim" for indemnification against the debtor); *Weisman v. Southeast Hotel Props. Ltd. P'ship,* 1992 U.S. Dist. LEXIS 7736, at *11-12 (S.D.N.Y. June 3, 1992) (bankruptcy jurisdiction over underlying claim because of contractual right to indemnification from debtor); *In re Masterwear Corp.,* 241 B.R. 511, 515-17 (Bankr. S.D.N.Y. 1999) (same). In this matter, pursuant to Article 19.1.1 of Hollister's contract with NWUR for the New Jersey Project, Hollister is obligated to defend and indemnify NWUR from any and all claims

arising from Hollister's work on the New Jersey Project. *See* Suriano Decl., **Exhibit A** at Article 19.1.1. This indemnification obligation extends to all of the "Indemnities" identified in Section 1.5.3.1 of Exhibit F of the contract, which includes Edison Properties, ECM, and any of their officers, directors, members, employees, agents and/or consultants. *See* Suriano Decl., **Exhibit A** at Exhibit F, § 1.5.3.1.

Thus, the claims related to the New Jersey Project asserted in the Removed Case clearly meet the test for bankruptcy jurisdiction under 28 U.S.C. § 1334(b).

### B.   <u>The Removed Case is a "Core" Proceeding</u>.

The Removed Case is not merely within the jurisdiction of the New Jersey Bankruptcy Court under 28 U.S.C. § 1334(b), it is so interconnected with and interrelated to Hollister Bankruptcy that it is a "core" proceeding under 28 U.S.C. § 157 because it:  (i) concerns issues and claims similar and in some respects identical to those claims Green Star asserted in its Proof of Claim in the Hollister Bankruptcy; (ii) asserts a claim related to the New Jersey Project that was subject to the Settlement Agreement between Hollister, the NWUR Parties, and which is subject to the Channeling Injunction issued in the Hollister Bankruptcy requiring lien claimants' *quantum meruit* claims on the New Jersey Project to seek payment through a separate claim fund established pursuant to the Hollister Settlement in the Hollister Bankruptcy and release the NWUR Parties; (iii) relates to the administration of the Hollister estate; and (iv) may affect the allowance or disallowance of claims against the Hollister estate and the claim fund established for the payment of such claims.

The concept of "core" is functional and "the limits of the concept are interpreted to be close to or congruent with constitutional limits." *Millenium Seacarriers*, 458 F.3d at 95 (citation and internal quotation marks omitted); *In re Petrie Retail,* 304 F.3d at 230-31 (same). Broad "core"

jurisdiction is "essential to the efficient administration of bankruptcy proceedings." *In re Petrie Retail*, 304 F.3d at 229 (citation and internal quotation marks omitted); *see also In re Best Prods. Co., Inc.,* 68 F.3d at 31 (a broad interpretation of "core" is supported by the legislative history of § 157); *In re Enron Corp.,* 349 B.R. 108, 111 (Bankr. S.D.N.Y. 2006) ("core" is to be given a broad interpretation).

The fact that a proceeding involves a pre-petition contract, as the Removed Case, does not imply it is not a "core" proceeding. *See In re Petrie Retail,* 304 F.3d at 229-31 (holding that bankruptcy court had "core" jurisdiction over dispute concerning pre-petition lease); *In re United States Lines, Inc.,* 197 F.3d 631, 638 (2d Cir. 1999) ("[n]otwithstanding that the Trust's claims are upon pre-petition contracts, we conclude that the ... proceedings [are] core."*); In re PSINet, Inc.,* 271 B.R. 1, 25-26 (Bankr. S.D.N.Y. 2001) (proceeding seeking to re-characterize pre-petition lease was "core"). Whether it is "core" depends instead, on its actual interrelationship with what may occur in the bankruptcy case and turns upon "the degree to which the proceeding is independent of the reorganization." *Mt. McKinley Ins. Co. v. Corning Inc.,* 399 F.3d 436, 448 (2d Cir. 2005) (quoting *In re United States Lines, Inc.*, 197 F.3d at 637); *In re PSINet, Inc.,* 271 B.R. at 26 (finding that proceeding so interconnected with bankruptcy case, and thus core, because, inter alia, "at least five analytically separate issues under title 11 will turn on [the proceeding's] result, and none of [the title 11 issues] could be determined without [first resolving the proceeding] in one way or another. ..."). Thus, disputes involving pre-petition contracts may be "core" where the proceeding is so interconnected with the reorganization that it is not independent of the reorganization. *Id.*

Moreover, "'[p]roceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function.'" *Mt. McKinley,* 399 F.3d at 448 (quoting *In re United*

9

*States Lines, Inc.,* 197 F.3d at 637)).  The Removed Case meets both tests because it is "not independent" of the Hollister Bankruptcy.  First, it is "uniquely affected" by the Hollister Bankruptcy.  *See In re Petrie Retail,* 304 F.3d at 229-31 (dispute between two non-debtors over pre-petition lease was core, *inter alia,* because dispute was contingent upon interpretation of lease in connection with one party's disputed claims against the debtors).  Second, it directly affects several core bankruptcy functions in the Chapter 11 Cases.  *In re United States Lines, Inc.,* 197 F.3d at 638 (effect of pre-petition contracts "on other core bankruptcy functions... render[ed] the proceedings core.").  The Removed Case affects Hollister's estate and at least four "core" functions of the New Jersey Bankruptcy Court: (i) allowance of claims against Hollister's estate; (ii) equality of treatment and debtor-creditor relations; (iii) enforcement of the automatic stay; and (iv) administration of the estate.  Secondly, the Removed Case is dependent on and "uniquely affected" by, or duplicative of, two other "core" functions: (i) Chapter 11 plan confirmation; (ii) and the interpretation and applicability of the Settlement Agreement and Channeling Injunction; and (iii) the effect of Green Star's claims on all of Hollister's claimants on the New Jersey Project currently limited to the claims fund.  *See* 28 U.S.C. § 157(b)(2)(A), (B), (G), (H), (L) and (O).

First, the Removed Case will affect the claim allowance process, the equality of treatment among creditors and debtor-creditor relationships.  Defendants may be contractually entitled to indemnification from Hollister in the Removed Case for claims related to the New Jersey Project. *See* Suriano Dec., **Exhibit A** at § 19.1.  That indemnity claim may affect the recoveries of other creditors in the Hollister Bankruptcy, specifically those subject to the claims fund pursuant to the Settlement Agreement and Channeling Injunction. *See In re Labrum & Doak, LLP*, No. 98-0826, 1999 WL 138875, at *9 (Bankr. E.D. Pa. Mar. 11, 1999) (removed proceeding is "core" because it sought "to litigate what are in effect claims of creditors against the Debtor's estate").

Moreover, the Removed Case is an attempt to "recover a claim against the debtor" within the scope of § 362(a)(1) of the Bankruptcy Code.  Green Star's claims against Defendants related to the New Jersey Project are *de facto* claims against Hollister intended to enhance Green Star's recovery at the expense of other creditors of Hollister, either by establishing additional wrongful conduct by Hollister related to the New Jersey Project as already covered by the Settlement Agreement and Channeling Injunction; or by recovering from Defendants so as to trigger Defendants' indemnification rights against Hollister.  *See In re United States Lines, Inc.,* 197 F.3d at 638 (pre-petition contract interpretation is "core" because of effect on "core" function of equality of distribution).

Second, the Removed Case affects the "core" functions of the automatic stay.  The stay has multiple functions, one of which is to protect the estate from proceedings to recover a pre-petition claim against a debtor. *See* 11 U.S.C. § 362(a)(1).  While Green Star's Complaint does not name Hollister, (an indispensable party) a judgment against Defendants will automatically trigger and fix the amount of Defendants' indemnity rights, and the only basis for Green Star's claims against Defendants is the fact that they provided services to the New Jersey Project pursuant to a contract **with Hollister**.  It is a function of the automatic stay to protect a non-debtor indemnitee of a debtor, such as Defendants in this case, where the debtor is the real party defendant.  *See Queenie, Ltd. v. Nygard Int'l,* 321 F.3d 282, 287 (2d Cir. 2003) ("The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate."); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (extension of the automatic stay to non-debtors where "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case").  Thus, the Removed Case impairs this "core" function.

Another "core" function of the stay is to protect the estate from claims against non-debtors where prosecution of those claims "threaten to thwart or frustrate the debtor's reorganization efforts and the injunction is important for an effective reorganization and when the claims against the non-debtors and the claims against the debtor are inextricably interwoven, presenting common questions of law and fact, which can be resolved in one proceeding." *In re 1031 Tax Group, LLC,* 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008) (internal citations and quotation marks omitted).  As set forth above, the issues raised by the Removed Case are inextricably interwoven with issues that must be decided in the Hollister Bankruptcy in connection with plan confirmation, the Settlement Agreement between Hollister and NWUR, and the Channeling Injunction limiting recovery by all claimants related to the New Jersey Project to the claims fund.

Moreover, the stay also protects the estate from (i) risk of inconsistent judgments, (ii) exposure to risks of collateral estoppel or *res judicata,* and (iii) the potential burden and distraction of the debtor's management that may divert its manpower from reorganization to defending litigation.  *See In re 1031 Tax Group, LLC*, 397 B.R. at 684 (citing *In re Granite Partners,* 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996) (relying on *Manville* and *Robins* in delineating factors courts should consider when determining whether to stay actions against non-debtors)).  All of these "core" functions of the stay will be affected or impaired by prosecution of the claims related to the New Jersey Project asserted in the Removed Case outside of the Hollister Bankruptcy.

Third, the Removed Case is "core" because the Hollister's key personnel in the reorganization will be subject to discovery, which will hinder the Hollister's reorganization efforts and could expose those officers to claims for their conduct in connection with Green Star's claims related to the New Jersey Project, thereby affecting the administration of the Hollister estate. *See* § 157(b)(2)(A).  Discovery in the Removed Case will inevitably center on the dealings and

12

negotiations of Hollister with Green Star concerning the New Jersey Project, and, thus, discovery in the Removed Case will overlap and duplicate discovery in the Hollister Bankruptcy.

Discovery of Hollister and its officers and/or employees could also interfere with the proper administration of Hollister's estate by diverting these officers' and employees' time and attention from the ultimate goal of successfully confirming a Chapter 11 plan for Hollister and focusing it on the protection of their own interests. *See In re Calpine Corp.,* 365 B.R. 401, 410-13 (S.D.N.Y. 2007) (upholding grant of stay because the amount of time member of the Debtors' team could devote to the restructuring activities would be diminished by discovery and trial preparation); *In re United Health Care Organization,* 210 B.R. 228, 232 (Bankr. S.D.N.Y. 1997) (noting that stays have been granted where "the bankrupt estate would be adversely effected [sic] because the creditor's action ... would consume time and energy of the non-debtor that would otherwise be devoted to a reorganization effort." (citations omitted)).

For all of these reasons, the Removed Case is "core", requiring that claims arising from the New Jersey Project be transferred to the Hollister Bankruptcy.

## II.     The Claims Related To The New Jersey Project Should Be Severed From The Claims Related To The New York Project.

Green Star's Complaint alleges various causes of action against different defendants arising from different contracts, with different owners and general contractor, for different construction projects, in different states. The claims related to the New Jersey Project have no common facts with the claims related to the New York Project and they were merely asserted in the same Complaint to defeat diversity jurisdiction of this Court. More significantly, the claims related to the New Jersey Project are encompassed within the Settlement Agreement and Channeling Injunction in the Hollister Bankruptcy, and are subject to the claims fund established pursuant to the Settlement Agreement and Channeling Injunction and/or otherwise impact the assets of the

13

estate of Hollister in the Hollister Bankruptcy.  As such, the severance of the claims related to the New Jersey Project is necessary.

Bankruptcy Procedure provides that the Court may "sever any claim against a party."  Fed. R. Civ. P. 21; Fed. R. Bankr. P. 7021.  The Court enjoys broad discretion to sever claims under Rule 21.  *See Chi. Rock Island & Pac. R.R. Co. v. Williams,* 245 F.2d 397, 404 (8th Cir. 1957) (finding Rule 21, along with other procedural rules, gives the court "broad discretion in these matters of procedure"); *Lustgraaf v. Behrens (In re Green),* No. 8:08-cv-335, 2012 WL 5050594, at *2 (Bankr. D. Neb. Oct. 18, 2012) (stating Rule 21 gives the court "broad discretion to sever separate and discrete claims"), *adopted by sub nom. Lustgraaf v. Sunset Fin. Servs., Inc.,* 2012 WL 5996955 (D. Neb. Nov. 7, 2012).  The Court may not, however, separate "an essentially unitary issue."  *In re Green,* 2012 WL 5050594, at *2 (citing *McDowell Welding & Pipefitting, Inc. v. U.S. Gypsum Co.,* 285 B.R. 460, 471 (D. Or. 2002)).

"In deciding whether to sever a claim under Rule 21, courts consider: "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015) (internal quotations and citations omitted).  "Courts within this Circuit have stated that '[s]everence requires the presence of only one of these conditions." *Id.* at 114-15 (quoting *Cestone v. General Cigar Holdings, Inc.*, No. 00-cv-3686 (RCC), 2002 WL 424654, at *2 (S.D.N.Y. March 18, 2002) (internal citation omitted).

"Courts may order a Rule 21 severance when it will serve the ends of justice and further the prompt and efficient disposition of litigation." *Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 623 (D. Kan. 2003).  "Severance is particularly appropriate where ... the court determines that venue should be transferred as to some claims or parties." *Id.* at 624.  It is well established that a transferor Court may sever claims and transfer those defendants as to whom venue is proper in the transferee Court.  *See Moore 's Federal Practice 3d,* § 111.12[2][a] ("When one or more defendants as to whom venue would not have been proper in the transferee district are 'alleged to be only indirectly connected' to the events that form the main subject matter of the action, the court in which the action was originally brought may sever the claims against these defendants and transfer the action against the remaining defendants to the more convenient forum.").  Severance may be accomplished under Fed. R. Civ. P. 21, which provides that a Court may "sever any claim against a party."  Fed. R. Civ. P. 21*; see also Prospect Capital Corp. v. Bender,* 2009 WL 4907121 (S.D.N.Y. Dec. 21, 2009) (granting order severing and transferring claims against certain defendants).

### A.     Green Star's Claims Arise out of Different Transactions and/or Occurrences.

The first factor the Court considers in determining whether to sever claims is whether the claims arise out of the same transaction or occurrence.  "While '[t]here is no rigid rule as to what constitutes the same series of transactions or occurrences,' courts 'repeatedly have interpreted the phrase 'same transaction' to encompass 'all logically related claims.'" *N. Jersey Media Grp. Inc.*, 312 F.R.D. at 115 (quoting *Agnesini v. Doctor's Assoc. Inc.*, 275 F.R.D. 456, 458–59 (S.D.N.Y. 2011) (internal citations omitted)).  This factor clearly weighs in favor of severance.

In its Complaint, Green Star acknowledges that there are two (2) separate properties in two (2) different states for which Green Star was retained to provide HVAC services.  *See* Ansell Decl.,

**Exhibit A** at ¶¶ 9, 19, 47.  Specifically, Green Star entered into a subcontract with Hollister on September 18, 2018 to perform work on the New Jersey Project.  *See* Ansell Decl., **Exhibit A** at ¶ 19.  Green Star's claims related to the New Jersey Project arise from allegations against only Defendants Edison Properties and Suriano claiming fraudulent inducement into its contract with Hollister, non-payment for work performed on the New Jersey Project , and the solicitation and/or hiring of Green Star's employees for work on the New Jersey Project (which are categorically denied).  *See* Ansell Decl., **Exhibit A** at ¶¶ 14-46.  Green Star entered into a subcontract with Defendant UA Builders on or about November 30, 2018 to perform work on the New York Project. *See* Ansell Decl., **Exhibit A** at ¶ 47.  Green Star's claims related to the New York Project arise from allegations against Defendants ECM, Suriano, and Pipia claiming non-payment for work performed on the New York Project.  *See* Ansell Decl., **Exhibit A** at ¶¶ 47-57.  Thus, Green Star's claims as to the New Jersey Project and the New York Project are clearly and significantly different from one another, as they involve different work performed by Green Star, on different properties, in different states, pursuant to different subcontracts, with different general contractors, and are asserted against different defendants.  Therefore, the first factor weighs in favor of severing Green Star's claims related to the New Jersey Project from those claims related to the New York Project.

## B.    <u>Green Star's Claims Present Different Questions of Law and Fact.</u>

The second factor, whether the severable claims present common questions of law or fact, also weighs in favor of severance.  Courts have severed claims under circumstances where the statutory basis of the claims are the same but the facts underlying those claims are different.  *See S.E.C. v. Pignatiello*, No. 97-cv-Civ. 9303 (SWK), 1998 WL 293988, at *3 (S.D.N.Y. June 5, 1998) (granting severance of two claims asserting securities fraud under Section 10(b) and Rule 10b–5 based on two separate securities fraud schemes where each claim involved different co-

defendants, different common stock, a different contract, different start dates, and a different method of compensating the defendant and the only similarities were that both schemes were organized by the defendant and aided and abetted by the same individuals); *Alessi v. Monroe Cnty.*, No. 07-cv-6163 (MAT), 2008 WL 398509, at *2 (W.D.N.Y. Feb. 12, 2008) (severing claims that asserted violations of the First Amendment and New York Human Rights law where each plaintiff had separate dealings with the defendant and their claims arose out of separate incidents).

Here, again, Green Star's claims related to the New Jersey Project and the New York Project involve different work performed by Green Star, on different projects, in different states, pursuant to different contracts, with different general contractors. Thus, although Green Star has asserted overlapping common law claims against Defendants, the facts underlying those claims are distinct. Therefore, Green Star's claims related to the New Jersey Project and the New York Project do not present common questions of law or fact.

### C.    Settlement of the Claims and Judicial Economy will be Facilitated by <u>Severance</u>

Judicial economy strongly favors the severance of Green Star's claims related to the New Jersey Project from the claims related to the New York Project. As set forth in Section I, *supra*, the New Jersey Project claims are "core" or at least related to the Hollister Bankruptcy. Significantly, the New Jersey Bankruptcy Court has already presided over a nearly identical Adversary Proceeding in the matter of *Hollister Construction Services, LLC v. Arch Insurance Company, et. al.*, Adv. No.: 20-1396-MBK, which approved a settlement on all other *quantum meruit* claimants to the New Jersey Project. *See* Ansell Decl. at ¶ 11; Hollister Bankruptcy ECF No. 1237; *see also Mastr. Asset Backed Sec. Trust 2007-WMC1 et. rel. U.S. Bank Nat. Assn v. WMC Mortgage LLC*, 880 F. Supp. 2d 418, 424 (S.D.N.Y. 2012) ("It would be a waste of resources

— for both the parties and the judiciary — to have the same issues litigated in two separate courts, forcing the defendant to litigate in separate forums . . .")

Moreover, litigation of the claims related to the New Jersey Project asserted in the Removed Case belongs in a New Jersey forum pursuant to the General Contract between Hollister and NWUR, the terms of which Green Star agreed to be bound before beginning work on the New Jersey Project, as the parties agreed that the General Contract would be "governed by the laws of the State of New Jersey," and Green Star would be subject to "the personal jurisdiction of the Courts of the State of New Jersey." *See* Suriano Decl., **Exhibit A** at ¶ 10.16.  Moreover, the New Jersey Project was located in Newark, New Jersey, as are Defendants Edison Properties and Suriano, to whom Green Star's claims related to the New Jersey Project are directed.  Likewise, the work in question was provided in the State of New Jersey.  Green Star has also filed a Proof of Claim with the United States Bankruptcy Court for the District of New Jersey against Hollister for the same balance which it now claims is owed by the Defendants.

Accordingly, severance of the claims related to the New Jersey Project for transfer to the New Jersey Bankruptcy Court will facilitate judicial economy.

### D. <u>Prejudice will be Avoided by Granting Severance</u>.

Likewise, the fourth factor, whether prejudice would be avoided if severance is granted, weighs in favor of severance.  As set forth in Section I, *supra*, Green Star's claims should be subject to the Settlement Injunction and Channeling Injunction in the Hollister Bankruptcy.  In fact, the NWUR Parties entered into the Settlement Agreement and provided funding to the claims fund for the express purpose of resolving all claims related to the New Jersey Project in the Hollister Bankruptcy.  *See* Hollister Bankruptcy ECF Nos. 1237, 1263, 1598; Hollister Bankruptcy Adversary ECF No. 58.  If Green Star is able to avoid compliance with the Channeling Injunction,

it could open the door to other claims against the NWUR Parties related to the New Jersey Project, undermining the Settlement Agreement and claims fund. Moreover, as set forth further in Section I, *supra*, Green Star's claims against Defendants related to the New Jersey Project may invoke Hollister's defense and indemnification obligations to Defendants. If these claims are not severed and transferred to the New Jersey Bankruptcy Court, Defendants will be further prejudiced by their lack of recourse against Hollister, an indispensable party.

Moreover, Green Star will be prejudiced if the claims related to the New Jersey Project are not severed. By removing the complexities involved in the Hollister Bankruptcy, Green Star will be able to have its claims related to the New York Project more efficiently adjudicated.

**E**.     **Different Witnesses and Evidence are Required for the Separate Claims.**

Evidence and testimony related to the work performed by Green Star on these different projects, the contracts between Green Star and the general contractors, the payments received by Green Star, and the payments alleged by Green Star to remain outstanding will be completely distinct. Thus, the evidence and testimony required to establish Green Star's claims related to the New Jersey Project will be unrelated to the evidence and testimony required to establish Green Star's claims related to the New Jersey Project.

Based on the foregoing, all five of the enumerated factors weigh in favor of severance. In addition to the enumerated factors, there is further support for severance because "[s]everance is particularly appropriate where ... the court determines that venue should be transferred as to some claims or parties." *Tab Exp. Int'l, Inc.*, 215 F.R.D. at 624. Here, as set forth in Section III, *infra*, severance is appropriate because the claims related to the New Jersey Project should be transferred to the New Jersey Bankruptcy Court and the claims related to the New York Project should be remanded to the New York Supreme Court, New York County.

19

**III.    Transfer Of The Claims Related To The New Jersey Project Asserted In The Removed Case To The United States District Court For The District Of New Jersey, For Referral to The United States Bankruptcy Court For The District Of New Jersey, Is Appropriate.**

28 U.S.C. § 1334(b) provides that Federal Courts "shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related cases under title 11." *In re Lehman Brothers Holdings Inc.*, 594 B.R. 33, 49 (Bankr. S.D.N.Y. 2018) (citing 28 U.S.C. § 1334(b)). The transfer of venue of a case or proceeding under Title 11 is governed under 28 U.S.C. § 1412, which provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." *Id*. Most courts in the Southern District of New York "have interpreted the terms of Section 1412 to apply only to core bankruptcy proceedings because, unlike section 1334(b), the language of section 1412 notably does not reference proceedings 'related to' title 11." *In re Lehman Brothers Holdings, Inc.*, 594 B.R. at 49. As such, Courts in the Southern District of New York have applied 28 U.S.C. § 1404(a) "when evaluating whether a transfer of venue is appropriate for a non-core adversary proceeding 'related to' a case under title 11." *Id. (citing ICICI Bank Ltd. v. Essar Glob. Fund Ltd.*, 565 B.R. 241, 249, n. 3 (Bankr. S.D.N.Y. 2017) (*internal citations omitted*). This statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

As the Bankruptcy Court noted in *Lehman Brothers*, it "is largely inconsequential" whether this Court conducts its analysis of the relief requested in Defendants' Motion "by applying section 1412 or…by applying section 1404(a)," as "the analyses under section 1404 and section 1412 are substantially similar." *Lehman Brothers Holdings, Inc.*, 594 B.R. at 50. (*citing ICICI Bank Ltd.,*

20

*565 B.R. at 249, n. 3.*   As such, and because Defendants assert that the Removed Case invokes both the Bankruptcy Court's core and, in the alternative, its 'related to' jurisdiction, Defendants request that this Court transfer venue of this matter to the United States Bankruptcy Court for the District of New Jersey, pursuant to 28 U.S.C. § 1412*, or in the alternative, 28 U.S.C. § 1404(a).

### A.   <u>Transfer is Appropriate Under Section § 1412</u>

As noted in Point I, *supra*, the Removed Case is a core proceeding because the claims made against Defendants on the New Jersey Project are identical to the claims that Green Star asserted in its Proof of Claim in the Hollister Bankruptcy.   *See* Ansell Decl. at ¶¶ 8-9, 14-15 and **Exhibits A** and **B**.   Additionally, the claims asserted by Green Star are the subject to the Settlement Agreement between Hollister and the NWUR Parties, including Defendants Edison and Suriano, which established a Channeling Injunction on lien claimants and *quantum meruit* claimants, and relate to the administration of the Hollister estate.   In addition, it may affect the allowance or disallowance of claims against the Hollister estate and the claim fund established for the payment of such claims.

In adjudicating motions for transfer of venue of core proceedings under 28 U.S.C. § 1412*, Courts in this District consider the following factors: "(1) the plaintiff's choice of forum; (2) the locus of the operative facts; (3) the convenience and relative means of the parties; (4) the convenience of witnesses; (5) the availability of process to compel the attendance of witnesses; (6) the location of physical evidence, including documents; (7) the relative familiarity of the courts with the applicable law; and (8) the interests of justice, including the interests of trial efficiency." *Smartmantic USA Corp. v. Dominion Voting Systems Corp.*, 2013 WL 5798986, * 3 (S.D.N.Y. Oct. 22, 2013) (citing *Goggins v. Alliance Capital Mgmt, L.P.*, 279 F. Supp. 2d. 228, 232 (S.D.N.Y. 2003).

1.    **The Interests of Justice and Judicial Economy Favor Transfer to the
Bankruptcy Court for the District of New Jersey.**

The interests of justice and judicial economy strongly favor the transfer of the claims
related to the New Jersey Project asserted in the Removed Case to District Court for the District
of New Jersey for referral to the Bankruptcy Court for the District of New Jersey, as the
Bankruptcy Court has already presided over a nearly identical Adversary Proceeding in the matter
of *Hollister Construction Services, LLC v. Arch Insurance Company, et. al.*, Adv. No.: 20-1396-
MBK, which approved a settlement on all other *quantum meruit* claimants to the New Jersey
Project.  *See* Ansell Decl. at ¶ 11; *See* Hollister Bankruptcy ECF No. 1237; *see also Mastr. Asset
Backed Sec. Trust 2007-WMC1 et. rel. U.S. Bank Nat. Assn v. WMC Mortgage LLC*, 880 F. Supp.
2d 418, 424 (S.D.N.Y. 2012) ("It would be a waste of resources — for both the parties and the
judiciary — to have the same issues litigated in two separate courts, forcing the defendant to
litigate in separate forums . . .")

The Second Circuit has held that strong policy considerations "'favor[] the litigation of
related claims in the same tribunal,'" including avoiding duplicative litigation and inconsistent
results.  *Goggins v. Alliance Capital Mgmt.*, L.P., 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003)
(*quoting Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)).  Courts in the Southern
District of New York have found "[t]he single most significant circumstance favoring transfer" to
be "the existence of [a] related action[]" in another tribunal where there is "substantial overlap in
the allegations by the plaintiffs" in both cases.  *Goggins*, 279 F. Supp. 2d at 234 (granting transfer
in light of the "substantial overlap in the allegations made by the plaintiffs here and the plaintiffs
in the [related] action"); *see also Comprehensive Care Corp. v. Bank of Tokyo Trust Co.*, 1991
WL 150220, at *4 (S.D.N.Y. July 30, 1991) (granting transfer motion of a case that "hinge[d] on
the same factual nuclei" as the related action).

Moreover, litigation of the claims related to the New Jersey Project asserted in the Removed Case belongs in a New Jersey forum pursuant to the General Contract between Hollister and NWUR, the terms of which Green Star agreed to be bound before beginning work on the New Jersey Project, the parties agreed that the General Contract would be "governed by the laws of the State of New Jersey," and Green Star would be subject to "the personal jurisdiction of the Courts of the State of New Jersey." *See* Suriano Decl., **Exhibit A** at ¶ 10.16.  Moreover, the New Jersey Project was located in Newark, New Jersey, as are Defendants Edison Properties and Suriano, to whom Green Star's claims related to the New Jersey Project are directed.  Likewise, the work in question was provided in the State of New Jersey.  Green Star has also filed a Proof of Claim with the United States Bankruptcy Court for the District of New Jersey against Hollister for the same balance which it now claims to be owed by the Defendants.

Defendants respectfully submit that it is in the interest of justice to litigate this dispute in the District of New Jersey, the forum that is currently handling the Hollister Bankruptcy, the forum that Green Star agreed would govern this dispute when it entered into the subcontract with Hollister, and the forum where the construction work took place.

## 2.   The Remaining Factors Support Transfer.

Defendants respectfully submit that the same reasons that transfer is appropriate under Section 1404(a) apply equally to Section 1412.

(a)   *Convenience of parties and witnesses*.  Green Star alleges that Defendant Suriano has personal liability for its claims related to the New Jersey Project.  Mr. Suriano is a citizen of the State of New Jersey.  *See* Ansell Decl., **Exhibit A** at ¶ 5; *see also* Suriano Decl. at ¶ 3.  Moreover, Defendant Edison Properties, the other party against whom Green Star's claims related to the New Jersey Project are directed, is a New Jersey limited liability company with its principal place of business located at 110 Edison Place, Suite 300, Newark, New Jersey 07102.

*See* Ansell Decl., **Exhibit A** at ¶ 2; *see also* Suriano Decl. at ¶ 4.  Additionally, Hollister is a New Jersey based company and, upon information and belief, its current and former employees, agents and/or representatives who supervised Green Star on the New Jersey Project are located in the State of New Jersey.  *See* Suriano Decl. at ¶ 6 and **Exhibit A** at p. 4.  Thus, to the extent that discovery is needed from Hollister regarding the allegations made by Green Star, it will be far more practical to obtain that discovery in the forum where the Hollister Bankruptcy is pending, as stay relief will not be required to issue subpoenas and obtain relevant documents and testimony.

(b)     *Location of Relevant Documents*.  Courts have recognized that it is generally "a neutral factor in today's world of faxing, scanning, and emailing documents."  *Mastr Asset Backed Sec. Trust*, 880 F. Supp. 2d at 422.  However, to the extent this factor remains relevant, it also favors New Jersey, where Edison Properties and its affiliates maintain their principal place of business, where Green Star's work on the New Jersey Project was performed, where the Hollister Bankruptcy is pending, and where documents can be obtained from the Debtor without need to obtain stay relief.

(c) *Locus of operative facts*.  As set forth more fully above, the locus of operate facts favors New Jersey, the place where the construction work took place pursuant to the General Contract between the Debtor and NWUR, where the Defendants Edison Properties and Suriano are located, and where Hollister, who oversaw Green Star's work, is located.

(e) *Means of the parties.*  The means of the parties will not be burdened from litigating this proceeding in the New Jersey District Court.  In fact, Green Star entered into a subcontractor agreement with Hollister, governed by New Jersey law and accepting personal jurisdiction in New Jersey, for services to be rendered in the New Jersey.  Likewise, Plaintiff faces

no undue burden with litigating this dispute in the neighboring jurisdiction of the State of New Jersey.

(f) *Familiarity of the Courts with the law governing Green Star's claims*.   This factor highly favors Defendants, as the construction services were rendered in the State of New Jersey pursuant to the terms of the General Contract, in which the parties agreed that the choice of law governing this dispute is the State of New Jersey.   Significantly, the Hollister Bankruptcy is pending in the New Jersey Bankruptcy Court, to which the Removed Case is inextricably entwined.

(g) *Green Star's choice of forum.*   Green Star's choice to file in New York "should be accorded little deference because it was plainly "motivated primarily by tactical considerations." *Robertson v. Cartinhour*, 2011 WL 5175597, at *5 (S.D.N.Y. Oct. 28, 2011).   In this district, "the more it appears the decision is 'motivated by forum shopping reasons,' the less deference will be accorded to it." *Hershman v. UnumProvident Corp.*, 658 F. Supp. 2d 598, 601 (S.D.N.Y. 2009).   Here, in an effort to assert claims related to the New Jersey Project in New York State Court, Green Star "mis-joined" those claims with entirely distinct claims against distinct defendants related to a different project in New York.   Again, the construction services in the New Jersey Project were rendered in the State of New Jersey pursuant to the terms of a General Contract in which Hollister and its subcontractors all agreed would be "governed by the laws of the State of New Jersey," and be subject to "the personal jurisdiction of the Courts of the State of New Jersey."   *See* Suriano Decl.*,* **Exhibit A** at ¶ 10.16.

For the foregoing reasons, each factor relevant to the transfer of venue analysis under 28 U.S.C. § 1412 weighs in favor of venue over this action in the Bankruptcy Court for the District

of New Jersey.  Therefore, this Court should transfer this matter to the United States District Court

for the District of New Jersey, for referral to the Bankruptcy Court for the District of New Jersey.

> **B.**      **In the Alternative, Defendants have met the Threshold for Transfer under Section 1404(a).**

When considering whether to grant a request to transfer venue under Section 1404(a),

courts will examine whether (i) the case could have been brought in the proposed transferee

district; and (ii) the convenience of the parties, witnesses and the interest of justice favor transfer."

*Berman v. Informix Corp.*, 30 F. Supp. 2d. 653, 656 (S.D.N.Y. 1998); *ICICI Bank Ltd.*, 565 B.R.

at 250.

As set forth in greater detail above, Defendants respectfully submit that they have easily

met this burden.  Even if the Hollister Bankruptcy had not occurred and was not presently pending

in the New Jersey Bankruptcy Court, Plaintiff would nonetheless have been unable to maintain its

dispute regarding the New Jersey Project in the Supreme Court of New York given the choice of

law/forum clause in the General Contract, the fact that the construction services were actually

rendered in the State of New Jersey, and the fact that the Defendants against whom such claims

are directed are citizens of New Jersey.  For this reason, assuming *arguendo* that this Removed

Case only invokes the Bankruptcy Court's "related to" jurisdiction, Defendants respectfully submit

that transfer remains appropriate under 28 U.S.C. § 1404(a).

**IV.    The Court Should Grant Defendant's Motion to Extend Time To Answer Or Otherwise Plead.**

Bankruptcy Rule 9006(b)(1) requires a defendant to file an answer within seven (7) days

after the filing of the notice of removal.   Fed. R. Civ. P. 6(b) and Bankruptcy Rule 9006(b)(1)

permit the Court to extend a party's time to answer for good cause.   The S.D.N.Y. Rule 9006-2,

effective August 1, 2013, expands further and states that:

Unless otherwise provided in the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or order of the Court, when a motion to extend the time to take any action is filed before the expiration of the period prescribed by the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, or order of the Court, with a return date that is no later than fourteen (14) days after the date of such filing or, if the Court is unable to schedule a return date within such period, as soon thereafter as the return date may be scheduled by the Court, the time shall automatically be extended until the Court resolves the motion to extend the time. An automatic extension under this rule shall not require the issuance or entry of an order extending the time.

It is well-settled that the Court may extend a party's time to file an answer or responsive pleading for good cause. *Capitol Records, LLC v. Greene*, No. 5:07-CV-0969 (GTS/GHL), 2008 WL 11355365, at *2 (N.D.N.Y. Nov. 5, 2008) (extending time to answer while considering pending motion to transfer). Courts routinely grant a party's motion to extend the time to file an answer due to a "strong preference for resolving claims on their merits." *Yahoo, Inc. v. Nakchan*, No. 08 CIV. 4581 LTS THK, 2011 WL 666678, at *2 (S.D.N.Y. Feb. 22, 2011); *see also Blam v. Smart Source, LLC*, No. 17-CV-9142 (SHS), 2018 WL 2021762, at *1 (S.D.N.Y. Apr. 12, 2018); *Pawaroo v. Countrywide Bank*, No. CV-09-2924 (ARR), 2009 WL 4544359, at *1 (E.D.N.Y. Nov. 30, 2009); *Burnette v. Racette*, No. 92-CV-0785E(F), 1993 WL 328048, at *1 (W.D.N.Y. Aug. 9, 1993). It is within the Court's discretion to extend time for serving responsive pleadings. *See Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871, 872 (3d Cir. 1944).

Here, Defendants timely removed this matter to this District and have filed this Motion within their time to Answer. Given the pendency of this Motion that may result in the severance of claims, with claims related to the New Jersey Project being transferred to the New Jersey District Court for referral to the Bankruptcy Court, and claims related to the New York Project being remanded to the New York Supreme Court, there is adequate good cause for this Court to extend Defendants' time to Answer otherwise plead, pending the potential transfer and remand of Green Star's claims.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion and Order the following relief:  (i) sever Green Star's claims related to the New Jersey Project from its claims related to the New York Project; (ii) transfer the claims related to the New Jersey Project to the United States District Court for the District of New Jersey, for referral to the United States Bankruptcy Court for the District of New Jersey in the Hollister Bankruptcy; and (iii) extend Defendants' time to Answer or otherwise plead in response to Green Star's Complaint until after this Motion is decided and the claims transferred and remanded.


Dated:  April 5, 2021                                  **BRACH EICHLER LLC**

                                                       */s/Michael H. Ansell*
                                                       Michael H. Ansell, Esq.
                                                       101 Eisenhower Parkway
                                                       Roseland, New Jersey 07068
                                                       (973)-228-5700
                                                       mansell@bracheichler.com
                                                       *Attorneys for Defendants Edison Properties,*
                                                       *LLC, Pasquale Suriano, Edison*
                                                       *Construction Management, LLC and Joseph*
                                                       *Pipia*

28