# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GREEN STAR ENERGY SOLUTIONS, LLC,

     Plaintiff,

     vs.

EDISON PROPERTIES, LLC, EDISON
CONSTRUCTION MANAGEMENT, LLC, UA
BUILDERS CORP., PASQUALE SURIANO and
JOE PIPIA,

     Defendants.

Civil Action No.  1:21-cv-02682-LJL

## MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFFS' OPPOSITION TO
## EDISON PARTIES' MOTION TO SEVER CLAIMS, TRANSFER VENUE
## AND EXTEND TIME TO ANSWER

Steven D. Skolnik
Laleh Hawa
Ralph N. Gaboury

**COX PADMORE SKOLNIK &
SHAKARCHY LLP**

*Attorneys for Plaintiff
Green Star Energy Solutions, LLC*

630 Third Avenue, 23rd Floor
New York, NY 10017
P: (212) 953-6633
F: (212) 949-6943
E: skolnik@cpsslaw.com
E: hawa@cpsslaw.com
E: gaboury@cpsslaw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND ..................................................................................................1

    A.    The New Jersey Project – September 2018 to June 1, 2019 ...................................2

    B.    The New York Project – November 2018 to September 2019 ..............................3

    C.    Green Star Forced to Shut Down Operations .........................................................4

    D.    Procedural Background ...........................................................................................5

ARGUMENT .........................................................................................................................5

II.    The Removed Case Is Not A Core Proceeding To The Hollister Bankruptcy, Nor Related Sufficiently To The Hollister Bankruptcy To Give The Bankruptcy Court Jurisdiction ....................................................................................................................5

    A.    Under the Supreme Court's decision in *Stern* – the Removed Case is not a "core" bankruptcy proceeding ..........................................................................................6

    B.    Under *Stern* the Bankruptcy Court has no Constitutional authority to enter final judgment with respect to the claims in the Removed Case ....................................7

        1.    The Removed Case involves only a "private" right......................................8

        2.    Green Star's Proof of Claim does not mandate transfer to the Bankruptcy Court ...........................................................................................................9

        3.    The Parties have Not consented to final adjudication by the Bankruptcy Court .........................................................................................................10

    C.    The Removed Case is not "Related To" the Hollister Bankruptcy.......................10

        1.    Different Issues and Claims unrelated to Bankruptcy ..............................11

        2.    Green Star is not a named creditor in the Settlement Agreement and Channeling Injunction and thus its claims are not subject thereto............11

        3.    An award of damages to Green Star will have no impact on the administration of the Hollister estate ........................................................14

            (a)    Hollister has no obligation to indemnify Defendants for damages sought by Green Star....................................................................15

                (i)    The Edison Defendants are not "Indemnitees" under the General Contract ...........................................................16

                (ii)    Even if the Edison Defendants are "Indemnitees" under the

General Contract damages sought by Green Star are carved-out pursuant to Section 19.2.2 and/or as a matter of law ...18

**III. Green Star's Claims Should Not Be Severed** .....................................................**19**

    A.    Despite Different Projects – Crucial Occurrences and Law Overlap ....................20

    B.    Settlement of the Claims and Judicial Economy Strongly Disfavors Severance...20

    C.    Green Star severely prejudiced if case severed......................................................21

**IV. Transfer of Claims to NJ Bankruptcy Court or the NJ District Court is Not Appropriate under § 1412 or 1404(a)** .................................................................**22**

**CONCLUSION** ...................................................................................................................**24**

# TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*176-60 Union Turnpike, Inc. v Howard Beach Fitness Ctr., Inc.*,
   209 BR 307 [SDNY 1997] ......................................................................................................19

*Agnesini v. Doctor's Assoc., Inc.*,
   275 F.R.D. 456 (S.D.N.Y.2011)............................................................................................19

*Atlas Roofing Co. v. Occupational Safety and Health Review  Comm'n*,
   430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977) ................................................................8

*Crowell v. Benson*,
   285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) .........................................................................8

*D.H. Blair & Co., Inc. v Gottdiener*,
   462 F3d 95 [2d Cir 2006]........................................................................................................23

*Ex parte Bakelite Corp.*,
   279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1929) (abrogated on other grounds .........................8

*Germain v Connecticut Nat. Bank*,
   988 F2d 1323 [2d Cir 1993].....................................................................................................21

*Granfinanciera, S.A. v Nordberg*,
   492 US 33, 59 ..........................................................................................................................10

*In re Adelphia Commc'ns Corp.*,
   307 B.R. 404 (Bankr. S.D.N.Y. 2004) .......................................................................................7

*In re Scott*,
   572 BR 492 (Bankr SDNY 2017) ...............................................................................................7

*Mantilla v NC Mall Assoc.*,
   167 NJ 262, 770 A2d 1144 [2001].............................................................................................18

*MasterCard Intern. Inc. v Visa Intern. Serv. Ass'n, Inc.*,
   471 F3d 377 [2d Cir 2006]........................................................................................................15

*MBNA Am. Bank, N.A. v. Hill*,
   436 F.3d 104 (2d Cir. 2006).......................................................................................................7

*N. Jersey Media Group Inc. v Fox News Network, LLC*,
   312 FRD 111 [SDNY 2015].......................................................................................................19

*N. Pipeline Const. Co. v Marathon Pipe Line Co.*,
   458 US 50, 102 S Ct 2858, 73 L Ed 2d 598 [1982] ...................................8

*Oram v SoulCycle LLC*,
   979 F Supp 2d 498 [SDNY 2013] .............................................15, 17, 19

*Ramos v. Browning Ferris Indus. of S. Jersey, Inc.*,
   103 N.J. 177, 510 A.2d 1152 (1986) ...................................................18

*Stern v Marshall*,
   564 US 462, 131 S Ct 2594, 180 L Ed 2d 475 [2011] ...........................passim

## **Statutes**

28 U.S.C. §1391 ...................................................................................22

28 U.S.C. § 157(b) ................................................................................7

28 U.S.C. § 157(b)(2) ...........................................................................5

28 U.S.C. § 157(b)(3) and 1334 ............................................................5

28 U.S.C. § 1334(b) ..............................................................................6

28 U.S.C. §§ 157 or 1334 ..................................................................6, 7

28 U.S.C § 1452(a) ...............................................................................5

28 U.S.C. § 157(c)(1) ............................................................................6

## **Rules**

Fed. R. Civ. P.  19(a) ...........................................................................15

Fed. R. Civ. P. 19(a)(1)(A) ..................................................................15

Fed. R. Civ. P. 21 ................................................................................19

## PRELIMINARY STATEMENT

The omnibus motion filed on April 5, 2021 by defendants Edison Properties, LLC, Edison Construction Management, LLC, Pasquale Suriano and Joe Pipia (collectively the "Edison Parties") seeking to sever plaintiff Green Star Energy Solutions, LLC's ("Green Star" or "Plaintiff") claims and to transfer venue to the New Jersey District Court and thereafter to the New Jersey bankruptcy court (ECF Nos. 4-8, 22) (the "Motion" or "Omnibus Motion") is an impermissible attempt to distract the Court from the fact that none of Green Star's claims against the Edison Parties have any bearing upon the Hollister bankruptcy pending before the New Jersey Bankruptcy Court[1] (the "Hollister Bankruptcy").

## FACTUAL BACKGROUND

Facts and procedural background relevant to Green Star's opposition to the Motion are set forth in the Complaint,[2] as well as the Declaration in Opposition of Joseph Novella dated May 17, 2021 ("Novella Decl."), and the Declaration in Opposition of Ralph Gaboury, Esq., dated May 17, 2021 ("Gaboury Decl."), each submitted simultaneously herewith.

This action concerns two construction projects where Green Star was hired as a subcontractor in connection with properties owned and or managed by defendants Edison Properties LLC and Edison Construction Management, LLC (collectively "Edison"), located at:

110 Edison Place, Newark, NJ (the "New Jersey Project"), and

543 West 43rd Street, New York City (the "New York Project").

(Novella Decl. ¶ 3).  Upon information and belief, Defendants Pasquale Suriano and Joe Pipia were each employed by either Edison Properties LLC and/or Edison Construction Management,

---

[1] *In re Hollister Construction Services, LLC*, Case No. 19-27439 (MBK) (Bankr. D.N.J.).
[2] Clickable hyperlinks provided to certain cited state court, federal court, and bankruptcy court documents provided, as described more fully in the Declaration in Opposition of Ralph Gaboury, Esq., dated May 17, 2021.

LLC, and each spoke and acted on behalf of those entities with apparent and/or actual authority with respect to New Jersey Project and the New York Project.  (*Id.* ¶ 4 .)

Prior to the start of Green Star's work on both the New Jersey Project and the New York Project, the Edison Parties, including defendants Pasquale Suriano and Joe Pipia, repeatedly assured Joseph Novella, Green Star's CEO and founder, that Green Star would be paid timely without fail if Green Star came on as the HVAC subcontractor on both jobs.  (*Id.* ¶ 5.)  Mr. Novella had initially refused to take on the New Jersey Project, because he was concerned that in the event payments were delayed or slow in arriving, that Green Star would suffer significant cash-flow problems.  (*Id.* ¶ 6.)  This was due to the fact that Green Star is a boutique company with limited financial resources, and had at that time already taken on $7 million worth of other projects; thus it would be unable to fund the day-to-day operations of any additional work absent timely progress payments.  (*Id.*)  However, defendant Pasquale Suriano on behalf of the Edison Parties, insisted that Mr. Novella approve Green Star take on the project given that Green Star was already doing three other jobs for the Edison Parties, including the New York Project discussed below – and that to maintain Green Star's status as the Edison Parties' "preferred" HVAC subcontractor, Green Star would have to take on the job.  (*Id.* ¶ 7.)

### A.       The New Jersey Project – September 2018 to June 1, 2019

In direct reliance on Mr. Suriano's assurances that Green Star would get paid timely on a monthly basis, on or about September 18, 2018, Green Star entered into a subcontract with Hollister Construction Services LLC ("Hollister") for Green Star to act as HVAC subcontractor in connection with the general construction contract Hollister had entered into with defendants EP LLC and/or ECM LLC, for the New Jersey Project.  (*Id.* ¶ 8.)

Problems arose during the New Jersey Project, which resulted in the Edison Parties taking over direct management of the project, and which resulted in a direct payment to Green Star by

defendant Edison Properties LLC on or about April 2, 2019.  (*Id.* ¶ 9.)  Despite numerous impediments and attempts to sabotage Green Star's ability to adhere to the project schedule, during its final month on the job, Green Star maintained a full crew and effectively completed the contracted work prior to the "move-in" date of June 1, 2019.  (*Id.* ¶ 10.)  On, May 30, 2019, Green Star's final scheduled work day prior to building occupancy,  Green Star had only to finish installing two fire dampers to complete all work it had been subcontracted to do, with the exception of potential warranty work.  (*Id.* ¶ 11.)

Despite this, on May 30, 2019, defendant Suriano on behalf of the Edison Parties emailed Mr. Novella a message threatening termination.  (*Id.* ¶ 12.)  The message – which did not constitute formal notice of termination under the contract – was  false, as it did not have any factual basis with respect to the status of the project at that time and the work Green Star had performed.  Green Star was then locked-out of the project site, making it impossible for Green Star to finish work or to perform any warranty work. (*Id.*)  Further, Green Star had no prior formal notice that it would be "terminated" and was not provided an opportunity to address any deficiencies, as was required under its subcontract.  (*Id.* ¶ 13.)

Despite Green Star having submitted all required paperwork and backup documentation, Green Star's final invoice on the contract was never paid, leaving a balance due and owing of $220,060.58.  (*Id.* ¶ 14.)  At no time did Green Star file a mechanics' lien with respect to the New Jersey Project.  (*Id.* ¶ 15.)

### B.   The New York Project – November 2018 to September 2019

With respect to the New York Project, this project was undertaken nearly simultaneously by Green Star with the New Jersey Project.  (*Id.* ¶ 16.)  As with the New Jersey Project, although Green Star had completed all requirements under its contract, defendant UA Builders and the Edison Parties refused to pay the final balance owed to Green Star of approximately $71,177.95.

(*Id.* ¶ 17.)

On or about July 27 and July 28, 2020, Mr. Novella exchanged email messages with Mr. Suriano and Mr. Pipia of Edison, in which both Mr. Suriano and Mr. Pipia made false statements that Green Star did not properly perform its work on the New York Property project, which statements, upon information and belief, were intentionally false.  (*Id.* ¶ 18.)  On or about July 30, 2020, Mr. Novella participated in a telephone conference call with Mr. Suriano and Mr. Pipia regarding the outstanding balance due to Green Star.  (*Id.* ¶ 19.)  On this telephone conference, Mr. Suriano and Mr. Pipia each made false statements that "back charges nullified" any amounts due to Green Star, and in addition, Mr. Pipia made the false statement that he had attempted to contact Green Star for warranty work and was not able to reach anybody on the telephone or by email.  (*Id.*)  A week later, on or about August 6, 2020, with payment being nearly seven months overdue, Mr. Suriano delivered an email to Mr. Novella on behalf of the Edison Parties, in which he made the false statement that back charges and other expenses nearly equaled the outstanding amount due to Green Star.  Mr. Suriano's email also offered to pay only $10,500 as "final settlement" of to satisfy Green Star's outstanding invoice. (*Id.* ¶ 20.)  At no time did the Edison Parties provide to Green Star any evidence or documentation of these purported back charges and other supposed expenses.  (*Id.*)

As such, once again, the Edison Parties engaged in the same fraudulent type of scheme that was undertaken in connection with the New Jersey Project – that is, intentionally making false statements to fraudulently withhold final payment from Green Star.  (*Id.* ¶ 21.)

## C.     Green Star Forced to Shut Down Operations

In large part due to the massive cash-flow issues and damages caused to Green Star as a result of the defendants' fraudulent and tortious conduct in connection with the New Jersey Project and the New York Project, Green Star was forced to shut down operations.  (*Id.* ¶ 22.)

### D.    Procedural Background

On or about February 26, 2021, Green Star initially commenced this case in the Supreme

Court of the State of New York, New York County, docketed as *Green Star Energy Solutions,*

*LLC v. Edison Properties, LLC, Edison Construction Management, LLC, UA Builders Corp.,*

*Pasquale Suriano and Joe Pipia*, Index No. 651345/2021 (the "State Court Proceeding"), seeking

damages for claims against the defendants for fraud, aiding and abetting fraud, tortious

interference with contracts, quantum meruit, and direct and third party beneficiary-based breach

of contract.   (Gaboury Decl. ¶ 3.)  Importantly, none of the claims brought by Green Star in the

State Court Proceeding are against Hollister Construction Services, LLC ("Hollister"), nor are

any of the claims brought under  Title 11 of the United States Code, nor pursuant to any federal

statute.  (*Id.* ¶ 4.)  On or about March 29, 2021,  the Edison Parties filed a Notice of Removal in

the State Court Proceeding, removing the case to this Court (the "Removed Case").  (*Id.* ¶ 5.)

### ARGUMENT

### II.    The Removed Case Is Not A Core Proceeding To The Hollister Bankruptcy, Nor Related Sufficiently To The Hollister Bankruptcy To Give The Bankruptcy Court Jurisdiction

For the reasons discussed below, this proceeding is not sufficiently related to the Hollister

Bankruptcy, and thus should not be removed to the bankruptcy court in New Jersey pursuant to

28 U.S.C § 1452(a).[3]  The Edison Parties argue that the New Jersey Bankruptcy Court has

jurisdiction over Green Star's claims related to the New Jersey Project because those claims

constitute either a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2) or  a "related proceeding"

under 28 U.S.C. § 157(b)(3) and 1334.  (Edison Parties' Supporting Memorandum of Law

("Edison Parties' Mem.") at 5-13.)  As discussed below, based on Supreme Court precedent

---

[3] A hyperlink to the Westlaw database will be provided for the first citation to a particular statute or court case.

subsequent to the cases relied-upon by the Edison Parties, Green Star's claims are neither a "core" proceeding nor a "related proceeding" under 28 U.S.C. §§ 157 or 1334.

### A.    <u>Under the Supreme Court's decision in *Stern* – the Removed Case is not a "core" bankruptcy proceeding</u>

Tellingly, all of the case law relied upon by the Edison Parties with respect to whether Green Star's claims amount to a "core" proceeding or a proceeding that is "related to" the NJ bankruptcy proceeding, pre-date the Supreme Court's 2011 decision in *Stern v Marshall*, 564 US 462, 131 S Ct 2594, 180 L Ed 2d 475 [2011].  (*See* Edison Parties' Mem. at iv ("Table of Authorities" listing cases cited on pages 5-13 of Edison Parties' brief).)

As an initial matter, under *Stern*, it is crucial to recognize the difference between a "core" bankruptcy proceeding under 28 U.S.C. § 157 versus a  proceeding that is "related to" a bankruptcy proceeding under 28 U.S.C. § 1334(b). The distinction is crucial because while

> [b]ankruptcy judges may hear and enter <u>final judgments</u> in 'all core proceedings arising under title 11, or arising in a case under title 11.'", [but where] a referred "proceeding ... is not a core proceeding but ... is otherwise related to a case under title 11," the [bankruptcy] judge may only "submit proposed findings of fact and conclusions of law to the district court." § 157(c)(1). It is <u>the district court that enters final judgment in such cases</u> after reviewing *de novo* any matter to which a party objects.

*Stern*, 564 US 462, 474-75, 131 S Ct 2594, 2603-04, 180 L Ed 2d 475 (emphasis and insertions added) . *Stern*  also established clearly that "core" bankruptcy proceedings are limited to "those that arise in a bankruptcy case or under Title 11."  *Id.* at 564 US 462, 476, 131 S Ct 2594, 2605, 180 L Ed 2d 475.  There is no category of "core" proceedings that do not "arise" in or under a Title 11 case:

> We think it significant that Congress failed to provide any framework for identifying or adjudicating the asserted category of core but not "arising" proceedings, given the otherwise detailed provisions governing bankruptcy court authority. It is hard to believe that Congress would go to the trouble of cataloging

> 16 different types of proceedings that should receive "core" treatment, but then fail to specify how to determine whether those matters arise under Title 11 or in a bankruptcy case if . . . the latter inquiry is determinative of the bankruptcy court's authority.

*Id.* 564 US 462, 476-77, 131 S Ct 2594, 2605, 180 L Ed 2d 475.  Simply put, *Stern* holds that only cases that "arise" in or under Title 11 can be considered "core."  This has been acknowledged by the Second Circuit and by the bankruptcy courts of this district.  *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006) (Proceedings that "arise under" the Bankruptcy Code are those "that clearly invoke substantive rights created by federal bankruptcy law.")  *And see* *In re Scott*, 572 BR 492, 511 (Bankr SDNY 2017) ("[a]rising under jurisdiction relates to federal question claims of a particular type—those federal questions that have their origin in title 11 of the United States Code (i.e., the Bankruptcy Code), and where relief is sought based upon a right created by title 11.") (quoting *In re Adelphia Commc'ns Corp.*, 307 B.R. 404, 413 (Bankr. S.D.N.Y. 2004) (internal quotation marks omitted) (footnote omitted).

As discussed *supra*, the Removed Case makes no claims under Title 11 (or any federal statute), and asserts only state-law claims, none of which are against Hollister, the debtor in the New Jersey bankruptcy proceeding. (Gaboury Decl. ¶ 4.)  Accordingly, under *Stern,* the Removed Case cannot be considered a "core" proceeding under 28 U.S.C. § 157.

**B.**      **Under *Stern* the Bankruptcy Court has no Constitutional authority to enter final judgment with respect to the claims in the Removed Case**

In *Stern*, the Supreme Court held that a bankruptcy court, as an Article I legislative court, lacked constitutional authority to enter final judgment on the state-law claim at issue, notwithstanding the fact that the claim was classified as "core" under 28 U.S.C. § 157(b). *Stern*, 564 U.S. at 469.  In determining that the bankruptcy court lacked constitutional authority to enter final judgment on the state-law claim at issue in *Stern*, the Supreme considered the following factors: (1) whether the claim involved a "public" or "private" right, (2) whether the claim would

necessarily be resolved by ruling on the creditor's proof of claim, and (3) whether the parties had

consented to final adjudication by the bankruptcy court.. *Id.* at 487-93.  As discussed below, each

of these factors weigh against the bankruptcy court's constitutional authority to enter judgment

on Green Star's state common law claims, and thus transfer of the case would represent a futile

and duplicative waste of judicial resources given that the District Court would still ultimately

need to decide the case *de novo*.

<p align="center">1.     <u>**The Removed Case involves only a "private" right**</u></p>

Here, the claims presented in the Removed Case are directly between Green Star and the

defendants, and no claims are asserted against Hollister (the bankruptcy debtor).  In *Stern*, the

Supreme Court discussed the "public rights exception" to the constitutional requirement that

state-law claims be adjudicated by Article III courts:

> Subsequent decisions from this Court contrasted cases within the reach of the
> public rights exception—those arising "between the Government and persons
> subject to its authority in connection with the performance of the constitutional
> functions of the executive or legislative departments"—and those that were
> instead matters "of private right, that is, of the liability of one individual to
> another under the law as defined."

*Id*. at 564 US 462, 489-90, 131 S Ct 2594, 2612-13, 180 L Ed 2d 475 (*quoting Crowell v.*

*Benson*, 285 U.S. 22, 50, 51, 52 S.Ct. 285, 76 L.Ed. 598 (1932)) (*and citing Atlas Roofing Co. v.*

*Occupational Safety and Health Review  Comm'n*, 430 U.S. 442, 458, 97 S.Ct. 1261, 51 L.Ed.2d

464 (1977) (exception extends to cases "where the Government is involved in its sovereign

capacity under ... [a] statute creating enforceable public rights," while "[w]holly private tort,

contract, and property cases, as well as a vast range of other cases ... are not at all implicated").

*And see N. Pipeline Const. Co. v Marathon Pipe Line Co.*, 458 US 50, 68, 102 S Ct 2858, 2869,

73 L Ed 2d 598 [1982]  (overruled by statute on other grounds) (*citing Ex parte Bakelite Corp.*,

279 U.S. 438, 451–452, 49 S.Ct. 411, 73 L.Ed. 789 (1929) (abrogated on other grounds) for the

<p align="center">8</p>

proposition that the doctrine extended "only to matters that historically could have been determined exclusively by" the Executive and Legislative Branches).

As in *Stern*, the state-law claims asserted in the Removed Case do not fall under any of the "public rights" cases or authorities discussed by the Supreme Court.  None of the state-law claims are matters that can be pursued "only by grace of the other [federal] branches" or that "historically could have been determined exclusively by' those [federal] branches. . . . The claim is instead one under state common law between two private parties.  It does not 'depend[] upon the will of Congress, . . . Congress has nothing to do with it." *Stern*, 564 U.S. at 493 (internal citations omitted; insertions added; final modification in original).

### 2. <u>Green Star's Proof of Claim does not mandate transfer to the Bankruptcy Court</u>

As with the party at issue in *Stern*, Green Star filed a proof of claim in the Hollister Bankruptcy Proceeding.  As discussed in *Stern*, this does <u>not</u> automatically give the bankruptcy court constitutional authority to adjudicate Green Star's claims in the Removed Case.  *Stern*, 564 U.S. at 496-499.

> " '[P]roperty interests are created and defined by state law,' and '[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.' "

*Id.* at 495, 131 S Ct 2594, 2616, 180 L Ed 2d 475.  Although Green Star filed its proof of claim in the Hollister Bankruptcy, pursuant to the plan of liquidation confirmed in the Hollister Bankruptcy, Green Star will receive no compensation on that claim as an unsecured creditor. (*See* Hollister Bankruptcy ECF 1769: Findings Of Fact, Conclusions Of  Law, And Order (I) Approving The First Amended Disclosure  Statement On A Final Basis And (Ii) Confirming The Debtor's First Amended Plan Of Liquidation.)  As set forth in the Complaint, and as discussed

*supra*, Green Star's claims against the Edison Parties based on fraud and tortious interference and other state common law claims are independent of Green Star's claim against Hollister for breach of contract.  Accordingly, even if Green Star were awarded a portion (or even all) of the money owed it by Hollister set forth on its Proof of Claim, Green Star could still seek damages and attorneys' fees from the Edison Parties for their fraudulent and tortious conduct. Accordingly, because Green Star's claims against the Edison Parties are "in no way derived from or dependent upon bankruptcy law[,]" *Id*. at 499, 131 S Ct 2594, 2618, 180 L Ed 2d 475, the Removed Case should not be transferred to the bankruptcy court.

### 3.   The Parties have Not consented to final adjudication by the Bankruptcy Court

Finally, at no time has Green Star consented, either explicitly or impliedly, to final adjudication of the Removed Case by the bankruptcy court.  As discussed above, merely because Green Star filed a Proof of Claim with the Bankruptcy Court did not amount to an implied consent that its claims against the Edison Parties be adjudicated by the bankruptcy court.  As in *Stern*, Green Star "had nowhere else to go if [it] wished to recover from [the debtor's] estate." 564 U.S. at 493 (*citing Granfinanciera, S.A. v Nordberg*, 492 US 33, 59 at n. 14, 109 S Ct 2782, 2799, 106 L Ed 2d 26 [1989] (noting that "[p]arallel reasoning [to Schor ] is unavailable in the context of bankruptcy proceedings, because creditors lack an alternative forum to the bankruptcy court in which to pursue their claims").

### C.   The Removed Case is not "Related To" the Hollister Bankruptcy

For the reasons discussed below, the Removed Case is not "related to" the Hollister Bankruptcy, and thus Green Star's claims related to the New Jersey project should not be severed from the Removed Case and transferred to the New Jersey bankruptcy court.

### 1.       Different Issues and Claims unrelated to Bankruptcy

As discussed *supra*, Green Stars' claims in the Removed Case with respect to the New Jersey Project involve different issues and different claims than are at issue in the bankruptcy proceeding.  Green Star asserts claims against the Edison Parties for fraud, tortious interference with contract, quantum meruit, and direct and third party beneficiary-based breach of contract.   .  (Complaint at ¶¶ 58-118.)  None of these claims are asserted against Hollister.

Most importantly, and contrary to the assertion of the Edison Parties, none of the facts or claims asserted by Green Star in the Removed Case have been adjudicated or ruled upon by the Hollister Bankruptcy court.  (Gaboury Decl. ¶ 6.)  As such, if the Removed Case were transferred to the bankruptcy court, it would be dealing with finding facts related to Green Star's claims against the Edison Parties for the first time.  Further, as discussed below, any finding by the bankruptcy court with respect to Green Star's claims against the Edison Parties would have no impact on the Hollister bankruptcy plan, which has already been submitted and confirmed.  (*See* Hollister Bankruptcy ECF 1769 *supra*.)  In essence, because the Hollister bankruptcy proceeding is all but concluded, transferring the case there at this late stage would force the bankruptcy court to examine facts and issues that would have no bearing or impact upon Hollister's estate in bankruptcy.

### 2.       Green Star is not a named creditor in the Settlement Agreement and Channeling Injunction and thus its claims are not subject thereto

Throughout their supporting memorandum, the Edison Parties rely repeatedly on the assertion that Green Star "asserts a claim related to the New Jersey Project that was subject to the Settlement Agreement with Hollister and the Channeling Injunction issued in the Hollister Bankruptcy."  (Edison Parties' Mem. at 1, 3, 4, 6, 8, 10, 11, 12, 13, 18, 21.)  (Hereafter the "Settlement/Channeling Injunction Assertion" or the "assertion").  This is simply not the case. A

review of the documents from the Hollister Bankruptcy cited by the Edison Parties with respect to the Settlement Agreement and the Channeling Injunction, show that Green Star is not a named creditor in these documents, and is thus not subject to their terms.  Further, the type of claim asserted by Green Star in its Proof of Claim is not encompassed by any of these documents.

Green Star filed its Proof of Claim in the Hollister Bankruptcy on **November 21, 2019**, and listed therein that it is owed $220,060.58 for "Services performed <u>per contract</u> at 110 Edison Place, Newark, NJ."  (emphasis added) (<u>Declaration of Michael H. Ansell, Esq. dated April 5, 2021 in Support of Edison Parties' Motion</u>, at <u>Ex. B</u>, page 2.)

The first document from the Hollister Bankruptcy cited by the Edison Parties in support of their Settlement/Channeling Injunction Assertion is dated **July 20, 2020**, and titled "Motion to Approve Compromise under Rule 9019"[4] at <u>Hollister Bankruptcy ECF No. 1263</u>.  (Edison Parties' Mem. at 6.)   At paragraph 30 of this document (on page 10), it states:

> The following subcontractors and material providers have asserted one or more construction liens under the New Jersey Construction Lien Law . . . against the Project, the Columbia Street Extension, and/or the 3rd Floor Office Fit Out for work, services, material or equipment provided: . . .

and then lists approximately twenty-five companies that are presumably subcontractors who filed a mechanic's lien and/or a proof of claim in connection with one or more Hollister construction projects, defining those companies collectively as the "Lien Claimants."  **Green Star is <u>not</u> included in the list of Lien Claimants**.   Then at paragraph 33 (page 11), the document states:

> The following subcontractors and material providers have asserted one or more claims against the Debtor arising from work, services, material or equipment provided on the Project, the Columbia Street Extension, and/or the 3rd Floor Office Fit Out that is or are not supported by an alleged construction lien under

---

[4] In the interests of brevity, the title listed for each Hollister Bankruptcy document is short-form of the title taken from the "Document Name" text as listed by Prime Clerk on the docket maintained on its website devoted to the Hollister bankruptcy at https://cases.primeclerk.com/hcs/, omitting text such as "Filed by" or listing multiple party names.

the New Jersey Construction Lien Law: . . .

and then lists approximately thirty companies that are presumably subcontractors who filed a proof of claim only, with no mechanics' lien, in connection with one or more Hollister construction projects, defining those companies collectively as the "Quantum Meruit Claimants." **Green Star is <u>not</u> included in the list of Quantum Meruit Claimants**.

The next document from the bankruptcy proceeding cited by the Edison Parties in support of their Settlement/Channeling Injunction Assertion is dated **July 6, 2020**, and is titled "Adversary case 20-01396. Complaint by Hollister Construction Services, LLC against Arch Insurance *et al.*" at <u>Hollister Bankruptcy ECF No. 1237</u>.  (Edison Parties' Mem. at 6.)  This document is a "Verified Adversary Complaint" filed by Hollister in the bankruptcy, which starting at paragraph 28 (page 10), identifies the same approximately twenty-five Lien Claimants as party defendants, and starting at paragraph 55 (page 13), identifies the same approximately thirty Quantum Meruit Claimants as party defendants.  **Green Star is not included in either list and was not named as a party defendant to Hollister's adversary proceeding.**

The third document from the Hollister Bankruptcy cited in support of the assertion is dated **January 8, 2021**, and is titled "ORDER APPROVING SETTLEMENT AND COMPROMISE" at <u>Hollister Bankruptcy ECF No. 1598</u>.  (Edison Parties' Mem. at 6.)  This document is the order of the Hollister Bankruptcy court approving the Settlement Agreement submitted at ECF No. 1263 discussed above, and itself makes reference to the Hollister "Adversary Proceeding" (page 2) discussed above at ECF No. 1237 and the Lien Claimants (page 5 at ¶ 6).  **Green Star is not mentioned nor listed anywhere in the order, nor in any of the documents cited or cross-referenced by the order.**

The final document cited by the Edison Parties in support of their Settlement/Channeling Injunction Assertion is dated **January 8, 2021**, and is titled "Order Granting Declaratory and

Injunctive Relief" at ECF No. 58 of the Hollister Adversary Proceeding.  (Edison Parties' Mem. at 6.)  This is the order of the bankruptcy court that appears to establish the "channeling injunction" referenced repeatedly by the Edison Parties in their papers.  On the first page are listed each of the defendants to which the injunction applies.  **Green Star was not a defendant to this proceeding and is thus not listed.**  In addition, Exhibit A to the order lists certain specific settlement amounts as to certain "Defendants and non-Defendant Claimants." (page 6).  **Green Star is not listed on Exhibit A to the order.**

As such, **none of the documents from the Hollister Bankruptcy support the Edison Parties assertion that the Settlement Agreement or Channeling Injunction apply-to or are binding upon Green Star.**  Green Star filed its Proof of Claim approximately 8 months in advance of the earliest of these documents, and thus the Edison Parties in the Hollister Bankruptcy had ample opportunity to seek to include or name Green Star with respect to the Settlement Agreement and Channeling Injunction, but did not.  Further, Green Star never filed a mechanic's lien with respect to the New Jersey Project (Novella Decl. ¶ 15), and Green Star's Proof of Claim as to Hollister sounds in breach of contract, not quantum meruit as is set forth in the above-documents from the Hollister Bankruptcy cited by the Edison Parties.

Accordingly, because neither the Settlement Agreement nor the Channeling Injunction in the Hollister Bankruptcy is binding upon Green Star, none of the claims asserted by Green Star in the Removed Case are subject to either, and thus cannot serve as evidence that the Removed Case is "directly related to the Hollister Bankruptcy."  (Edison Parties' Mem. at 6.)

### 3.     An award of damages to Green Star will have no impact on the administration of the Hollister estate

The Edison Parties argue that any award of damages to Green Star in the removed case will necessarily impact the Hollister Bankruptcy proceeding.  This is incorrect.  First, the

Hollister Bankruptcy is all but concluded, with the plan of liquidation having been confirmed (*see* Hollister Bankruptcy ECF 1769 *supra*), such that at this late stage the bankruptcy court will not alter the plan, agreed adversary proceeding settlements and other amounts that have been decided.  To the extent Green Star is paid any monies as a result of its Proof of Claim, which it almost certainly will not – as discussed *supra* – the Edison Parties may then attempt to claim a set-off as an affirmative defense to Green Star's state common law claims.[5]

In addition, none of the other reasons put forth by the Edison Parties are sufficient to overcome the massive prejudice that Green Star would suffer as a result of severing and transferring its claims to the New Jersey bankruptcy court.  *Oram v SoulCycle LLC*, 979 F Supp 2d 498, 503 [SDNY 2013] (considering "whether prejudice would be avoided" in denying motion to sever).

### (a)    Hollister has no obligation to indemnify Defendants for damages sought by Green Star

The Edison Parties argue that Hollister would have an obligation to indemnify the Edison Parties in the event the Edison Parties were ordered to pay damages to Green Star in the Removed Case, pursuant to the General Contract with the Edison Parties' affiliated companies with respect to the New Jersey Project.  (Edison Parties Mem. at 7-8.)  For the reasons discussed below, (1) it does not appear that any such indemnification obligation on the part of Hollister is set forth in the General Contract, and (2) to the extent the wording of the contract is deemed to include such an obligation (and it should not be so construed), the fraudulent and tortious conduct by the Edison Parties' is excluded from indemnification.

---

[5] The Edison Parties refer to Hollister as "an indispensable party" (Edison Parties Mem at 6) without citation or discussion.  The Edison Parties' Motion does not seek relief under Fed. R. Civ. P. 19(a) and thus Green Star does not address the issue in this memorandum.  Regardless, without waiving its right to fully brief this issue, because the Court may "accord complete relief" to Green Star in the absence of Hollister, Green Star contends that Hollister is not an indispensable party.  Fed. R. Civ. P. 19(a)(1)(A); *and see* MasterCard Intern. Inc. v Visa Intern. Serv. Ass'n, Inc., 471 F3d 377, 385 [2d Cir 2006].

**(i)**      **The Edison Defendants are not "Indemnitees" under the General Contract**

In support of their contention that Hollister would have to indemnify the Edison Parties for any damages they would have to pay Green Star, the Edison Parties make reference to "Exhibit F, § 1.5.3.1" of the General Contractor Construction Contract between Newark Warehouse Urban Renewal, LLC as Owner and Hollister Construction Services, LLC as Contractor dated effective September 7, 2018 (the "General Contract").  (Suriano Decl. Corrected Ex. A (ECF 22-1) ((at p. 78 of 122).)[6]  This exhibit to the contract is titled "Insurance Requirements" and § 1.5.3.1 is a definition of the term "Additional Insureds", which is meant as a guide with respect to the "Additional Insureds" that contractors and subcontractors are required to name by endorsement on their insurance certificates for the project:

**1.5.2 Certificates of Insurance:**

1.5.2.1 Contractor shall cause each Subcontractor to furnish Owner with certificates of insurance completed by a duly authorized representative evidencing coverage required under this Section . . . . .

. . . .

1.5.3    **Required Endorsements:** Except as provided below, the policies required under paragraph this 1.1.3 [sic] shall be endorsed, in a form and manner acceptable to Owner, providing as follows:

**1.5.3.1 Additional Insureds**: The term "Additional Insureds" is defined as the following entities: Newark Warehouse Urban Renewal, LLC; Newark Warehouse Redeveloper Company, LLC; Mulberry Parking Properties, LLC; ERDA II, LLC; 820 Broad Street, LLC; ERDA I, LLC; Edison NJ Parking, LLC; **Edison Properties, LLC; Edison Construction Management, LLC**; Edison Parking Corporation; and their respective affiliates; **all officers**, directors, members, **employees, agents and/or consultants representing or working for the above**; any other entity that Owner provides Contractor with notice of during performance of the Work; and all successors and assigns of any of the above.

---

[6] Citations to the General Contract attached as Corrected Exhibit A to the Suriano Declaration (ECF No. 22-1) are cited hereafter as "General Contract" followed by the page number located on the ECF file stamp in the upper-right-hand corner of the document (i.e. "General Contract at p.78 of 122").

> Except with regard to Workers' Compensation and Employer's Liability insurance, the Additional Insureds shall be named as such by endorsement, **but only with respect to liability arising, in whole or in part, out of the activities of the named insured**.

(*Id.* (certain emphasis added).)

It is however, Article 19.1.1 of Exhibit B to the General Contract, that exhibit being titled "General Conditions," that deals with Hollister's indemnity obligations.  (General Contract at p. 61 of 122).  This section states that:

> To the fullest extent permitted by law, Contractor shall indemnify, hold harmless and defend the **Indemnitees** listed in Exhibit F . . . ."

(*Id.*)  The Definitions section of Exhibit B under Article 1 of the exhibit in turn defines the term "Indemnitees" as follows:

> "Indemnities" shall mean, collectively, Owner, Owner [sic] and any other parties identified as indemnitees in the Insurance Requirements attached as **Exhibit F**., to the Contract.

(General Contract at p.36 of 122.)  Although not defined in Exhibit F, the term "Owner" presumably means the term "Owner" as defined at the beginning of the General Contract, which is "Newark Warehouse Urban Renewal, LLC" (General Contract at p. 5 of 122).  **A line-by-line review of Exhibit F to the General Contract shows that nowhere are there "other parties identified as indemnitees" in the exhibit.**  In fact, neither the word "indemnity" or "indemnitees" appears anywhere in Exhibit F to the General Contract.  Further, nowhere in Exhibit F or any of the other contract documents is there any language stating that the parties to be listed as "Additional Insured" are to also be considered "indemnitees."

Under New Jersey law[7], assuming but not conceding  these provisions are deemed to be ambiguous, ambiguous indemnification provisions are to be strictly construed against the

---

[7] Section 10.16 of the General Contract states that it is to be governed by New Jersey law.  (General Contract at p. 17 of 122.)

indemnitee. *Mantilla v NC Mall Assoc*., 167 NJ 262, 272, 770 A2d 1144, 1151 [2001] ("When the meaning of the [indemnification] clause is ambiguous . . . the clause should be strictly construed against the indemnitee.") (*quoting Ramos v. Browning Ferris Indus. of S. Jersey, Inc*., 103 N.J. 177, 191, 510 A.2d 1152 (1986)).

Accordingly, only "Newark Warehouse Urban Renewal LLC" is the party to whom Hollister owes any indemnification obligation under Section 19.1.1 of Exhibit B of the General Contract, which obligation necessarily does not extend to any of the Edison Parties, even though they may be required to be listed as "Additional Insured" on subcontractors' insurance certificates.

(ii) **Even if the Edison Defendants are "Indemnitees" under the General Contract damages sought by Green Star are carved-out pursuant to Section 19.2.2 and/or as a matter of law**

Even assuming *arguendo* that the Edison Defendants are "Indemnities," under the General Contract, Section 19.2.2 of Exhibit B states that:

> The provisions of the indemnity provided for in this Article 19 shall not be construed to indemnify any Indemnitee for its own negligence if not permitted by law . . . .

(General Contract at p. 62 of 122.)  Further, as a matter of law, given the at-best equivocal nature of the indemnification clause discussed above, the contract should "not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." *Mantilla*, 167 NJ at 272-73, 770 A2d at 1151 (*quoting Ramos*, 103 N.J. at 191, 510 A.2d 1152).

Green Star is seeking from the Edison Parties damages resulting from the Edison Parties' own fraudulent and tortious conduct.  Accordingly, any reliance by the Edison Defendants on any perceived obligation by Hollister to indemnify the Edison Parties for such damages that may

be awarded is so unlikely as to not even be considered to have a "speculative" relation to the

Hollister Bankruptcy. *176-60 Union Turnpike, Inc. v Howard Beach Fitness Ctr., Inc.*, 209 BR

307, 313 [SDNY 1997] ("[t]his Court finds that any controversy having 'only [a] speculative,

indirect or incidental effect on the estate' is not 'related to' the bankruptcy action within the

meaning of Sections 157(a) and (c).") (internal citations omitted).

## III.   Green Star's Claims Should Not Be Severed

On a motion to sever pursuant to Fed. R. Civ. P. 21, "[t]he moving party bears the burden

of demonstrating that 'severance is required to avoid prejudice or confusion and to promote the

ends of justice.'" *N. Jersey Media Group Inc. v Fox News Network, LLC*, 312 FRD 111, 114

[SDNY 2015] (quoting *Agnesini v. Doctor's Assoc., Inc.*, 275 F.R.D. 456, 458 (S.D.N.Y.2011);

other citations omitted).  Further, "[t]he Federal courts view severance as a procedural device to

be employed only in exceptional circumstances."  *Oram v SoulCycle LLC*, 979 F Supp 2d 498,

503 [SDNY 2013] (internal citation omitted).

> Courts in this Circuit consider the following factors in determining if severance is
> appropriate: (1) whether the claims arise out of the same transaction or
> occurrence; (2) whether the claims present some common questions of law or
> fact; (3) whether settlement of the claims or judicial economy would be
> facilitated; (4) whether prejudice would be avoided if severance were granted; and
> (5) whether different witnesses and documentary proof are required for the
> separate claims.

*Id.*

For the reasons discussed below, the Edison Parties have not met their burden of showing

that prejudice and confusion would be avoided if Green Star's claims were severed.  On the

contrary, Green Star would be massively prejudiced and the morass that is the Hollister

Bankruptcy would do nothing but obfuscate and confuse Green Star's state common law-related

claims in the wake of that already-concluded bankruptcy proceeding.

### A.     Despite Different Projects – Crucial Occurrences and Law Overlap

Despite the fact that the New Jersey Project and the New York Project were separate projects, it is crucial that the causes of action on both projects be tried together, because the Edison Parties owned and/or managed both properties, the projects overlapped in time, and the Edison Parties engaged in the same fraudulent and tortious behavior under both projects – i.e. that the Edison Parties purposefully and fraudulently made false statements of material fact in connection  with their refusal to make payment on the final invoice issued by Green Star in both projects.  (Novella Decl. ¶ 21.)

As such, with respect to the Edison Parties, the same witnesses will be needed with respect to both projects.  Severing the claims would unnecessarily burden Green Star, the Edison Parties and the courts with respect to duplicative testimony and discovery.

Importantly in this regard, the Complaint lists facts from both projects under each of Green Star's claims for fraud and tortious interference.  (Complaint at ¶¶ 58-67, 75-82.)  The same fraudulent scheme was undertaken by the Edison Parties for both projects.  (Novella Decl. ¶ 21).  Because of these overlapping questions of law and fact for both projects, it is not appropriate to sever the claims and Green Star would be severely prejudiced as a result, as discussed further *infra.*

### B.     Settlement of the Claims and Judicial Economy Strongly Disfavors Severance

With respect to any prospects for settlement of the claims at issue in the Removed Case, severing the claims would all but destroy any possibility of settlement, since the claims regarding the New Jersey Project would now be embroiled in the Hollister Bankruptcy, leaving little incentive for the Edison Parties to discuss settlement.

As discussed *supra*, pursuant to *Stern*, the removed case cannot be a "core" proceeding to the Hollister bankruptcy and is not a "related case."  Given that the Hollister Bankruptcy is all

but finished – adding this litigation as an adverse proceeding at this late stage will be massively

complicated and render any timely settlement nearly impossible.  Further, the Hollister

Bankruptcy is a massively complicated proceeding involving numerous bankruptcy-related

questions, none of which pertain to Green Star's claims against the Edison Parties sounding in

state common law.  (*See* Hollister Bankruptcy docket maintained by Prime Clerk showing over

1780 docket entries to-date.)  Accordingly, judicial economy strongly favors keeping Green

Star's claims together.

### C.   Green Star severely prejudiced if case severed

Green Star is not subject to the Settlement Agreement and Channeling Injunction in the

Hollister bankruptcy – as discussed *supra*.  Given the complications of bringing Green Star's

claims against the Edison Parties to the Hollister Bankruptcy at this late stage of the Hollister

Bankruptcy, Green Star would be massively prejudiced in being forced to hire New Jersey

bankruptcy counsel to navigate the extremely complicated nature of the Hollister Bankruptcy

proceeding.

Further, Green Star should be permitted to try its claims against the Edison Parties before

a jury.  Simply because Green Star filed a proof of claim in the Hollister Bankruptcy does not

mean that Green Star waived its right to a jury on its state common law claims against the Edison

Parties – especially since its proof of claim was never contested in the Hollister Bankruptcy

proceeding.

> We conclude that neither precedent nor logic supports the proposition that either
> the creditor or the debtor automatically waives all right to a jury trial whenever a
> proof of claim is filed. For a waiver to occur, the dispute must be part of the
> claims-allowance process or affect the hierarchical reordering of creditors' claims.
> Even there the right to a jury trial is lost not so much because it is waived, but
> because the legal dispute has been transformed into an equitable issue.

*Germain v Connecticut Nat. Bank*, 988 F2d 1323, 1330 [2d Cir 1993].  Severing and moving the

case to the New Jersey bankruptcy court would almost certainly eliminate that possibility -- further prejudicing Green Star -- given the lack of any provision for jury selection in the New Jersey Bankruptcy Court's local rules.  (*See* Local Rules of the United States Bankruptcy Court District of New Jersey.)

## IV.    Transfer of Claims to NJ Bankruptcy Court or the NJ District Court is Not Appropriate

Without further belaboring the point, as discussed above, under *Stern* the Removed Case is not a "core" bankruptcy proceeding.  Further, judicial economy clearly disfavors transfer of the Removed Case to the NJ District Court or the NJ Bankruptcy Court.  In addition to the reasons discussed *supra*, the convenience of parties and witnesses, relevant documents, locus of operative facts, means of the parties, familiarity of the court as to the governing law and choice of forum all disfavor transfer of the case to the NJ Bankruptcy Court.

28 U.S.C. §1391 entitled "Venue generally" in pertinent part provides as follows:

(b) Venue in general.--A civil action may be brought in--
    (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
    (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; . . . .

Here, two of the Defendants, Joe Pipia and UA Builders Corp. reside in the State of New York and as such venue was correctly laid.   In addition, the Edison Parties have extensive presence and operations throughout New York City, having taken on the New York Project and numerous other projects.  In fact, the website maintained by the Edison Parties Edison Properties (https://www.edisonproperties.com) indicates that it manages Manhattan Mini Storage which has more than 17 locations through Manhattan.  (Gaboury Decl. ¶ 7.)  As such,  the Edison Parties cannot maintain that venue is improper as though they have no connections to New York and New York City.

Further, the location of the Edison Parties' headquarters even in New Jersey is proximate to New York City, such that relevant documents and locus of operative facts are all proximate to New York City, and the Edison Parties arguments to the contrary should not override Green Star's chosen forum.  Certainly, as a multi-billion dollar organization, the Edison Parties have the means to litigate the proceeding in New York City rather than in New Jersey.  Green Star on the other hand has had to shut down operations due to the damages it has suffered by the actions of the Edison Parties complained of in the Complaint.  (Novella Decl. ¶ 22.)  Having to hire New Jersey bankruptcy counsel in addition to New York counsel will be a tremendous burden on Green Star which is already in financial turmoil due to the fraudulent and tortious actions of the Edison Parties.

Further, this court is more than adequately familiar with both the New York and New Jersey law that may be at issue in the proceeding.

Finally, the Edison Parties argue that the choice of law provision in the General Contract should be ascribed to Green Star.  Green Star was never provided with a copy of the General Contract and thus any requirement in the subcontract in that regard is not enforceable as to Green Star.  *See D.H. Blair & Co., Inc. v Gottdiener*, 462 F3d 95, 103 [2d Cir 2006] ("A court must first determine that the existence of the clause was reasonably communicated to the parties") (internal citation omitted).  Regardless, to the extent New Jersey law is found to govern the dispute, this Court is more than capable of analyzing Green Star's claims under New Jersey law.

## **CONCLUSION**

Based on the foregoing, Green Star respectfully contends that the Edison Parties'

omnibus motion to sever claims and transfer venue should be denied in its entirety.[8]

Dated: New York, New York
     May 17, 2021

<div style="margin-left:40%">

Respectfully submitted,

/s/ Ralph Gaboury
Ralph N. Gaboury
Steven D. Skolnik
Laleh Hawa

COX PADMORE SKOLNIK &
SHAKARCHY LLP

Attorneys for Plaintiff
Green Star Energy Solutions, LLC

630 Third Avenue, 23rd Floor
New York, NY 10017
P: (212) 953-6633
F: (212) 949-6943
E: gaboury@cpsslaw.com
E: skolnik@cpsslaw.com
E: hawa@cpsslaw.com

</div>

---

[8] Because the Court has already approved the Edison Parties' request for an extension of time to Answer, Green Star does not address that portion of the omnibus motion as moot.

24