**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| GREEN STAR ENERGY SOLUTIONS, LLC, |
| *Plaintiff*, |
| vs. |
| EDISON PROPERTIES, LLC, EDISON CONSTRUCTION MANAGEMENT, LLC, UA BUILDERS CORP., PASQUALE SURIANO and JOE PIPIA, |
| *Defendants*. |

Case No.: 1:21-cv-02682-LJL

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO SEVER CLAIMS, TRANSFER VENUE AND EXTEND TIME TO
ANSWER**

---

**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
(973) 228-5700
*Attorneys for Defendants Edison Properties,
LLC, Pasquale Suriano, Edison
Construction Management, LLC and Joseph
Pipia*

On the Brief:
Michael H. Ansell, Esq.

BE:11814200.2/EDI022-279842

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES ................................................................................... iv

PRELIMINARY STATEMENT ..............................................................................1

LEGAL ARGUMENT ............................................................................................3

    I.    The Claims Arising From The New Jersey Project Should Be Severed From
The Claims Related To The New York Project ................................................3

        A.    Plaintiff's Claims Arise out of Different Transactions and/or
Occurrences...............................................................................4

        B.    Plaintiff's Claims Present Different Questions of Law and Fact................7

        C.    Settlement of the Claims and Judicial Economy will be Facilitated by
Severance ...................................................................................7

        D.    Prejudice will be Avoided by Granting Severance ......................................8

        E.    Different Witnesses and Evidence are Required for the Separate
Claims ........................................................................................9

    II.    Transfer Of The Claims Arising From The New Jersey Project To The United
States District Court For The District Of New Jersey Is Appropriate ....................9

    III.    The Bankruptcy Court Can Exercise Jurisdiction Over This Matter ....................10

        A.    The Bankruptcy Court has Authority and is in the Best Position to
Determine whether this Matter is a Core Proceeding or Related To the
Hollister Bankruptcy. ....................................................................12

        B.    The Removed Case is "Related To" the Hollister Bankruptcy..................13

            i.    Plaintiff's Claims Are Subject to the Settlement Agreement
and Channeling Injunction in the Hollister Bankruptcy ...............14

            ii.    Hollister may be Liable to Defendants for Defense and
Indemnification of Plaintiff's Claims Arising from the New
Jersey Project ......................................................................16

            iii.    Hollister will Incur Costs even if not Obligated to Defend and
Indemnify Defendants...........................................................22

            iv.    Any Monetary Relief that Plaintiff Obtains from Defendants
will Impact the Distribution of Hollister's Estate in the
Hollister Bankruptcy ............................................................22

ii

CONCLUSION......................................................................................................................23

BE:11814200.2/EDI022-279842

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A.H. Robins v. Piccinin,*
    788 F.2d 994 (4th Cir. 1986) ...............................................................................18

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,*
    No. 03 MDL 1529, 2005 WL 1404798 (S.D.N.Y. June 14, 2005)........................22

*In re Ames Dep't Stores, Inc.,*
    190 B.R. 157 (S.D.N.Y. 1995) ..............................................................................11

*In re Best Prods. Co., Inc.,*
    68 F.3d 26 (2d Cir. 1995) ......................................................................................11

*Carmania Corp. v. Hambrecht Terrell Intern.,*
    705 F. Supp. 936 (S.D.N.Y. 1989) ..........................................................................5

*Celotex Corp. v. Edwards,*
    514 U.S. 300 (1995) ...............................................................................................11

*In re Cuyahoga Equip. Corp.,*
    980 F.2d 110 (2d Cir. 1992) ..................................................................................11

*In re Dow Corning Corp.,*
    86 F.3d 482 (6th Cir. 1996) ...................................................................................18

*In re El Paso Refinery, LP,*
    302 F.3d 343 (5th Cir. 2002) .................................................................................18

*Exec. Benefits Ins. Agency v. Arkison,*
    573 U.S. 25 (2014)...........................................................................................12, 13

*In re Hollister Construction Services, LLC,*
    Case No. 19-27439 (MBK) (Bankr. D.N.J.) ................................................ *passim*

*Landtek Group, Inc. v. N. Am. Specialty Flooring, Inc.,*
    14-cv-1095 (SJF)(AKT), 2016 WL 11264722 (E.D.N.Y. Aug. 12, 2016)..............5

*In re Millenium Seacarriers, Inc.,*
    458 F.3d 92 (2d Cir. 2006).....................................................................................10

*In re Petrie Retail,*
    304 F.3d 223 (2d Cir. 2002)...................................................................................11

*In re Purdue Pharms. L.P.,*
    619 B.R. 38 (S.D.N.Y. 2020)........................................................................ *passim*

iv

*In re Residential Cap., LLC,*
    512 B.R. 179 (Bankr. S.D.N.Y. 2014) ................................................................15

*Smartmantic USA Corp. v. Dominion Voting Systems Corp.,*
    2013 WL 5798986 (S.D.N.Y. Oct. 22, 2013) ......................................................9

*SPV Osus Ltd. v. UBS AG,*
    882 F.3d 333 (2d Cir. 2018) ..........................................................................13, 14

*Stern v. Marshall,*
    564 U.S. 462 (2011) ...........................................................................................12

*Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.,*
    215 F.R.D. 621 (D. Kan. 2003) ...........................................................................9

*In re Wolverine Radio Co.,*
    930 F.2d 1132 (6th Cir. 1991) ...........................................................................18

*In re WorldCom, Inc. Sec. Litig.,*
    293 B.R. 308 (S.D.N.Y. 2003) .....................................................................17, 22

**State Cases**

*Cronos Grp. Ltd. v. XComIP, LLC,*
    156 A.D.3d 54 (1st Dep't 2017) ...........................................................................6

*Hardy ex rel. Dowdell v. Abdul-Matin,*
    198 N.J. 95 (2009) ..............................................................................................20

*Young v. Williams,*
    47 A.D.3d 1084 (3d Dep't 2008) .........................................................................6

**Federal Statutes**

28 U.S.C. § 157 ...........................................................................................2, 12, 13

28 U.S.C. § 1332(a) ...........................................................................................1

28 U.S.C. § 1404 ...................................................................................1, 9, 10

28 U.S.C. § 1412 ...................................................................................9, 10

**Rules**

Fed. R. Bankr. P. 7022 ...........................................................................................1

Fed. R. Civ. P. 21 ...........................................................................................1

Fed. R. Civ. P. 22 ...........................................................................................1

v

## PRELIMINARY STATEMENT

Although not relevant to the Court's determination of Defendants', Edison Properties, LLC ("Edison Properties"), Pasquale Suriano ("Suriano"), Edison Construction Management. LLC ("ECM"), and Joseph Pipia ("Pipia") (collectively, "Defendants") [1], Motion to Sever Claims and Transfer Venue (the "Motion"), it must be noted, since Plaintiff Green Star Energy Solutions, LLC ("Green Star" or "Plaintiff") devoted so much of its brief to this issue, Plaintiff's fraud claims are completely without merit and are otherwise barred by the economic loss doctrine as they are nothing more than breach of contract claims in disguise.

Moreover, the severance and transfer of Plaintiff's claims to the United States District Court for the District Court of New Jersey should be granted regardless of the existence of any core or related bankruptcy proceedings pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a) as Plaintiff's Complaint improperly combines various causes of action, against different defendants, arising from different contracts, with different owners and general contractors, for different construction projects, on different projects in different states.  The claims related to the New Jersey Project have no common facts with the claims related to the New York Project.  The claims were merely asserted together in the same Complaint in an effort to obtain personal jurisdiction in New York over Defendants Edison Properties and Suriano, and to defeat diversity jurisdiction in this Court.  Such misjoinder should not be countenanced by this Court.  Thus, the claims related to the New Jersey Project should be severed from the claims related to the New York Project and transferred to the United States District Court for the District Court of New Jersey, where diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) as Plaintiff alleges damages in excess of

---

[1]     Greenstar joined the wrong parties in this lawsuit and Defendants reserve all rights, including the right to interplead pursuant to Fed. R. Civ. P. 22 and Fed. R. Bankr. P. 7022.

$75,000, and because Plaintiff does not share citizenship of the same State with any of the Defendants. Upon severance and transfer of the New Jersey Project claims, this Court will no longer have jurisdiction over the New York Project claims, resulting in remand to the New York State Court.

In any event, the remaining substance of Plaintiff's opposition to the Motion seeks to have this Court make findings that are more appropriately made by the Bankruptcy Court in the bankruptcy proceeding filed by Hollister Construction Services, LLC's ("Hollister"), captioned *In re Hollister Construction Services, LLC,* Case No. 19-27439 (MBK) (Bankr. D.N.J.) (the "Hollister Bankruptcy"), pending in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). For instance, Plaintiff seeks to have this Court declare that this matter is not a "core" proceeding or "related to" the Hollister Bankruptcy. However, pursuant to the applicable statute, the "bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that it otherwise related to a case under title 11." 28 U.S.C. § 157(b)(3). Moreover, even if the matter is ultimately found not to be a "core proceeding" to the Hollister Bankruptcy, that does not deprive the Bankruptcy Court of jurisdiction to hear the matter and make findings and recommendations for review and approval by the United States District Court for the District of New Jersey. Thus, not only is the Bankruptcy Court in a better position, given its knowledge of the Hollister Bankruptcy and all the facts and claims related thereto, to decide these issue; it is statutorily authorized to determine whether Plaintiff's claim is core, and if not, to issue findings and recommendations for district court approval.

Likewise, Plaintiff asks this Court to determine that Hollister does not owe Defendant any indemnification obligations pursuant to the September 7, 2018 General Contractor Construction

BE:11814200.2/EDI022-279842

Contract (among other contracts) (together with all amendments, the "General Contract") between Newark Warehouse Urban Renewal, LLC ("NWUR"), a New Jersey limited liability company affiliated with Defendant Edison Properties, and Hollister for the New Jersey Project. Undoubtedly, such a determination is inappropriate for this Court to make for a number of reasons. First, Hollister is not a party to this action and the Court's determination may adjudicate a claim against Hollister that arose prior to the commencement of the Hollister Bankruptcy in violation of the automatic stay. Moreover, the very fact that there is a question as to whether Hollister may be obligated to indemnify Defendants makes this matter related to the Hollister Bankruptcy, thereby making severance and transfer appropriate.

Accordingly, Defendants hereby respectfully move for an Order: (i) to sever the claims related to the construction project at 110 Edison Place, Newark, Jersey (the "New Jersey Project"), from the other claims against Defendants related to the construction project at 543 West 43rd Street, New York, New York (the "New York Project"); and (ii) to transfer venue of the New Jersey Project claims to the United States District Court for the District of New Jersey for referral to the United States Bankruptcy Court for the District of New Jersey.

## LEGAL ARGUMENT

I.   **The Claims Arising From The New Jersey Project Should Be Severed From The Claims Related To The New York Project.**

As set forth in Section II of Defendants' Moving Brief, there are two separate and distinct construction projects; one in New York and one in New Jersey. The New York Project has nothing to do with the New Jersey Project and Plaintiff's claims arising from the New Jersey Project have no common facts with the claims related to the New York Project. The claims were brought together in the same Complaint solely to try to overcome the lack of personal jurisdiction in New York state court over Defendants Edison Properties and Suriano, and to defeat diversity

3

jurisdiction removal to this Court.  Regardless of whether Plaintiff's claims are "core proceedings" or "related to" the Hollister Bankruptcy, the Court should exercise its discretion and sever and transfer the claims arising from the New Jersey Project to the United States District Court for the District of New Jersey, and remand Plaintiff's claims arising from the New York Project back to the New York State Court as this Court would no longer have jurisdiction.

### A.      Plaintiff's Claims Arise out of Different Transactions and/or Occurrences.

Plaintiff's efforts to conflate claims against different defendants, arising from different contracts, with different owners and general contractors, for different construction projects, in different states, are unavailing.  In fact, Plaintiff's argument that the claims arise from the same transaction or occurrence is without any substantive support and is merely conclusory in nature, supported by nothing but its own self-serving allegations.  Rather, in its Complaint, Plaintiff acknowledges that there are two (2) separate properties, in two (2) different states for which Plaintiff was retained to provide HVAC services, pursuant to two (2) different subcontracts with two (2) different general contractors.  *See* ECF No. 6-1 at ¶¶ 9, 19, 47.  On what rationale can it be found that these claims arise from the same transaction or occurrence?

To create some overlap, Plaintiff falsely claims that the "Edison Parties owned and/or managed both properties."  To the contrary, neither Edison Properties nor ECM is the owner of the property subject to the New Jersey Project nor the party in contract with Hollister.  *See* ECF No. 22-1 at p. 1 (identifying Newark Warehouse Urban Renewal, LLC as the party in contract with Hollister); *see also* Reply Declaration of Michael H. Ansell, Esq., dated June 2, 2021 ("Ansell Reply Decl."), at ¶ 3 and **Exhibit A** (identifying Newark Warehouse Redeveloper Company, LLC as the "Grantee" on the Deed for the property).  Likewise, neither Edison Properties nor ECM is the owner of the property subject to the New York Project.  *See* Ansell Reply Decl. at ¶ 4 and

4

**Exhibit B** (identifying HLP Properties, LLC as the "Grantee/Buyer" of the property).  Moreover, Edison Properties was not the party in contract with Hollister.  *See* Ansell Reply Decl. at ¶ 5 and **Exhibit C** (identifying Defendant ECM as the party in contract with Defendant UA Builders Corp.).

Plaintiff further argues there is overlap between the claims because "the Edison Parties engaged in the same fraudulent and tortious behavior under both projects."  However, these flimsiest of fraud claims against Defendants are unlikely to withstand a motion to dismiss. Regardless of how many times the Plaintiff attempts to conjure up a fraud claim, this matter involves nothing more than plain vanilla breach of contract claims, stemming from two separate and distinct construction contracts.  *See Carmania Corp. v. Hambrecht  Terrell Intern.*, 705 F. Supp. 936, 938 (S.D.N.Y. 1989) (establishing an independent legal duty is "only one of the dikes that New York courts have erected in their inevitable attempt to keep contract law from drowning in a sea of tort[;]" a party must also demonstrate that its damages go beyond "economic loss" to "recover in tort" (internal quotation marks and citations omitted)); *Landtek Group, Inc. v. N. Am. Specialty Flooring, Inc.*, 14-cv-1095 (SJF)(AKT), 2016 WL 11264722 at *17 (E.D.N.Y. Aug. 12, 2016) (Report & Recommendation), *adopted at*, 2016 WL 8671839 (E.D.N.Y. Sept. 16, 2016) (the economic loss rule provides that "no tort recovery can be had … for contractually based economic loss …" (internal quotation marks and citations omitted)).

Moreover, assuming the fraud claims are not barred by the economic loss doctrine, they nonetheless, fail to meet the heightened standard required for pleading fraud as Plaintiff does not even claim it relied on any of the alleged false statements made by Defendants, with the exception of the representation that Plaintiff would be timely paid if it became a subcontractor on the New Jersey Project.  Therefore, Plaintiff has utterly failed to satisfy even the most elementary of

pleading requirements for a fraud claim.  *See* ECF No. 6-1 at ¶¶ 18, 38, 42, 44, 53; *see also Young v. Williams*, 47 A.D.3d 1084, 1086 (3d Dep't 2008) ("The elements of a fraud claim are that … (4) [the] plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct …").  As to the one representation upon which Plaintiff is alleged to have relied, since it thereafter entered into a contract with Hollister for its work on the New Jersey Project, the fraud claim is duplicative of a breach of contract claim and subject to dismissal under New York law.  *See Cronos Grp. Ltd. v. XComIP, LLC*, 156 A.D.3d 54, 62 (1st Dep't 2017) (Under New York law it is a well-settled "principle that a fraud claim is not stated by allegations that simply duplicate, in the facts alleged and damages sought, a claim for breach of contract, enhanced only by conclusory allegations that the pleader's adversary made a promise while harboring the concealed intent not to perform it.").  Thus, the only bases upon which Plaintiff's argument that its claims related to the New Jersey Project and New York Project arise from the same transaction or occurrence are easily debunked.

Plaintiff also ignores the fact that a defense to its claims is that it performed defective work, failed to perform its work in a timely manner, or otherwise breached its Subcontracts on each project.  These defenses will require substantial evidence (documentary and testimony) specific to each project, one of which is located in New Jersey with numerous New Jersey individuals and entities as necessary witnesses, and one of which is located in New York with numerous New York individuals and entities as necessary witnesses.

Thus, Plaintiff's claims as to each project are clearly and significantly different from one another, as they involve different work performed by Plaintiff, on different properties, in different states, pursuant to different subcontracts, with different general contractors, and are asserted

6

against different defendants.  Therefore, the first factor weighs in favor of severing Plaintiff's claims related to the New Jersey Project from those claims related to the New York Project.

      **B.**    <u>**Plaintiff's Claims Present Different Questions of Law and Fact.**</u>

Plaintiff does not address this necessary factor because it has no legal or factual basis to do so.  Thus, this Court should find, as a matter of law, for the reasons set forth in Section I(A), *supra*, that the Plaintiff's claims related to the New Jersey Project and New York Project do not present common questions of law or fact.

      **C.**    <u>**Settlement of the Claims and Judicial Economy will be Facilitated by Severance.**</u>

Contrary to Plaintiff's arguments, its best chance of settlement lies in being a party to the Channeling Injunction in the Hollister Bankruptcy and recovering from the claims fund. Moreover, litigation of the claims related to the New Jersey Project asserted in the Removed Case belongs in a New Jersey forum pursuant to the General Contract between Hollister and NWUR. Plaintiff agreed to be bound, before beginning work on the New Jersey Project, to the General Contract which provides that they would be "governed by the laws of the State of New Jersey," and   subject to "the personal jurisdiction of the Courts of the State of New Jersey."  *See* ECF No. 22-1 at p. 17, ¶ 10.16.  Moreover, the claims related to the New Jersey Project are directed to Defendants Edison Properties and Suriano, both in New Jersey, and to a construction project that took place in Newark, New Jersey.

Accordingly, severance of the claims related to the New Jersey Project for transfer to the United States District Court for the District of New Jersey for referral to the New Jersey Bankruptcy Court will facilitate settlement and judicial economy.

7

### D.     <u>Prejudice will be Avoided by Granting Severance</u>.

There is no prejudice to Plaintiff if the claims are severed and the New Jersey Project claims are transferred to the Unites States District Court for the District of New Jersey, where all of the claims relating to the New Jersey Project can be handled. The only prejudice alleged by Plaintiff is simply that it will be more difficult to bring its claims against Defendants in the Hollister Bankruptcy and that it will lose its right to a jury trial. Contrary to Plaintiff's arguments, it will not necessarily lose its right to a jury trial. Procedurally, the severed claims arising from the New Jersey Project should be transferred to the United States District Court for the District of New Jersey, where Plaintiff can object to the referral to the Bankruptcy Court. The District Court of New Jersey may decide to retain jurisdiction, allowing for a trial by jury. Moreover, by removing the complexities involved in the Hollister Bankruptcy and Defendants' defenses related thereto, Plaintiff and Defendant UA Builder's Corp. will be able to have the claims related to the New York Project more efficiently adjudicated.

On the other end of the spectrum, as set forth in Section III(B), *infra*, the NWUR Parties, including Defendants, will be prejudiced as they have paid $2.1 million to establish a claims fund in the Hollister Bankruptcy for the purpose of finalizing all of the creditors' claims, including Plaintiff's claim. If Plaintiff's claims are not severed and transferred, Defendants will have to spend the time and money to litigate and potentially pay a claim, which was clearly intended to be subjected to the Settlement Agreement and Channeling Injunction. Defendants would thus be severely prejudiced if they are forced to relitigate claims that were intended to be resolved by the Channeling Injunction, which require the involvement of the Bankruptcy Court.

E. **Different Witnesses and Evidence are Required for the Separate Claims**.

Evidence and testimony related to the work performed by Plaintiff on these separate and different projects, the contracts between Plaintiff and the general contractors, the payments received by Green Star, and the payments alleged by Green Star to remain outstanding, will be completely distinct. Thus, the evidence and testimony required to establish Plaintiff's claims related to the New Jersey Project will be unrelated to the evidence and testimony required to establish Plaintiff's claims related to the New Jersey Project.

Based on the foregoing, all five of the enumerated factors weigh in favor of severance. In addition to the enumerated factors, there is further support for severance because "[s]everance is particularly appropriate where ... the court determines that venue should be transferred as to some claims or parties." *Tab Exp. Int'l, Inc. v. Aviation Simulation Tech., Inc.*, 215 F.R.D. 621, 624 (D. Kan. 2003). Here, severance is appropriate because the claims arising from the New Jersey Project should be transferred to the United States District Court for the District of New Jersey for referral to the New Jersey Bankruptcy Court and the claims related to the New York Project should be remanded to the New York Supreme Court, New York County.

II. **Transfer Of The Claims Arising From The New Jersey Project To The United States District Court For The District Of New Jersey Is Appropriate.**

As further detailed in Section III of Defendants' Moving Brief, the transfer of venue to the United States District Court for the District of New Jersey is warranted pursuant to both 28 U.S.C. § 1404 and 28 U.S.C. § 1412. In support of its argument that transfer is not appropriate, Plaintiff relies only on a website and the fact that Edison Properties' headquarters is *close* to New York City. This fact alone is not sufficient to defeat the transfer. Plaintiff does not even bother to articulate why transfer is warranted under the eight (8) factors that the Court is to consider. *See Smartmantic USA Corp. v. Dominion Voting Systems Corp.*, 2013 WL 5798986, * 3 (S.D.N.Y.

9

Oct. 22, 2013) (citing *Goggins v. Alliance Capital Mgmt, L.P.*, 279 F. Supp. 2d. 228, 232 (S.D.N.Y. 2003).

Plaintiff correctly notes that Defendants Joe Pipia and UA Builders Corp. (parties to the New York Project only) reside in New York.  However, UA Builders and Joe Pipia have nothing to do with New Jersey Project and since the claims related to the New York Project will remain in New York, such facts are irrelevant.  Moreover, the Court need not find that New York lacks personal jurisdiction over Defendants in order to grant the transfer, as Plaintiff suggests.  Although Defendants aver that New York lacks personal jurisdiction over Defendants Edison Properties and Suriano; such a finding is not relevant to Court's decision to transfer venue.  Likewise, whether venue may be properly laid in New York is also not relevant to whether transfer is appropriate. Rather, what matters is that, for the reasons set forth in Section III(A), *infra*, and Section III of Defendants' Moving Brief, the United States District Court for the District of New Jersey is the appropriate venue for the claims related to the New Jersey Project as it has diversity jurisdiction due to Plaintiff's claim of  damages of no less than $220,060.58, because Plaintiff is a citizen of Connecticut and because the Defendants are either citizens of New Jersey or New York.  *See* ECF No. 6-1 at ¶¶ 1-6, 34

Accordingly, for the aforementioned reasons, and all of the reasons set forth in Sections I and III, herein, as well as for the reasons set forth in Section III of Defendants' Moving Brief, the transfer of venue to the United States District Court for the District of New Jersey is warranted pursuant to both 28 U.S.C. § 1404 and 28 U.S.C. § 1412.

## III.    <u>The Bankruptcy Court Can Exercise Jurisdiction Over This Matter</u>.

Despite Plaintiff's argument that its claims are not a "core proceeding" to the Hollister Bankruptcy, the scope of bankruptcy jurisdiction is broad.  *See In re Millenium Seacarriers, Inc.,*

458 F.3d 92, 95 (2d Cir. 2006); *In re Petrie Retail,* 304 F.3d 223, 229 (2d Cir. 2002) ("Congress ... intended that the [bankruptcy court's] jurisdiction would be construed as broadly as possible ..."); *In re Best Prods. Co., Inc.,* 68 F.3d 26, 30-31 (2d Cir. 1995). A proceeding is within bankruptcy jurisdiction under § 1334(b) if its outcome might have any "conceivable effect" on the bankruptcy estate. *In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 114 (2d Cir. 1992) (citation omitted); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 308 n.6 (1995) ("...whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy ... (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original)). A proceeding is within bankruptcy jurisdiction if "the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *In re Ames Dep't Stores, Inc.,* 190 B.R. 157, 160 (S.D.N.Y. 1995) (quoting *Pacor,* 743 F.2d at 994); *see also Celotex*, 514 U.S. at 308 n.6 (same). The proceeding "need not necessarily be against the debtor or against the debtor's property." *Ames Dep't Stores*, 190 B.R. at 160 (quoting *Pacor,* 743 F.2d at 994); *see also Celotex,* 514 U.S. at 308 n.6 (same); *In re Petrie Retail,* 304 F.3d at 230-31 (bankruptcy court had jurisdiction over contract dispute between two non-debtor parties); *In re Best Prods. Co., Inc.,* 68 F.3d at 31-32 (bankruptcy court had jurisdiction to enforce pre-petition subordination agreement between two creditors).

Thus, the Bankruptcy Court is vested with the authority to exercise jurisdiction to determine if Plaintiff's claims are "core proceedings" or "related to" the Hollister Bankruptcy.

BE:11814200.2/EDI022-279842

**A.     The Bankruptcy Court has Authority and is in the Best Position to Determine whether this Matter is a Core Proceeding or Related To the Hollister <u>Bankruptcy</u>.**

Pursuant to 28 U.S.C. § 157:

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.

28 U.S.C. § 157(b)(3).

Moreover, the statute further provides:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1).

The Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011) in no way effected the authority of the bankruptcy courts to make an initial determination as to whether a case is a "core proceeding" or "related to" a bankruptcy proceeding.  In fact, in *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25 (2014), the Supreme Court held that if a claim is "related to" a bankruptcy proceeding, "[t]he bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment."  *Id.* at 36.

Thus, the Bankruptcy Court has jurisdiction to determine whether the Plaintiff's Complaint, as it relates to the New Jersey Project, is a core proceeding to the Hollister Bankruptcy.

*See* 28 U.S.C. § 157(b)(3). Even if it is not a core proceeding, the Bankruptcy Court has the jurisdiction to "submit proposed findings of fact and conclusions of law to the district court" as to Plaintiff's claims arising from the New Jersey Project are undoubtedly related to the Hollister Bankruptcy for the reasons set forth in Section I(B), *infra*. *See* 28 U.S.C. § 157(c)(1). The Bankruptcy Court has been handling the Hollister Bankruptcy since September 2019, *See* ECF No. 6 at ¶ 4; Hollister Bankruptcy ECF No. 1. Moreover, the Bankruptcy Court approved the Settlement Agreement and Channeling Injunction in the Hollister Bankruptcy, which now must be interpreted and revisited given Plaintiff's late assertion of claims against Defendants that were supposed to be precluded thereby. *See* ECF No. 6 at ¶¶ 12-13; Hollister Bankruptcy ECF No. 1598; Hollister Bankruptcy Adversary ECF No. 58. As such, the Bankruptcy Court is intimately familiar with all of the facts and legal issues that must necessarily be reviewed to determine whether this case is a "core proceeding" or "related to" the Hollister Bankruptcy, and if it is "related to" the Hollister Bankruptcy, then the Bankruptcy Court should "hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment." *Exec. Benefits Ins. Agency*, 573 U.S. at 36.

### B.     The Removed Case is "Related To" the Hollister Bankruptcy.

Plaintiff claims in its opposition brief that its claims arising from the New Jersey Project are not "related to" the Hollister Bankruptcy. However, "[i]n this Circuit, 'a civil proceeding is related to a title 11 case if the action's outcome might have any conceivable effect on the bankrupt estate.'" *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339–40 (2d Cir. 2018) (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011) (internal quotation marks omitted)). "'If that question is answered affirmatively, the litigation falls within the 'related to' jurisdiction of the bankruptcy court.'" *SPV Osus Ltd.*, 882 F.3d at 340 (quoting *In re Cuyahoga*

13

Case 1:21-cv-02682-LJL   Document 26   Filed 06/02/21   Page 19 of 28

*Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)).  "While related to' jurisdiction is not limitless, it is fairly capacious, and includes suits between third parties which have an effect on the bankruptcy estate." *SPV Osus Ltd.*, 882 F.3d at 340 (internal citations and quotations omitted).  "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (internal citations and quotations omitted).

"[W]hen one tortfeasor files for bankruptcy, any action against their co-tortfeasors for the same conduct falls within the bankruptcy court's 'related to' jurisdiction, since a finding of joint and several liability against the whole group could impact the *res* of the insolvent party's estate." *In re Purdue Pharms. L.P.*, 619 B.R. 38, 50 (S.D.N.Y. 2020) (citing *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018)).  This is so "because a judgment implicating the debtor's conduct could conceivably 'alter the debtor's rights, liability, options, or freedom of action." *In re Purdue Pharms. LP.*, 619 B.R. at 50 (quoting *SPV Osus Ltd.*, 882 F.3d at 340).

As set forth in greater detail in Section I(A) of Defendants' Moving Brief, the Removed Case is a civil proceeding that is directly related to the Hollister Bankruptcy in multiple respects.

      **i.**      **Plaintiff's Claims Are Subject to the Settlement Agreement and Channeling Injunction in the Hollister Bankruptcy.**

Plaintiff's claims related to the New Jersey Project are subject to the Settlement Agreement with Hollister and the Channeling Injunction issued in the Hollister Bankruptcy and the Adversary Proceeding filed by Hollister therein related to the New Jersey Project, Case No. 20-01396-MBK (the "Hollister Bankruptcy Adversary").,  The Settlement Agreement and Channeling Injunction requires lien claimants on the New Jersey Project and parties with actual or potential *quantum meruit* and related claims against the Newark Warehouse Urban Renewal, LLC ("NWUR") and its affiliates, assigns, employees, and agents, including Defendants Edison Properties, ECM,

14

Suriano, and Pipia (the "NWUR Parties"), to seek payment through a separate claim fund established in the Hollister Bankruptcy. *See* ECF No. 6 at ¶ 17(a); Hollister Bankruptcy ECF Nos. 1263, 1237, 1598, Hollister Bankruptcy Adversary ECF No. 58. Importantly, despite Plaintiff's arguments to the contrary, the Channeling Injunction provides the exclusive remedy for the subcontractors and vendors on the New Jersey Project and releases all claims against the NWUR Parties, including Defendants. *See* Hollister Bankruptcy Adversary ECF No. 58 at ¶¶ 2(E)-(F). The Channeling Injunction was issued as a result of a Settlement Agreement between Hollister and the NWUR Parties, wherein (i) the NWUR Parties made payments to the Debtor's estate of $2.1 million; (ii) Hollister and the NWUR Parties entered into releases; and (iii) the NWUR Parties withdrew their motion to remand their state court action against Hollister and dismissed their Adversary Proceeding against Hollister for the purpose of securing complete resolution of all creditors' claims related to the New Jersey Project. *See* Hollister Bankruptcy ECF No. 1598 at ¶¶ 3-4. The Settlement Agreement was conditioned upon entry of the Channeling Injunction for just this reason. *See* Hollister Bankruptcy ECF No. 1598 at ¶ 3. In this Circuit, a bankruptcy court has jurisdiction to "enjoin third party nondebtor claims that directly affect the res of the bankruptcy estate." *In re Residential Cap., LLC*, 512 B.R. 179, 188 (Bankr. S.D.N.Y. 2014) (citing *In re Johns–Manville Corp.,* 600 F.3d 135, 152 (2d Cir. 2010)). Moreover, "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." *In re Residential Cap., LLC*, 512 B.R. at 188 (internal quotations and citation omitted).

Although Plaintiff is correct that Hollister mistakenly failed to include it as a party to the Hollister Bankruptcy Adversary, and therefore it was not named in the Channeling Injunction, that does not render Plaintiff's claims unrelated to the Hollister Bankruptcy. Defendants seek to have

Plaintiff's claims related to the New Jersey Project transferred to the Bankruptcy Court, in part, to seek a modification of the Channeling Injunction to include Plaintiff. In the event that Defendants are not successful, then the NWUR Parties may have a basis to void the Settlement Agreement based on Hollister's mistake and failure to satisfy the condition precedent of securing a release of all claims against the NWUR Parties related to the New Jersey Project. Since it was the NWUR Parties, including Defendants, funding of a claims fund pursuant to the Settlement Agreement that enabled Hollister to establish the claims fund for the New Jersey Project creditors, voiding the Settlement Agreement would not only expose Hollister to liability as to the NWUR Parties, but it could open the floodgates of creditor claims against Hollister related to the New Jersey Project and not only impact the res of Hollister's estate, but also undermine the Plan and effect the allocations of distributions to creditors. Accordingly, whether Plaintiff is named in the Channeling Injunction is irrelevant to whether its claims are "related to" the Hollister Bankruptcy, as Plaintiff argues. If Defendants are not even permitted to attempt to have Plaintiff's claims added to the Channeling Injunction, they will be deprived of the purpose of the Channeling Injunction they secured through lengthy and costly litigation intended to include all creditors, including Plaintiff, in the Settlement Agreement and the allocation of distribution to creditors.

> **ii.**    **Hollister may be Liable to Defendants for Defense and Indemnification of Plaintiff's Claims Arising from the New Jersey Project.**

Equally significantly, pursuant to Article 19.1.1 of Hollister's contract with NWUR for the New Jersey Project, Hollister is obligated to defend and indemnify all "Indemnitees" from any and all claims arising from Hollister's work on the New Jersey Project. *See* ECF No. 22-1 at p. 63, § 19.1.1. Plaintiff's argument that Hollister does not have an indemnification obligation to Defendants is not only without merit, it is irrelevant as the mere question of whether Hollister has

an indemnification obligation to Defendants renders the claims arising from the New Jersey Project "related to" the Hollister Bankruptcy.

"'Where a third party claim may give rise to a potential indemnification or contribution claim against the estate, the third party claim will have a conceivable effect on the estate, and accordingly, the Court has the jurisdiction to enjoin it.'" *In re Purdue Pharms. LP.*, 619 B.R. at 51 (quoting *In re SunEdison, Inc.*, 576 B.R. 453, 462–63 (Bankr. S.D.N.Y. 2017) (collecting cases). Significantly, "[s]uch a claim arising from third party litigation ***need not be certain to succeed*** in order for the bankruptcy court to exercise jurisdiction over the related case; 'contingent outcomes can satisfy the 'conceivable effects' test, so long as there is a *possibility* of an effect on the estate.'" *In re Purdue Pharms. LP.*, 619 B.R. at 51 (quoting *SPV Osus Ltd.*, 882 F.3d at 340 (emphasis added) (quoting *N.Y. Comm. Bank v. Pullo*, No. 12-02052 (BRL), 2013 WL 494050, at *3 (Bankr. S.D.N.Y. Feb. 7, 2013))).

"In determining whether potential claims by third party defendants against the debtor for either indemnification or contribution give rise to "related to" jurisdiction over litigation to which the debtor is not a party, courts in this circuit ... have generally found jurisdiction where there is a 'reasonable' legal basis for the claim." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. 308, 319 (S.D.N.Y. 2003) (collecting cases). "Courts in this Circuit have embraced neither an elevated evidentiary standard nor proof of 'automatic liability' as prerequisites for the bankruptcy court's exercise of 'related to' jurisdiction." *In re Purdue Pharms. LP.*, 619 B.R. at 53. Rather, "even unsuccessful claims, or those raised in subsequent, untimely, and frivolous lawsuits can 'result in the estate incurring costs,' which directly impacts the *res* of the bankruptcy." *In re Purdue Pharms. LP.*, 619 B.R. at 53 (quoting *SPV Osus Ltd.*, 882 F.3d at 341).

17

The mere fact that there is a question of a debtor's indemnification obligations makes a case involving third parties "related to" the bankruptcy. *See In re El Paso Refinery, LP*, 302 F.3d 343, 348–49 (5th Cir. 2002) (holding a "chain of indemnification provisions" that could be used to assert a claim against the debtor allowed for "related to" jurisdiction); *In re Dow Corning Corp*., 86 F.3d 482, 489–94 (6th Cir. 1996) (holding that suits against manufacturers and suppliers of silicone gel breast implants were "related to" the bankruptcy of the Dow Corning Corporation because of potential claims for contribution and indemnification against Dow); *In re Wolverine Radio Co*., 930 F.2d 1132, 1143 (6th Cir. 1991) ("related to" jurisdiction found based on contractual indemnification provision even though the debtor "would not be affected until and unless [the third party] invoked the indemnification" clause); *A.H. Robins v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) (litigation "related to" bankruptcy proceedings when brought against officers of debtor who may be entitled to indemnification under debtor's insurance policy).

In addressing the implications of an indemnification obligation by a debtor, the court in *In re Purdue Pharms. L.P.*, permitted the bankruptcy court to exercise jurisdiction over a complaint "related to" the Purdue bankruptcy accusing Purdue's former president "of interrelated conduct that contributed to the same harms."  *In re Purdue Pharms. LP.*, 619 B.R. at 50.  The district court held that "allowing the Appellants to proceed against Purdue's former president and co-chairman could 'conceivably affect' the *res* of the Debtors' estate, because the individual case is likely to raise the issue of the corporate entity's liability, even if only indirectly."  *Id.*  Moreover, the district court further found that the bankruptcy court correctly exercised its "related to" jurisdiction because "it is at the very least conceivable that a proceeding against Dr. Sackler could result in his asserting a claim for contribution or indemnification against Purdue – which is to say, against the Debtors' estate."  *Id.* at 51.  In fact, in response to the argument that the statute plaintiffs claim Dr.

18

Sackler violated bars indemnification of those claims, the district court found that "the complaint that Purdue's indemnification obligation to Dr. Sackler is 'untested' raise questions that a court can answer if and when it reaches the merits of that claim; they are not relevant to whether the Bankruptcy Court has jurisdiction to reach the merits." *Id.* at 54. The district court continued that "[n]either this Court nor the Bankruptcy Court is required to decide whether Dr. Sackler will prevail on his indemnification claims in order to find the *Dunaway* Action has a 'conceivable effect' on the Debtors' estate." *Id.* Rather, "[t]he mere fact that such a dispute is conceivable is enough to confer jurisdiction on the Bankruptcy Court. As the Second Circuit has states [*sic*], 'The need for litigation to settle the issue of whether a[n indemnification] …claim [against the estate] would be permitted does not militate against finding [such] litigation [is] 'related to' the bankruptcy proceeding.'" *In re Purdue Pharms. LP.*, 619 B.R. at 55 (quoting *SPV Osus Ltd.*, 882 F.3d at 341). The district court further opined that a finding of liability against Dr. Sackler could have a "cascading effect" that would "embarrass Purdue," "burden" the proposed settlement structure of the bankruptcy, be subject to appeal and delay the reorganization of Purdue. *In re Purdue Pharms. LP.*, 619 B.R. at 60. Finally, the district court found that there was no reason to treat the *Dunaway* Action differently than the "thousands of other stayed proceedings" and "that lifting the stay would soon engulf the Debtors' and the Bankruptcy Court in appeals challenging the injunction's application to similar claims against Dr. Sackler." *Id.*

In the instant matter, "Indemnities" is defined as, "collectively, Owner [NWUR], Owner [*sic*] and any other parties identified as indemnities in the Insurance Requirements attached as **Exhibit F to the Contract**." *See* ECF No. 22-1 at p. 36. Although Exhibit F to the General Contract does not use the work "Indemnitees," it does identity the "Additional Insureds" who were required to be covered by Hollister's insurance as:

> Newark Warehouse Urban Renewal, LLC; Newark Warehouse
> Redeveloper Company, LLC; Mulberry Parking Properties, LLC;
> ERDA II, LLC; 820 Broad Street, LLC; ERDA I, LLC; Edison NJ
> Parking, LLC; **Edison Properties, LLC**; **Edison Construction
> Management, LLC**; Edison Parking Corporation; and their
> respective affiliates; **all officers, directors, members, employees**,
> agents and/or consultants representing or working for the above;
> any other entity that Owner provides Contractor with notice of
> during performance of the Work; and all successors and assigns of
> any of the above. Except with regard to Workers' Compensation
> and Employer's Liability insurance, the Additional Insureds shall
> be named as such by endorsement, but only with respect to liability
> arising, in whole or in part, out of the activities of the named
> insured.

ECF No. 22-1 at p. 81, § 1.5.3.3 (emphasis added).  It is well-settled under New Jersey law that

"[a] basic principle of contract interpretation is to read the document as a whole in a fair and

common sense manner."  *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 103 (2009) (internal

citation omitted).  Since there is no other provision in Exhibit F to the General Contract identifying

or defining any parties, common sense and a fair reading of the General Contract as a whole leads

to the inescapable conclusion that in referencing Exhibit F for the identification of the

"Indemnitees," the parties intended to reference the parties identified as "Additional Insureds."  As

such, there can be little debate that Hollister's indemnification obligations extend to Defendants.

However, the mere fact that there is a question or potential dispute about Hollister's

indemnification obligations to Defendants is itself sufficient to make Plaintiff's claims arising

from the New Jersey Project "related to" the Hollister Bankruptcy.  *See In re Purdue Pharms. LP.*,

619 B.R. at 55.

Contrary to Plaintiff's arguments, as discussed in detail above, Hollister's indemnification

obligation does extend to the claims asserted by Plaintiff against Defendants related to the New

Jersey Project.  It is important to keep in mind that Plaintiff's claims against Defendants arise from

the same project, covering the same time period, and seeking the same amount as Plaintiff's Proof

BE:11814200.2/EDI022-279842

of Claim against Hollister in the Hollister Bankruptcy.  *See* ECF No. 6 at ¶ 17(b)-(c); ECF No. 6-1 at ¶¶ 19, 33-34; ECF No. 6-2 at pp. 2, 8.  Thus, Plaintiff's claims arising from the New Jersey Project are, in substance and effect, the same claims asserted by Plaintiff in its Proof of Claim in the Hollister Bankruptcy, undermining Plaintiff's argument that it is only seeking damages from Defendant "resulting from [Defendants'] own fraudulent and tortious conduct" and that the indemnification obligations in the General Contract do not extend to claims arising from "Indemnities" own negligence.  *See* ECF No. 25 at p. 23-24.

In addition to Hollister's broad indemnification obligations pursuant to Section 19.1.1 of the General Contract, Section 1.8.4.1 of the General Contract also provides that:

> Contractor shall indemnify and hold Owner and Owner [*sic*] harmless against any and all claims by Subcontractors … whose Subcontracts have been assigned to Owner, regardless of when such claims are made, if the circumstances giving rise to the such claims occurred before the assignment of said Subcontract.

ECF No. 22-1 at p. 7, § 1.8.4.1.  Here, Plaintiff has alleged that "the Edison Defendants took over direct management of the project from Hollister" and "made payment directly to Green Star …" ECF No. 6-1 at ¶¶ 22, 24.  Thus, Plaintiff has alleged that its subcontract was assigned to Defendants.  Thus, as alleged by Plaintiff, its Subcontract with Hollister was assigned to Edison Properties and its claims arose while Plaintiff was still in contract with Hollister as evidenced by its Proof of Claim.  Accordingly, Hollister may be contractually obligated to indemnify Defendants for Plaintiff's claims.  Moreover, Section 19.2.3 of the General Contract provides that:

> nothing herein set forth shall be deemed to preclude Contractor's indemnification of an Indemnitee for any of the damages, liabilities, loss, claims, etc. described in this Article 19 that are caused by, arising out of, or resulting from, the negligence or any other fault of a party other than the Indemnitee, whether or not the Indemnitee is partially negligent or at fault.

BE:11814200.2/EDI022-279842

ECF No. 22-1at p. 62, § 19.2.3.  Thus, even if Defendants are partially at fault, as is alleged, that does not relieve Hollister of its indemnification obligations, especially where Plaintiff has already claimed that Hollister is liable pursuant to the Proof of Claim.  Thus, Hollister's potential indemnification obligations to Defendants is sufficient to make Plaintiff's claims arising from the New Jersey Project "related to" the Hollister Bankruptcy.  *See In re Purdue Pharms. LP.*, 619 B.R. at 55.

### iii.    Hollister will Incur Costs even if not Obligated to Defend and **Indemnify Defendants**.

In the event Plaintiff's claims are not dismissed or subject to the Channeling Injunction, discovery will be needed from Hollister regarding the work performed by Plaintiff on the New Jersey Project.  Thus, Hollister will undoubtedly be involved in and impacted by Plaintiff's claims, making it "related to" the Hollister Bankruptcy.

### iv.    Any Monetary Relief that Plaintiff Obtains from Defendants will Impact the Distribution of Hollister's Estate in the Hollister **Bankruptcy**.

In the event Plaintiff obtains any monetary relief from Defendants, it would reduce the amount of Plaintiff's claim against Hollister in the Hollister Bankruptcy, thereby changing the amount available for distribution in the Hollister Bankruptcy rendering such claims related.  *See, e.g., In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.,* No. 03 MDL 1529, 2005 WL 1404798, at *2 (S.D.N.Y. June 14, 2005) ("To the extent that plaintiffs are successful against the defendants, plaintiffs' recoveries will in all probability (and certainly conceivably) reduce the total of Adelphia's liabilities"); *see also WorldCom*, 293 B.R. at 323 ("The potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is 'related to' the bankruptcy proceeding.").

Accordingly, as is detailed above, there are at least four independent bases for finding Plaintiff's claims arising from the New Jersey Project to be "related to" the Hollister Bankruptcy, requiring that the New Jersey project claims be severed and transferred.

## **CONCLUSION**

For all of the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion and Order the following relief:  (i) sever Plaintiff's claims related to the New Jersey Project from its claims related to the New York Project; and (ii) transfer the claims related to the New Jersey Project to the United States District Court for the District of New Jersey, for referral to the United States Bankruptcy Court for the District of New Jersey in the Hollister Bankruptcy.

Dated:  June 2, 2021

**BRACH EICHLER LLC**

*/s/Michael H. Ansell*
Michael H. Ansell, Esq.
101 Eisenhower Parkway
Roseland, New Jersey 07068
(973)-228-5700
mansell@bracheichler.com
*Attorneys for Defendants Edison Properties,*
*LLC, Pasquale Suriano, Edison*
*Construction Management, LLC and Joseph*
*Pipia*

BE:11814200.2/EDI022-279842