**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

GREEN STAR ENERGY SOLUTIONS, LLC,

     Plaintiff,

     v.

EDISON PROPERTIES, LLC, EDISON
CONSTRUCTION MANAGEMENT, LLC,
UA BUILDERS CORP., PASQUALE SURIANO,
and JOE PIPIA,

     Defendants.

Civil Action No.  1:21-cv-02682-LJL

**SECOND AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

The Plaintiff, Green Star Energy Solutions, LLC, through its attorneys, Cox Padmore Skolnik & Shakarchy LLP, complaining of the Defendants, Edison Properties, LLC, Edison Construction Management, LLC, UA Builders Corp., Pasquale Suriano and Joe Pipia (collectively the "Defendants"), respectfully files this First Amended Complaint and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiff, Green Star Energy Solutions, LLC ("Plaintiff" or "Green Star") is a limited liability company organized and existing under the laws of the State of Connecticut, where it has its principal place of business located in Fairfield County, Connecticut.

2.     Upon information and belief, defendant Edison Properties, LLC  ("Edison Properties") is a limited liability company organized and existing under the laws of the State of New Jersey.

1

3.      Upon information and belief, defendant Edison Construction Management, LLC ("Edison Management") is a limited liability company organized and existing under the laws of the State of New York.

4.      Upon information and belief, defendant UA Builders Corp ("UA Builders" or "UA") is a corporation organized and existing under the laws of the State of New York.

5.      Upon information and belief, defendant Pasquale Suriano ("Suriano") is an individual domiciled in the State of New Jersey, and upon information and belief, was at all relevant times an Executive Vice President employed by Edison Properties and/or Edison Management.

6.      Upon information and belief, defendant Joe Pipia ("Pipia") is an individual domiciled in the State of York, who, upon information and belief, was at all relevant times employed in a management capacity by Edison Properties and/or Edison Management.

7.      This Court has original jurisdiction pursuant to 28 USC § 1332 based on diversity because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.      Pursuant to Federal Rules of Civil Procedure 4(e) and 4(h), Defendants are subject to the personal jurisdiction of this Court because they are residents of the State of New York or have their principal place of business in the State of New York; and/or are domiciled in the State of New York; and/or are incorporated or organized in the State of New York; and/or have conducted, engaged in and carried out business activities within the State of New York; and/or are subject to the personal jurisdiction of this Court pursuant to the New York long-arm statute, New York Civil Practice Law and Rules § 302, in that they have: (i) transacted business within the State of New York, (ii) committed tortious acts within the State of New York causing damage and harm

in the State of New York, or (iii) engaged in tortious conduct outside of New York and (A) expected or should have expected the acts to have consequences in New York and derived substantial revenue from interstate or international commerce or (B)  regularly solicited or did business in New York or regularly engaged in a persistent course of conduct in New York or derived substantial revenue from  services rendered in New York, causing damage and harm in the State of New York.

9.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

10.     This action concerns a construction project in New York City (the "NYC Construction Project") where Green Star was hired as a subcontractor in connection with a property owned and/or managed by defendants Edison Properties and Edison Management (together the "Edison Defendants" or collectively "Edison") located at 543 West 43rd Street, New York, NY (the "New York Property").   Allegations herein of actions taken by the "Edison Defendants" or collectively by "Edison," include actions taken by Mr. Suriano and/or Mr. Pipia acting on behalf of and/or at the direction of both Edison Properties and Edison Management, given that Suriano and Pipia each represented themselves to Green Star as employed by and/or acting on behalf of both entities.

11.     Green Star specializes in energy efficiency audits and in designing and installing high-efficiency HVAC systems using the latest technology to drive down energy use.

12.     The Edison Defendants began a relationship with Green Star in 2018 in connection with several other construction projects for which Edison had brought in Green Star as the HVAC subcontractor.  One of these prior projects was the renovation taking place at 110 Edison Place, Newark, NJ (the "New Jersey Construction Project").

13.     With respect to the New Jersey Construction Project, Green Star initially refused to take on the project, because its management was concerned that in the event payments were delayed or slow in arriving, Green Star would suffer significant cash-flow problems.  This was due to the fact that Green Star is a boutique company with limited financial resources, and had at that time already taken on $7 million worth of other projects; thus it would be unable to fund the day-to-day operations of any additional work absent timely progress payments.

14.     However, management at Edison, specifically Defendant Pasquale Suriano, insisted that Green Star take on the project given that Green Star was already doing three other jobs for Edison, and that to maintain its status as Edison's "preferred" HVAC subcontractor, Green Star would have to take on the job.

15.     On or about July 16, 2018, Joe Novella, the CEO of Green Star, had a discussion with Mr. Suriano in which Mr. Novella communicated to Mr. Suriano that Green Star was already committed to other projects and that Green Star would only take on the New Jersey job if Green Star were paid every month without fail.  In his discussion with Mr. Suriano, he was emphatic that Green Star's cash flow was so tight that it would be highly detrimental to Green Star if it were not paid timely.  No representatives of UA were present during this meeting.

16.     During that conversation, Mr. Suriano promised Mr. Novella that Edison would instruct the general contractor (the "GC") on all future projects for Edison to pay Green Star timely without fail on all invoices, so long as Green Star became the HVAC subcontractor on each such project, and once again emphasized that to be Edison's "preferred" HVAC subcontractor, Green Star would need to take on the New Jersey Construction Project, and any future projects requested, such as the NYC Construction Project.

17.     Unbeknownst to Mr. Novella during his July 16, 2018, conversation with Mr. Suriano, was that upon information and belief, during this conversation Mr. Suriano and Edison harbored the undisclosed intention to break their promise to instruct each future GC to pay Green Star timely on all invoices.  This belief is based on information later obtained by Green Star indicating that Edison upon information and belief, – <u>as a policy and regular practice</u> – would defraud construction subcontractors by a preconceived plan and scheme from the outset of construction projects. Upon information and belief, this  preconceived plan and scheme consisted of inducing contractors and/or subcontractors such as Green Star to perform construction services by promises, in the case of Green Star made directly to the subcontractor, that were intentionally false when made and made with the intent to deceive and cause reliance by the contractors and subcontractors like Green Star, that Edison would pay all invoices in a timely manner, upon which promises contractors and subcontractors such as Green Star would and did rely to enter into a contract with respect to the construction project and to continue work, when in fact from the outset of the construction project Edison had no intention of paying, and did fail and refuse to pay the GC on the subcontractor's final invoice, without any valid reason or basis but with the result intended by Edison that the contractor or subcontractor would be crippled and deprived of adequate resources to continue its business or enforce its rights against Edison (the "Edison Final-Payment Fraud").  Upon information and belief, this pattern and practice of fraudulent conduct has resulted in millions of dollars of savings for Edison on multiple construction projects.

18.     In line with the Edison Final-Payment Fraud, upon information and belief, Edison and/or its affiliated entities refused to pay the final invoices submitted by multiple subcontractors on prior occasions, including such subcontractors as Control Services LLC and the now bankrupted Starlight Electric Inc.

19.     Upon information and belief based on Green Star's ongoing investigations and discussions with individuals in the New York City and New Jersey construction industry, Green Star believes that there are numerous additional subcontractors who have fallen victim to the Edison Final-Payment Fraud scheme.

20.     In fact, even the GC on the New Jersey Construction Project itself, Hollister Construction, was forced to file for bankruptcy, when, upon information and belief, Edison refused to make multiple payments due on the New Jersey Construction Project.

21.     Based on Edison's pattern and practice with respect to the Edison Final-Payment Fraud, upon information and belief, at the time Mr. Suriano and Edison made their promise to Mr. Novella that Edison would instruct the GC to make timely payments to Green Star, Suriano and Edison had planned specifically to withhold final payment from Green Star, just as they had done with the numerous other subcontractors they had previously defrauded.

22.     In direct reliance on Mr. Suriano's assurances that Green Star would get paid timely, on or about September 18, 2018, Green Star became the HVAC subcontractor on the New Jersey Construction Project.  Less than three months later, in further reliance on Mr. Suriano's assurances of timely payment, on or about November 30, 2018, Green Star become the HVAC subcontractor on the NYC Construction Project.  On the NYC Construction Project, Defendant UA entered into a general contract with Edison and was instructed by Edison to enter into an HVAC subcontract with Green Star for the renovation of the New York Property.

23.     Upon information and belief, at all relevant times, defendant Pasquale Suriano was employed by one or both of the Edison Defendants and spoke and acted on behalf of the Edison Defendants with apparent and/or actual authority to speak and act on the Edison Defendants' behalf with respect to the NYC Construction Project.

24.     Upon information and belief, at all relevant times, defendant Joe Pipia was employed by one or both of the Edison Defendants and spoke and acted on behalf of the Edison Defendants with apparent and/or actual authority to speak and act on the Edison Defendants' behalf with respect to the NYC Construction Project.

25.     Despite the fact that Green Star completed all requirements under its contract with UA with respect to the work it conducted on the NYC Construction Project, upon information and belief, as per the preconceived plan of Suriano and the Edison Defendants to defraud Green Star of timely final payment pursuant to the Edison Final-Payment Fraud scheme, UA and Edison have refused to pay Green Star the final balance owed of approximately $71,177.95.

26.     On or about January 16, 2020, Green Star met with UA management at their offices to review Green Star's final payment requisition.  No back charges were presented at that meeting and final payment was to be made upon release and final payment to UA by Edison.

27.      Despite numerous requests for payment, UA and Edison refused to pay Green Star's final requisition.  Neither Edison nor UA provided any documentation or backup as to any reasons why payment should not be made in full, nor did they make any formal notice to Green Star of any alleged default pursuant to its subcontract with UA.

28.     Upon information and belief, UA willfully refused to make payment to Green Star at the instruction of the Edison Defendants, Suriano and/or Pipia, as per their preconceived Edison Final-Payment Fraud scheme, despite knowing that Green Star was entitled to payment on its final requisition.

29.     On or about July 27 and July 28, 2020, Joe Novella of Green Star exchanged email messages with defendants Suriano and Pipia, in which both Mr. Suriano and Mr. Pipia made false statements that Green Star did not properly perform its work on the NYC Construction Project,

which statements were made on behalf of the Edison Defendants and which, upon information and belief, were intentionally false.  (Copy attached as Exhibit A.)

30.     On or about July 30, 2020, Joe Novella of Green Star participated in a telephone conference call with defendants Suriano and Pipia regarding the outstanding balance due on the NYC Construction Project.

31.     On this telephone conference, Mr. Suriano and Mr. Pipia each made statements on behalf of Edison that "back charges nullified" any amounts due to Green Star, and in addition, Mr. Pipia made the false statement that he had attempted to contact Green Star for warranty work and was not able to reach anybody on the telephone or by email; the foregoing statements were made by defendants Suriano and Pipia on behalf of the Edison Defendants, and upon information and belief were intentionally false and made with the intent to deceive and cause reliance by Green Star, to perpetuate the Edison Final-Payment Fraud scheme.

32.     A week later, on or about August 6, 2020, after Green Star had waited for payment for nearly seven (7) months, defendant Suriano delivered an email to Green Star on behalf of Edison, in which he made the false statement that back charges and other expenses nearly equaled the outstanding amount due to Green Star on the NYC Construction Project; upon information and belief the foregoing statement was intentionally false and made with the intent to deceive and cause reliance by Green Star, to perpetuate the Edison Final-Payment Fraud Scheme. Mr. Suriano's email also offered to pay only $10,500 as "final settlement" to satisfy Green Star's outstanding invoice.  (Copy attached hereto as Exhibit B).

33.     No evidence or documentation of these purported back charges and other expenses was ever supplied to Green Star.

34.     Upon information and belief, through Mr. Suriano and Mr. Pipia, Edison conspired with UA by instructing it to defraud Green Star of its final payment on the NYC Construction Project, despite knowing that Green Star was entitled to payment.

35.     Upon information and belief, the foregoing false statements were part of the pre-conceived Edison Final-Payment Fraud scheme, consisting of a plan and course of action on the part of Suriano, Pipia, and the Edison Defendants, to cripple Green Star by depriving it of adequate resources to continue its business or to enforce its rights against Edison as to both the NYC Construction Project and the New Jersey Construction Project, as they had done with numerous other prior contractors and subcontractors.  This belief is based upon the fraudulent and tortious conduct of Suriano, Pipia and the Edison Defendants in connection with the New Jersey Construction Project, which is the subject of the companion case now pending before the United Stated District Court for the District of New Jersey styled as *Green Star Energy Solutions, LLC v. Edison Properties, LLC et al* (DNJ 2:21-cv-18267-BRM-JSA) (the "New Jersey Action").  As set forth in the New Jersey Action, Green Star was deprived payment on its final invoice there as well, just as it had been deprived of final payment on the NYC Construction Project.  Further, upon information and belief, Suriano, Pipia and the Edison Defendants have fraudulently deprived numerous other contractors of final invoice payments on these and other construction projects as part of the Edison Final-Payment Fraud scheme, resulting in financial ruin for those contractors.  Thus, Suriano, Pipia and the Edison Defendants have engaged in a pattern evidencing a pre-conceived plan to defraud Green Star and numerous other construction contractors.

36.     As a result of Defendants' refusal to make timely payments on both the NYC Construction Project and the New Jersey Construction Project, and the resulting interruption of cash flow, Green Star was forced to cease operations and cancel all then-current and future

projects.  Specifically, Green Star was unable to continue making payments to key suppliers and employees on other ongoing projects in 2019 and 2020, resulting in Green Star having to cease its operations and to pull out of those projects that had already commenced.  As a result, Green Star is in a far worse of a position than prior to the Defendants fraudulent conduct, having suffered direct monetary losses, lost profits, lost business opportunities and other monetary damages in excess of one million dollars.

### AS AND FOR THE FIRST CAUSE OF ACTION
**(Fraudulent Inducement Against the Edison Defendants, Suriano and Pipia)**

37.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

38.     As discussed above, Mr. Suriano and Mr. Pipia, as employees of and on behalf of the Edison Defendants, repeatedly made material false statements of fact to Green Star, which, upon information and belief, they knew to be untrue, with the intention of both (i) inducing Green Star's reliance on those false statements to enter into the subcontract with UA on the NYC Construction Project, and (ii) inducing Green Star into forbearing any further inquiry into the  truth of those statements during the time Green Star was performing work on the NYC Construction Project.

39.     Specifically, as discussed above, on or about July 16, 2018, Mr. Suriano assured Mr. Novella that Green Star would be paid timely in connection with both the New Jersey Construction Project and future projects, such as the NYC Construction Project.  Upon information and belief, these statements by Mr. Suriano on behalf of Edison were intentionally false and misleading with a preconceived intent to deceive Green Star, and designed to induce Green Star to sign the contract with UA and to work on the NYC Construction Project and any other subsequent projects, with the prior intention of: withholding payment from Green Star at the end

of its work on the NYC Construction Project in conjunction with further material false statements of fact, which upon information and belief were intentionally false and designed to colorably justify the fraudulent withholding of the final payment and damage Green Star's liquidity so that it would not have the financial resources to fight Edison or continue in business.

40.     As discussed above, on or about July 27 and July 28, 2020, Joe Novella of Green Star exchanged email messages with Mr. Suriano and Mr. Pipia of Edison, in which both Mr. Suriano and Mr. Pipia made false statements, upon information and belief intentionally false, , that Green Star did not properly perform its work on the NYC Construction Project.

41.     As discussed above, on or about July 30, 2020, Mr. Suriano and Mr. Pipia each made false statements, upon information and belief intentionally false, to Mr. Novella that "back charges nullified" any amounts due to Green Star on the NYC Construction project.  In addition, on that day Mr. Pipia made the false statement, upon information and belief, intentionally false, that he had attempted to contact Green Star for warranty work for the NYC Construction Project, and was not able to reach anybody on the telephone or by email.

42.     The additional false statements made on or about July 27, 28 and 30, 2020, were, upon information and belief, designed to colorably justify the fraudulent withholding of the final payment and damage Green Star's liquidity so that it would not have the financial resources to fight Edison or continue in business.

43.     In entering into its subcontract with UA on the NYC Construction Project, Green Star reasonably and justifiably relied upon the material false statements of fact made by Mr. Suriano and Mr. Pipia on behalf of the Edison Defendants.

44.     In performing and continuing to perform its work on the NYC Construction Project and forbearing any investigation of the truthfulness of the statements made by Mr. Suriano and

Mr. Pipia, Green Star reasonably and justifiably relied upon the material false statements of fact made by Mr. Suriano and Mr. Pipia on behalf of Edison.

45.     Green Star has been damaged as a result of Mr. Suriano's, Mr. Pipia's and the Edison Defendants' wanton, willful, malicious, fraudulent and intentional material false statements of fact in an amount to be determined at trial, including, without limitation, monetary damages for direct monetary losses, lost profits, lost business opportunities and other monetary damages in excess of one million dollars.  In addition, Green Star should be awarded punitive damages due to Mr. Suriano's, Mr. Pipia's and the Edison Defendants' gross, wanton, and/or willful fraud and/or other morally culpable conduct.

## AS AND FOR THE SECOND CAUSE OF ACTION
### (Fraud Against the Edison Defendants, Suriano and Pipia)

46.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

47.     Mr. Suriano and Mr. Pipia, as employees of and on behalf of the Edison Defendants, repeatedly made material false statements of fact to Green Star, as part of the preconceived  plan and scheme from the outset of the NYC Construction Project, i.e. the Edison Final-Payment Fraud scheme.

48.     Upon information and belief, this preconceived plan and scheme consisted of inducing Green Star to enter into a contract and to perform construction services by promises made directly to Green Star, that were intentionally false when made and made with the intent to deceive and cause reliance by Green Star, that Edison would pay or cause the GC to pay all invoices issued or to be issued in connection with the NYC Construction Project in a timely manner.

49.     Green Star would and did rely on these false promises to enter into a contract for the NYC Construction Project and to continue work.

50.     In fact from the outset of the NYC Construction Project Edison had no intention of paying, and did fail and refuse to pay the GC on its final invoice, without any valid reason or basis but with the result intended by Edison that Green Star was not paid by the GC and was crippled and deprived of adequate resources to continue its business and is struggling to enforce its rights against Edison.

51.     Thusly, upon information and belief, Mr. Suriano, Mr. Pipia and Edison made false statements of fact, upon information and belief intentionally false and made with the intent to deceive Green Star, that concealed the purpose and intent of fraudulently inducing Green Star to enter into its contract on the NYC Construction Project, and to continue its work on the NYC Construction Project.

52.     Specifically, as discussed above, on or about July 16, 2018, Mr. Suriano assured Mr. Novella that Green Star would be paid timely in connection with both the New Jersey Construction Project and future projects, such as the NYC Construction Project.  Upon information and belief, these statements by Mr. Suriano on behalf of Edison were intentionally false and misleading and designed to induce Green Star to sign the contract with UA and to work on the NYC Construction Project and any other subsequent projects, with the prior intention of withholding payment from Green Star at the end of its work on the NYC Construction Project in conjunction with further material false statements of fact, which upon information and belief were intentionally false and designed to colorably justify the fraudulent withholding of the final payment and damage Green Star's liquidity so that it would not have the financial resources to fight Edison or continue in business.

53.     As discussed above, on or about July 27 and July 28, 2020, Joe Novella of Green Star exchanged email messages with Mr. Suriano and Mr. Pipia of Edison, in which both Mr.

Suriano and Mr. Pipia made false statements, upon information and belief intentionally false, that Green Star did not properly perform its work on the NYC Construction Project, also designed to colorably justify the fraudulent withholding of the final payment and damage Green Star's liquidity so that it would not have the financial resources to fight Edison or continue in business..

54.     As discussed above, on or about July 30, 2020, Mr. Suriano and Mr. Pipia each made false statements, upon information and belief intentionally false, to Mr. Novella that "back charges nullified" any amounts due to Green Star on the NYC Construction project.  In addition, on that day Mr. Pipia made the false statement, upon information and belief, intentionally false, that he had attempted to contact Green Star for warranty work for the NYC Construction Project, and was not able to reach anybody on the telephone or by email. These statements too were designed to colorably justify the fraudulent withholding of the final payment and damage Green Star's liquidity so that it would not have the financial resources to fight Edison or continue in business.

55.     In entering into its subcontract with UA on the NYC Construction Project, and forbearing any investigation of the truthfulness of the statements made by Mr. Suriano and Mr. Pipia, Green Star reasonably and justifiably relied on the above false statements made by Mr. Suriano and Mr. Pipia on behalf of the Edison Defendants.

56.     In performing and continuing to perform its work on the NYC Construction Project, Green Star reasonably and justifiably relied upon the above false statements made by Mr. Suriano and Mr. Pipia on behalf of Edison.

57.     Green Star has been damaged as a result of Mr. Suriano's, Mr. Pipia's and the Edison Defendants' wanton, willful, malicious, fraudulent and intentional material false statements of fact in an amount to be determined at trial, including, without limitation, monetary

damages for direct monetary losses, lost profits, lost business opportunities and other monetary damages in excess of one million dollars.  In addition, Green Star should be awarded punitive damages due to Mr. Suriano's, Mr. Pipia's and the Edison Defendants' gross, wanton, and/or willful fraud and/or other morally culpable conduct.

### AS AND FOR THE THIRD CAUSE OF ACTION
**(Aiding and Abetting Fraud against UA)**

58.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

59.     As discussed above and set forth under the heading "Factual Allegations" and in the First and Second Causes of Action,  Mr. Suriano and Mr. Pipia, as employees of and on behalf of Edison, repeatedly made material false statements of fact to Green Star which, upon information and belief, were intentionally false with respect to the timely payment of Green Star's invoices that would be issued in connection with the NYC Construction Project, for the purpose of fraudulently inducing Green Star to enter into contracts for the NYC Construction Project with the prior intention of withholding payment from Green Star at the end of its work on the NYC Construction Project, in conjunction with further material false statements of fact, which upon information and belief were intentionally false and designed to colorably justify the fraudulent withholding of final payment.

60.     In furtherance of and without limiting the foregoing, on or about July 27 and July 28, 2020, Joe Novella of Green Star exchanged email messages with Mr. Suriano and Mr. Pipia of Edison, in which both Mr. Suriano and Mr. Pipia made false statements, upon information and belief intentionally false, that Green Star did not properly perform its work on the NYC Construction Project.

61.     In furtherance of and without limiting the foregoing, on or about July 30, 2020, Mr. Suriano and Mr. Pipia each made false statements, upon information and belief intentionally false, to Mr. Novella that "back charges nullified" any amounts due to Green Star on the NYC Construction Project.  In addition, on that day Mr. Pipia made the false statement, upon information and belief, intentionally false, that he had attempted to contact Green Star for warranty work for the NYC Construction Project, and was not able to reach anybody on the telephone or by email.

62.     Upon information and belief, UA had actual knowledge of the above false, upon information and belief intentionally false, statements made by Suriano, Pipia and Edison for the purposes, inter alia, of defrauding Green Star of its final progress payment on the NYC Construction Project.

63.     Upon information and belief, UA knew that the intentionally false statements made by Suriano, Pipia and Edison were in fact false.  Upon information and belief, UA knew that Edison would not make payment on Green Star's final invoice without justification in furtherance of the Edison Final-Payment Fraud.

64.     UA provided substantial assistance to Suriano, Pipia and Edison with respect to defrauding Green Star of its final progress payment on the NYC Construction Project by failing to make payment to Green Star with respect to the final progress payment, which proximately caused the harm to Green Star on which the fraud in the First and Second Causes of Action are predicated.

65.     Green Star has been damaged as a result of UA's aiding and abetting the fraud committed by Suriano, Pipia and Edison, in an amount to be determined at trial.

### AS AND FOR THE FOURTH CAUSE OF ACTION
**(Tortious Interference with Contracts against the Edison Defendants, Suriano and Pipia)**

66.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

67.     Green Star had a valid contract with UA to act as the subcontractor on the NYC Construction Project.

68.     The Edison Defendants, Suriano and Pipia each had knowledge of this contract.

69.     UA breached its contract with Green Star, by failing to make payment to Green Star on its final requisition.  In addition, UA breached its contract with Green Star by failing to seek warranty work from Green Star.

70.     Upon information and belief, the Edison Defendants, Suriano and Pipia each intentionally and maliciously procured UA's breach of its contract with Green Star on the New York Property project, by taking the actions and making the fraudulent, false and malicious statements  described above, including, without limitation, instructing UA not to make final payment to Green Star and/or refusing to make payment to UA on the amounts owed for the work performed by Green Star, and/or instructing UA to use a different subcontractor for warranty work which actions were grounded in material part on fraudulent, malicious and false accusations and statements that Green Star would be paid timely and/or for false statements regarding Green Star's purported failure to perform.

71.     Green Star has been damaged as a result of Edison's, Suriano's and Pipia's fraudulent and tortious inducement to breach and interfere with the contract between Green Star and UA, in an amount to be determined at trial.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### (Breach of Contract against UA)

72.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

73.     Green Star performed all of its required obligations under its subcontract with UA.

74.     By failing to make final payment to Green Star on its final requisition, UA has breached its subcontract with Green Star.

75.     UA performed its subcontract with Green Star in bad faith by conspiring with Edison to avoid payment to Green Star.

76.     Green Star's damages are for $71,177.95 as per its final requisition.

77.     Green Star is entitled to a judgment in its favor against UA in an amount to be proven at trial.

## AS AND FOR THE SIXTH CAUSE OF ACTION
### (Quantum Meruit against the Edison Defendants – Pled in the Alternative)

78.     Green Star realleges the allegations set forth in the prior paragraphs as though fully set forth herein.

79.     Green Star designed and installed the HVAC system for the NYC Construction Project.

80.     Green Star rendered these services and provided labor and equipment in good faith that it would be fully compensated for its work.

81.     Edison accepted the benefits of the work on the HVAC system, and repeatedly promised to ensure timely and full payments to Green Star in connection with the work.

82.     Edison accepted the benefits of the work on the HVAC system.

83.     Green Star expected to be compensated for all of the labor, equipment and work it performed.

84.     The reasonable value of the labor, equipment and work rendered is $825,000.

85.     Green Star received payments totaling $755,833.95

86.     Green Star is still owed $71,177.95.

87.     The $71,177.95 remains unpaid and outstanding, plus pre-judgement interest that continues to accrue.

88.     To the extent the Court does not find in favor of Green Star on its claim for breach of contract herein, alternatively Green Star is entitled to a judgment in its favor against the Edison Defendants for quantum meruit damages in an amount to be proven at trial.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a jury in this action on all issues so triable.

**WHEREFORE**, Plaintiff, GREEN STAR ENERGY SOLUTIONS LLC, demands:

A.     On Plaintiff's First Cause of Action for Fraudulent Inducement against the Edison Defendants, Suriano and Pipia, a judgment in an amount to be determined at trial, including, without limitation, for monetary damages for lost profits due to lost business opportunities, as well as for punitive damages, together with interest, fees and costs.

B.     On Plaintiff's Second Cause of Action for Fraud against the Edison Defendants, Suriano and Pipia, a judgment in an amount to be determined at trial, including, without limitation, for monetary damages for lost profits due to lost business opportunities, as well as for punitive damages, together with interest, fees and costs.

C.     On Plaintiff's Third Cause of Action for Aiding and Abetting Fraud against UA, a judgment in an amount to be determined at trial, together with interest, fees and costs..

D.     On Plaintiff's Fourth Cause of Action for Tortious Interference with Contracts against the Edison Defendants, Suriano and Pipia, a judgment in an amount to be determined at trial, together with interest, fees and costs.

E.      On Plaintiff's Fifth Cause of Action for Breach of Contract against UA, a judgment in an amount no less than $71,177.95, together with interest, fees and costs.

F.      On Plaintiff's Sixth Cause of Action for Quantum Meruit against the Edison Defendants, a judgment in an amount no less than $71,177.95, together with interest, fees and costs.

G.      For such other and further relief as the Court deems just and proper, including without limitation, awarding Plaintiff its compensatory, consequential, and special damages including, without limitation, its lost profits, as well as exemplary and treble damages, as well as punitive damages based on the egregious intentional and willful misconduct of Defendants, as well as Plaintiffs' reasonable attorneys' fees and costs, all together with pre and post judgment interest, as provided by law.

Dated:  February 14, 2022

/s/ Laleh Hawa
Laleh Hawa
Steven D. Skolnik
Ralph N. Gaboury

**COX PADMORE SKOLNIK & SHAKARCHY LLP**

*Attorneys for Plaintiff*

630 Third Avenue, 23rd Floor
New York, NY 10017
P: (212) 953-6633
F: (212) 949-6943
E: hawa@cpsslaw.com
E: skolnik@cpsslaw.com
E: gaboury@cpsslaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing SECOND AMENDED COMPLAINT was electronically served on all counsel of record in the above-captioned matter by the EM/ECF system on this 14th day of February, 2022.

Respectfully submitted,

**COX PADMORE SKOLNIK  &
SHAKARCHY LLP**

By: */s Laleh Hawa*
Laleh Hawa, Esq.

630 Third Avenue, 23rd Floor
New York, NY 10017
Telephone: (212) 953-6633
Facsimile: (212) 949-6943
Email: hawa@cpsslaw.com

*Attorneys for Plaintiff*