UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                    :

GREEN STAR ENERGY SOLUTIONS, LLC,    :

                                      :

               Plaintiff,          :

                                        :             21-cv-2682 (LJL)

       -v-                          :

                                        :       OPINION AND ORDER

EDISON PROPERTIES, LLC, EDISON        :
CONSTRUCTION MANAGEMENT, LLC,     :
UA BUILDERS CORP., PASQUALE SURIANO,  :
and JOE PIPIA,                        :

                    Defendants.     :

                                        :
--------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendants Edison Properties, LLC, Edison Construction Management, LLC, Pasquale

Suriano ("Suriano"), and Joe Pipia ("Pipia" and, together with Edison Properties, LLC, Edison

Construction Management, LLC, and Suriano, the "Edison Defendants") move to dismiss with

prejudice Counts One, Two, Four, and Six of the Second Amended Complaint of Plaintiff Green

Star Energy Solutions, LLC ("Green Star" or "Plaintiff") for failure to state claims upon which

relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 55.  UA

Builders Corp. ("UA Builders," and, together with the Edison Defendants, "Defendants") moves

to dismiss Count Three of the Second Amended Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  Dkt. No. 57.  The Edison Defendants also move to strike Paragraphs 17–20

of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f).  Dkt.

No. 55.

For the following reasons, the Edison Defendants' motion to dismiss with prejudice is granted in part and denied in part, UA Builders' motion to dismiss is granted, and the Edison Defendants' motion to strike is denied.

## BACKGROUND

The Court accepts as true the well-pleaded factual allegations of the second amended complaint ("Second Amended Complaint" or "SAC"), Dkt. No. 51, and the documents incorporated by reference therein.

This action concerns the failure of Defendants to pay Plaintiff in full for its work as a subcontractor on a property located at 543 West 43rd Street, New York, New York ("New York Property") owned and/or managed by Edison Properties, LLC ("Edison Properties") and Edison Construction Management, LLC ("Edison Management" and, together with Edison Properties, "Edison"). *Id.* ¶ 10.

Plaintiff is a limited liability company organized and existing under the laws of the State of Connecticut, with its principal place of business located in Fairfield County, Connecticut. *Id.* ¶ 1. Edison Properties is a limited liability company organized and existing under the laws of the State of New Jersey, Edison Management is a limited liability company organized and existing under the laws of the State of New York, and UA Builders is a corporation organized and existing under the laws of the State of New York. *Id.* ¶¶ 2–6. At all relevant times, Suriano was an Executive Vice President employed by Edison Properties and/or Edison Management, and Pipia was employed in a management capacity by Edison Properties and/or Edison Management. *Id.* ¶¶ 6–7.

Plaintiff specializes in energy-efficiency audits and in designing and installing high-efficiency heating, ventilation, and air conditioning ("HVAC") systems using the latest technology to drive down energy use. *Id.* ¶ 11. In 2018, Plaintiff became the HVAC

subcontractor on at least two Edison construction projects, including a renovation of 110 Edison Place, Newark, New Jersey ("New Jersey Construction Project") and the construction project at the New York Property ("NYC Construction Project").  *Id* ¶¶ 12, 22.  Plaintiff was first approached to be the HVAC subcontractor on the New Jersey Construction Project in mid-2018. *Id.* ¶ 15.  Plaintiff initially refused, because Plaintiff's management was concerned that the company was overextended and could suffer significant cash-flow issues if payments for the New Jersey Construction Project were delayed.  *Id.* ¶ 14.  However, Edison's management, including Suriano, insisted that Plaintiff undertake the project if Plaintiff wanted to maintain its status as Edison Defendants' "preferred" HVAC subcontractor.  *Id.* ¶ 14.

On or about July 16, 2018 (the "July 16 Meeting"), Joe Novella ("Novella"), Plaintiff's Chief Executive Officer ("CEO"), had a discussion with Suriano, in which Novella emphasized Plaintiff's cash flow issues and the importance of being paid timely.  *Id.* ¶ 15.  Novella stated that Plaintiff would accept the job only if it was "paid monthly without fail."  *Id.*  In response, Suriano promised Novella that, as long as Plaintiff became the HVAC subcontractor on each requested project, Edison Defendants would instruct the general contractors ("GCs") to pay Plaintiff's invoices timely.  *Id.* ¶ 16.  No representatives of UA Builders were present during this meeting.  *Id.* ¶ 15.  Plaintiff alleges that during this conversation, Suriano, Edison Properties and Edison Management harbored an undisclosed intention to break this promise.  *Id.* ¶ 17.

On or about September 18, 2018, in reliance on Suriano's assurances that Plaintiff would be paid timely, Plaintiff accepted the HVAC subcontractor job on the New Jersey Construction Project, *id.* ¶ 22, and entered into a contract with Plaintiff's GC, Hollister Construction Services LLC ("Hollister"). Dkt. No. 1, Ex. B ("Complaint") ¶ 19.[1]  But Plaintiff was never paid in a

---

[1] As the Second Circuit has held, "The amendment of a pleading does not make it any the less an

timely manner by Hollister for its work on the New Jersey Construction Project, including in October 2018.  *Id.* ¶ 20.

Still, on or about November 30, 2018, in further reliance on Suriano's assurances of timely payment at the July 16 Meeting, Plaintiff accepted the HVAC subcontractor job on the NYC Construction Project.  *SAC* ¶ 22.  Edison entered into a general contract with UA Builders and instructed UA Builders to enter into an HVAC subcontract ("Subcontract") with Plaintiff for the renovation of the New York Property.  *Id.*  There are no allegations that the Edison Defendants were required to pay Plaintiff directly under a separate written contract.

Plaintiff alleges that the two contracts were part of a plan by Edison to defraud construction subcontractors of their final payment, what Plaintiff labels the "Edison Final-Payment Fraud."  *Id.* ¶ 17.  After inducing contractors and subcontractors to enter into contracts by promising to pay all invoices in a timely manner, despite having no intention of paying all such invoices, Edison would refuse "to pay the GC on the subcontractor's final invoice, without any valid reasons or basis."  *Id.*  Plaintiff's allegations are based on "information later obtained," *id.* ¶ 17, regarding "numerous other contractors" who were also deprived of final payments, *id.* ¶ 35.  Plaintiff alleges that Edison intended to "cripple" Plaintiff by depriving it of adequate resources to continue its business or to enforce its rights as to both the NYC Construction Project and the New Jersey Construction Project, as Edison had done with numerous other prior contractors and subcontractors.  *Id.* ¶¶ 17, 35.

---

admission of the party."  *Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989).  "Admissions in earlier complaints remain binding when a plaintiff files subsequent pleadings.  As such, the Court may consider them on a motion to dismiss under Rule 12(b)(6)." *Sulton v. Wright*, 265 F. Supp. 2d 292, 295 (S.D.N.Y. 2003) (internal citation omitted).

Plaintiff points to three specific examples of this fraud in its allegations.  First, Plaintiff points to its own experience on the New Jersey Construction Project, where it was deprived of its final payment.  *Id.*  Second, Plaintiff alleges that Hollister was forced to file for bankruptcy when Edison refused to make payments on the New Jersey Consecution Project.  *Id.* ¶ 20.  Next, Plaintiff alleges that Edison refused to pay the final invoices to two subcontractors, Control Services LLC and Starlight Electric Inc., just two of "numerous additional subcontractors who have fallen victim to the Edison Final-Payment Fraud scheme." *Id.* ¶ 19.

Finally, Plaintiff alleges that it completed all requirements under its contract with UA Builders with respect to the work it conducted on the New York Property but the Edison Defendants and UA Builders have refused to pay Plaintiff the remaining amount owed on its contract with UA Builders, approximately $71,177.95.  *Id.* ¶ 25.  As a result, on or about January 16, 2020, Plaintiff met with UA Builders management to review Plaintiff's final payment.  *Id.* ¶ 26.  No back charges were presented at that meeting and UA Builders indicated final payment would be made to Plaintiff upon release of Edison's final payment to UA Builders.  *Id.* However, Edison and UA Builders have refused to pay Plaintiff's final invoice, allegedly upon information and belief, at the instruction of the Edison Defendants in furtherance of the Edison Final-Payment Fraud scheme.  *Id.* ¶¶ 25, 28.  Edison and UA Builders did not provide any documentation or backup as to why payment should not be made in full.  *Id.* ¶ 27.  They also did not give Plaintiff formal notice of any alleged default pursuant to its Subcontract with UA Builders.  *Id.*

Plaintiff alleges that, on or about July 27 and July 28, 2020, Novella had an email conversation with Suriano and Pipia.  *Id.* ¶ 29, Ex. A.  During this conversation, both Suriano and Pipia made allegedly false statements that Plaintiff had not properly performed its work on

the NYC Construction Project. *Id.* ¶¶ 29, 40, 53.  Plaintiff alleges that these statements were made on behalf of Edison. *Id.* ¶ 29.

On or about July 30, 2020, Novella participated in a telephone call with Suriano and Pipia regarding the outstanding balance on the NYC Construction Project. *Id.* ¶ 30.  On the call, Suriano and Pipia each made statements on behalf of Edison that "back charges nullified" any amounts due to Plaintiff. *Id.* ¶ 31.  In addition, Pipia made claims that he had attempted to contact Plaintiff for warranty work and was not able to reach any of Green Star's employees by telephone or email. *Id.*  The SAC alleges that these statements were false. *Id.* ¶¶ 31, 41, 54

On or about August 6, 2020, Suriano emailed Plaintiff on behalf of Edison. *Id.* ¶ 32. Plaintiff alleges that, in the email, Suriano falsely stated that back charges and other expenses nearly equaled the outstanding amount due to Plaintiff on the NYC Construction Project. *Id.* That email also offered to pay $10,500 as a "final settlement" to satisfy Plaintiff's outstanding invoice. *Id.* ¶ 32, Ex. B.  No evidence or documentation of these purported back charges and other expenses was ever supplied to Plaintiff. *Id.* ¶ 32.

Plaintiff alleges that, as a result of Defendants' refusal to make timely payments on both the NYC Construction Project and the New Jersey Construction Project, Plaintiff was forced to cease operations and cancel all current and future projects. *Id.* ¶ 36.  Consequently, Plaintiff has suffered direct monetary losses, lost profits, lost business opportunities, and other monetary damages in excess of $1,000,000. *Id.* ¶¶ 36, 45, 57.

## PROCEDURAL HISTORY

On February 26, 2021, Plaintiff filed its initial complaint in New York State Court.  Dkt. No. 1, Ex. B.  The Edison Defendants removed the action to this Court pursuant to the Court's diversity jurisdiction. *Id.*  The Edison Defendants then moved to sever the claims related to the New Jersey Construction Project from the claims related to the NYC Construction Project and to

transfer the New Jersey Construction Project claims to the District of New Jersey Bankruptcy Court, which was adjudicating Hollister's bankruptcy proceeding.  Dkt. No. 4.  Although the Edison Defendants' motion to transfer the New Jersey Construction Project claims to the District of New Jersey Bankruptcy Court were mooted during pendency of the motion to sever, the Court granted severance and transferred the New Jersey Construction Project claims to the District of New Jersey.  Dkt. No. 34; *Green Star Energy, LLC v. Edison Properties, LLC et al.*, 2021 WL 4555353 (S.D.N.Y. Oct. 1, 2021).

On November 3, 2021, Plaintiff filed its first amended complaint in this action.  Dkt. No. 38.  On December 20, 2021, the Edison Defendants and UA Builders moved to dismiss Counts 1, 2, 4, and 6 the first amended complaint, Dkt. No. 42, and UA Builders moved to dismiss Count 3 of the first amended complaint, Dkt. No. 43.  Plaintiff filed its Second Amended Complaint on February 14, 2022.  Dkt. No. 51.  The Second Amended Complaint alleges (1) fraudulent inducement against the Edison Defendants (First Cause of Action), *id.* ¶¶ 37–45; (2) fraud against the Edison Defendants (Second Cause of Action), *id.* ¶¶ 46–57; (3) aiding and abetting fraud against UA Builders (Third Cause of Action), *id.* ¶¶ 58–65; (4) tortious interference with contract against the Edison Defendants (Fourth Cause of Action), *id.* ¶¶ 66–71; (5) breach of contract against UA Builders (Fifth Cause of Action), *id.* ¶¶ 72–77; and (6) quantum meruit (Pled in the Alternative) against the Edison Defendants, *id.* ¶¶ 78–88.

On March 7, 2022, the Edison Defendants moved to dismiss Counts One, Two, Four, and Six of the Second Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 55.  The Edison Defendants also moved to strike Paragraphs 17–20 of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(f).  *Id.*  On the same day, UA Builders moved to dismiss Count Three of the Second Amended Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 57.  Plaintiff filed its memoranda

of law in opposition to the motions to dismiss on April 15, 2022.  Dkt. Nos. 64, 65.  The Edison

Defendants and UA Builders filed reply memoranda of law in further support of their motions to

dismiss on May 20, 2022.  Dkt. Nos. 73, 74.

### LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief can be granted, a complaint must include "sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic

recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual

enhancement."  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has

facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a

reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*,

550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a

pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter."  Fed. R. Civ. P. 12(f).  To prevail on a Rule 12(f) motion to strike, the movant must

show that "(1) no evidence in support of the allegations would be admissible; (2) the allegations

have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in

prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001).

"Federal Courts have discretion in deciding whether to grant [a] motion[] to strike." *Sweigert v. Goodman*, 2021 WL 603069, at *1 (S.D.N.Y. Feb. 16, 2021) (citation omitted).  But motions to

strike are "disfavored and granted only if there is strong reason to do so." *Anderson News,*

*L.L.C. v. Am. Media, Inc.*, 2013 WL 1746062, at *3 (S.D.N.Y. Apr. 23, 2013).

## DISCUSSION

## I.     Motion to Dismiss Under Rule 12(b)(6)

### A.     Counts One and Two: Fraudulent Inducement and Fraud

Plaintiff's first and second causes of action allege that the Edison Defendants made false

statements to induce Plaintiff to enter into the Subcontract with UA Builders for the NYC

Construction Project.  SAC ¶ 38.  Specifically, Plaintiff alleges that at the July 16 Meeting, after

Plaintiff expressed concerns about its liquidity in light of the fact that it had $7 million of other

projects, Suriano promised Plaintiff that Edison would instruct the GCs on all future Edison

projects to pay Plaintiff "timely and without fail on all invoices." *Id.* ¶¶ 13, 16, 39.  Plaintiff

alleges that this statement was made with the intent to induce Plaintiff to sign a contract with UA

Builders and work on the NYC Construction Project and any other subsequent projects, *id.* ¶¶ 17,

39, and that, in reliance on this allegedly false representation, Plaintiff, on or about November

30, 2018, agreed to enter the Subcontract with UA Builders for the NYC Construction Project,

*id.* ¶¶ 22, 43.  Plaintiff further alleges that it was injured when "UA [Builders] and Edison . . .

refused to pay Green Star the final balance owed [on the NYC Construction Project] of

approximately $71,177.95." *Id.* ¶ 25.  The SAC also claims that Suriano and Pipia made false

statements indicating Plaintiff had not properly performed its work on the NYC Construction

Project "designed to colorably justify the fraudulent withholding of the final payment and

damage Green Star's liquidity so that it would not have the financial resources to fight Edison or

continue its business." *Id.* ¶¶ 39–42, 52–54.  Plaintiff seeks "monetary damages for direct

monetary losses, lost profits, lost business opportunities and other monetary damages." *Id.* ¶¶

45–57.

Tellingly, Plaintiff does not allege that the Edison Defendants had a contractual

obligation to pay Plaintiff the final balance owed on the NYC Construction Project.  The

signatories to the Subcontract were UA Builders as GC and Plaintiff as subcontractor.  *See* Dkt.

No. 55-4.  Section 1.4 of the Subcontract specified that it should not be construed to create a

"contractual relationship of any kind between . . . [Plaintiff] and the Owner," defined as Edison

Properties, "or any contractual relationship of any kind between . . . any persons or entities other

than the Contractor and Subcontractor." *Id.* § 1.4.  Nor does Plaintiff allege that the Edison

Defendants had any contractual obligation to guarantee or ensure payment to Plaintiff by UA

Builders.  Rather, Plaintiff seeks to impose on the Edison Defendants through the vehicle of a

fraud claim an obligation to pay Plaintiff any sums on the UA Builders' Subcontract that UA

Builders itself failed to pay.

The Edison Defendants argue that Plaintiff's allegations fail to state a claim for relief

because Suriano's alleged statement that Edison would instruct GCs to pay Plaintiff on

Plaintiff's invoices cannot provide the basis for a claim of fraud or fraudulent inducement.  Dkt.

No. 55 at 9.  The Edison Defendants argue that Plaintiff fails to allege a material

misrepresentation that was false when made, *id.* at 11, that it does not allege facts supporting a

plausible inference of fraudulent intent on the part of the Edison Defendants, *id.* at 13, and that it

could not have reasonably relied on the alleged statements made at the July 16 Meeting when

entering the Subcontract, *id.* at 17.  The Edison Defendants note that "[c]onstruction projects are

managed by a chain of written contracts, each specifically delineating each party's obligations

and rights," *id.* at 10, that the work on the NYC Construction Project was structured so that Plaintiff's rights extended only to UA Builders, and not to the Edison Defendants, *id.*, and that "[i]f Green Star wanted a guarantee of payment, they could have negotiated with the Edison Defendants for that," *id.* at 11.  The Edison Defendants conclude: "What Green Star cannot do is cherry-pick a statement from a conversation with an Edison employee that they would instruct a GC to fulfill its contractual obligations and premise a fraud claim on the fact that a guarantee was not forthcoming."  *Id.*

To state a claim for fraud under New York law, a plaintiff must plead "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."  *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001) (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996)).  "The elements of fraudulent inducement are substantially the same as those for common law fraud."  *Sawabeh Info. Servs. Co. v. Brody*, 832 F. Supp. 2d 280, 297–98 (S.D.N.Y. 2011) (citing *Braddock v. Braddock*, 871 N.Y.S.2d 68, 70 (1st Dep't 2009)).  The Court will thus analyze both Counts One and Two together.

Plaintiff's fraudulent inducement and fraud allegations are deficient for several reasons. First, Plaintiff's allegations sound primarily in contract and thus do not state a viable claim for fraud under New York law.  Second, Plaintiff fails to meet the pleading standards of Federal Rule of Civil Procedure 9(b).  Finally, Plaintiff fails to adequately plead reasonable reliance on the allegedly fraudulent statement.

###### 1. Plaintiff's Claims Sound in Contract and Do Not State a Viable Claim for Fraud

"It is well settled under New York law that 'a contract action cannot be converted to one for fraud merely by alleging that the contracting party did not intend to meet its contractual obligations.'" *Int'l CableTel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 487 (S.D.N.Y. 1997) (Sotomayor, J.) (quoting *Rocanova v. Equitable Life Assurance Society of The United States*, 83 N.Y.2d 603, 614 (1994)). Thus, although "a promise [that] was made with a preconceived and undisclosed intention of not performing it . . . constitutes a misrepresentation of a material existing fact," *id.*, where a fraud claim "is premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement, a cause of action sounding in fraud does not lie," *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (quoting *McKernin v. Fanny Farmer Candy Shops, Inc.*, 574 N.Y.S.2d 58, 59 (2d Dep't 1991)) (internal quotation marks omitted); *see also New York University v. Continental Insurance Co.*, 662 N.E.2d 763, 767 (N.Y. 1995) ("[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie."). "[A] simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193–94 (N.Y. 1987) (internal citations omitted). Thus, "[t]o maintain a claim of fraud in such a situation, a plaintiff must either (i) demonstrate a legal duty separate from the duty to perform under the contract . . . [;] (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . ; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc.*, 98 F.3d at 20; *see also Int'l CableTel*, 978 F. Supp. at 487.

Plaintiff's allegations can be read in one of two alternative ways: that the Edison Defendants assured Plaintiff that all of their future invoices would be honored or that the Edison Defendants promised Plaintiff they would instruct the GC on all future invoices to pay those invoices.  To the extent that Plaintiff's claim is based on the former theory—that the Edison Defendants promised that Plaintiff would be paid on future contracts—the fraudulent inducement "claim is insufficiently distinct" from a claim for breach of contract to be viable. *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 91 (2d Cir. 2005).[2]  "Generally, [under New York law] a subcontractor is in privity with the general contractor on a construction project and is not in privity with the owner." *Hamlet at Willow Creek Dev. Co., LLC v. Ne. Land Dev. Corp.*, 878 N.Y.S.2d 97, 111 (2d Dep't 2009).  The situation here was no different:  Plaintiff entered into a contract with UA Builders and not with the Edison Defendants. *See* Dkt. No. 55-4.  In fact, Plaintiff specifically disclaims the existence of any such contract in its briefing. *See* Dkt. No. 65 at 2.  The Edison Defendants' alleged promise that Plaintiff "would be paid timely in connection with the New Jersey Construction Project and future projects, such as the NYC Construction Project," SAC ¶ 39, is not independent from Plaintiff's contract—it is intimately bound up with it.

The obligation to make payments in connection with the NYC Construction Project and the circumstances surrounding these payments were determined exclusively by the terms of the Subcontract between UA Builders and Plaintiff.  If UA Builders had made no agreement with Plaintiff or if its actions did not violate the terms of its Subcontract with Plaintiff, the alleged promise of the Edison Defendants would be meaningless.  Stated differently, the alleged promise

---

[2] As discussed below, under the alternative understanding of Plaintiff's allegations—that the Edison Defendants would give an instruction to future GCs to pay Plaintiff on its invoices—Plaintiff fails to allege either scienter or reasonable reliance.

was one that Plaintiff's contract with UA Builders would be honored by UA Builders, nothing

more.  In fact, Plaintiff's allegations acknowledge as much.  Crucial to Plaintiff's allegations that

the Edison Defendants' statement was fraudulent was the fact that "[n]o back charges were

presented" in a January 2020 meeting between Plaintiff and UA Builders, and neither the Edison

Defendants nor UA Builders presented "documentation or backup as to any reasons why

payment should not be made in full."  *Id.* ¶¶ 26–27.  The clear implication from these allegations

is that if evidence had been presented that Plaintiff was not entitled to full payment under the

contract with UA Builders, there could be no allegations of fraud against the Edison Defendants.

Plaintiff's claim that the Edison Defendants falsely assured it that it would be paid on future

contracts, under the terms of those contracts, is thus entirely dependent upon the existence and

content of the future contracts.  It does not imply a promise "collateral or extraneous to the terms

of the . . . agreement."  *See Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 616

(S.D.N.Y. 2003) (concluding that an "essential term[]" of a contract cannot be "collateral or

extraneous" to the contract).

Plaintiff does not allege that the Edison Defendants owed it any separate legal duty and

Plaintiff does not seek special damages that are caused by the misrepresentation and

unrecoverable as contract damages.  Plaintiff does not claim that the Edison Defendants owed it

a legal duty, beyond the duty owed by UA Builders to perform the promise.  Nor could it.  The

Edison Defendants did not owe a fiduciary duty to Plaintiff or enjoy a special relationship of

trust and confidence with it.  *See In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002)

("When parties deal at arms length in a commercial transaction, no relation of confidence or trust

sufficient to find the existence of a fiduciary relationship will arise absent extraordinary

circumstances." (quoting *Gate Techs., LLC v. Delphix Cap. Markets, LLC*, 2013 WL 3455484, at

14

*7 (S.D.N.Y. July 9, 2013))); *Gate Techs., LLC*, 2013 WL 3455484, at *7 ("[A] conventional business relationship, without more, does not become a fiduciary relationship by mere allegation." (internal quotation marks and citation omitted)).  And Plaintiff alleges the same damages—direct and consequential damages for the Edison Defendants' breach of its promise— that it could allege in contract.  *See* SAC ¶¶ 45, 57 (seeking "damages for direct monetary losses, lost profits, lost business opportunities and other monetary damages in excess of one million dollars").  In fact, the damages that Plaintiff alleges only sound in contract.[3]

It is not material that Plaintiff does not allege that the Edison Defendants owed separate contractual duties to Plaintiff and thus cannot independently be held liable for breach of contract.  The policy behind the general rule that a contract claim cannot be converted into one for fraud rests on "the predictability that is essential to contracting, the predictability which permits

---

[3] New York's "out-of-pocket" rule limits the damages recoverable in fraud to the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain."  *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373(N.Y. 1996).  "Lost profits" and "lost business opportunities" typically are not cognizable in an action to recover damages for fraud, but can be recoverable in contract.  *Compare id.* ("[T]here can be no recovery of profits which would have been realized in the absence of fraud."), *with Kenford Co. v. Cnty. of Erie*, 73 N.Y.2d 312, 319 (1989) (holding that "unusual and extraordinary damages," such as "lost profits," are recoverable in contract if the damages were "brought within the contemplation of the parties as the probable result of a breach at the time of or prior to contracting").  Although Plaintiff seeks punitive damages, which are generally not available in contract, "these damages are an insufficient basis to render the fraud claim non-duplicative." *ADYB Engineered for Life, Inc. v. Edan Admin. Servs. Ltd.*, 2021 WL 1177532, at *22 (S.D.N.Y. Mar. 29, 2021) ("[P]unitive damages are, by definition, not 'caused by' fraud and therefore do not count as special damages that would differentiate the fraud claim from the breach of contract claim." (internal quotation marks and citation omitted)); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Monarch Payroll, Inc.*, 2016 WL 634083, at *6 (S.D.N.Y. Feb. 17, 2016) ("[T]he First Department has held that the inclusion of a prayer for punitive damages is not a sufficient basis to allow a fraud claim that is based on the breach of a contract." (citing *Mosaic Caribe, Ltd. v. AllSettled Grp., Inc.*, 985 N.Y.S.2d 33, 35 (1st Dep't 2014))); *Triad Int'l Corp. v. Cameron Indus., Inc.*, 998 N.Y.S.2d 13 (1st Dep't 2014) (finding fraud claim duplicative of contract claim where plaintiff's "purported fraud damages [were] actually contract damages").

sophisticated entities to enter into transactions understanding both their responsibilities and the potential scope of their liabilities." *Int'l CableTel Inc.*, 978 F. Supp. at 489.[4]  The contractual relationships among owners, general contractors, and subcontractors in the construction industry exists in part to define these responsibilities and the scope of liabilities within the construction industry.  *See Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of New York*, 735 F. Supp. 2d 42, 69 (S.D.N.Y. 2010) ("[S]ubcontractors, lacking privity of contract, are precluded from bringing suit against the owners directly." (internal quotation marks and citations omitted)); *Mariacher Contracting Co. v. Kirst Const., Inc.*, 590 N.Y.S.2d 613, 614 (4th Dep't 1992) (Absent unique circumstances "the subcontractor, because it is not in privity with the owner, may not assert a cause of action that is contractual in nature against it.  Rather, the subcontractor must bring all contract claims against the general contractor, with whom it is in privity.").  Here, the relationships among the Edison Defendants, UA Builders, and Plaintiff were no different— Plaintiff was not in privity with the Edison Defendants and was owed no duties, contractual or otherwise, by the Edison Defendants.  To find that a subcontractor could turn a breach of contract claim against a contractor into a fraud claim against an owner for a promise that was coextensive with and dependent upon the existence and content of the underlying subcontract would undermine the predictability and delineation of responsibilities in these relationships.

---

[4] In fact, in place of direct privity with owners, a system of insurance to protect against the risk of nonpayment has arisen.  *See, e.g.*, *Price Trucking Corp. v. Norampac Indus., Inc.*, 748 F.3d 75, 86 n.13 (2d Cir. 2014) ("Insurance is apparently widely available in the form of a payment bond, which guarantees payment to subcontractors."); *Nouveau Indus. Inc. v. Liberty Mut. Ins. Co.*, 2011 WL 10901796, at *1 (S.D.N.Y. Sept. 7, 2011) (describing how under a specific payment bond, payment was guaranteed "to subcontractors and suppliers of any undisputed amounts for work performed and materials supplied in connection with" work on a project).

### 2.      Federal Rule of Civil Procedure 9(b)

Plaintiff's allegation alternatively can be understood to express that in July 2018 the

Edison Defendants promised Plaintiff that they would instruct or direct all future contractors to

pay Plaintiff timely on each of its future invoices.  Whether Plaintiff's alleged misstatement is

understood to be a promise that it would instruct future contractors to pay Plaintiff on each

invoice or is understood as an assurance that Plaintiff would be paid on future invoices, these

allegations are insufficient to allege a cause of action for fraud with the particularity required by

Rule 9(b) or to allege reasonable reliance, each of which is addressed in turn.

Claims for fraud must satisfy the heightened pleading requirements of Federal Rule of

Civil Procedure 9(b), which require that fraud be pled "with particularity."  Fed. R. Civ. P. 9(b).

To comply with Rule 9(b)'s heightened pleading requirements, "the complaint must: (1) specify

the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

and when the statements were made, and (4) explain why the statements were fraudulent."

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and

citation omitted).

"Although Rule 9(b) contains a heightened [pleading] standard, it also relaxes the

standard for pleading fraudulent intent: 'Malice, intent, knowledge, and other conditions of a

person's mind may be alleged generally.'"  *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337,

353 (S.D.N.Y. 2020) (quoting Fed. R. Civ. P. 9(b)).  This relaxed standard, however, is not

"license to base claims of fraud on speculation and conclusory allegations[.] . . . [P]laintiffs must

allege facts that give rise to a strong inference of fraudulent intent."  *Lerner*, 459 F.3d at 290

(quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)) (internal quotation marks

omitted).  Plaintiffs can establish this "strong inference" either "(a) by alleging facts to show that

defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that

constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.*
(quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)) (internal
quotation marks omitted). "An inference is 'strong' if it is 'cogent and at least as compelling as
any opposing inference one could draw from the facts alleged.'" *Loreley Fin. (Jersey) No. 3 Ltd.
v. Wells Fargo Sec., LLC*, 797 F.3d 160, 176–77 (2d Cir. 2015) (citation omitted). In analyzing
whether a "strong inference" exists, the court must "consider the complaint in its entirety and
take into account plausible opposing inferences." *Id.* (quoting *Stratte-McClure v. Morgan
Stanley*, 776 F.3d 94, 106 (2d Cir. 2015)) (internal quotation marks omitted).

The SAC (1) details the allegedly fraudulent statement that the Edison Defendants would
instruct GCs to pay Plaintiff timely, SAC ¶ 16; (2) identifies Suriano as the speaker, *id.*;
(3) alleges that the statements were made at the July 16 Meeting between Suriano and Plaintiff's
CEO, *id* ¶¶ 15–16; and (4) alleges that the statement was fraudulent because, at the time the
statement was made, the Edison Defendants intended to instruct GCs *not* to make the final
payment to Plaintiff, *id.* ¶¶ 17, 21.[5]

Promises of future action can be a "misrepresentation of a 'material fact'" so long as the
"promise was [actually] made with a preconceived and undisclosed intention of not performing
it." *Int'l CableTel*, 978 F. Supp. at 487 (quoting *Sabo v. Delman*, 143 N.E.2d 906, 908 (1957).
But "plaintiffs must do more than simply assert that a particular statement [or promise] is false or
misleading; rather 'they must demonstrate with specificity why and how that is so.'" *Woolgar v.*

---

[5] The Edison Defendants argue that this statement could not be fraudulent because Plaintiff
"never actually offers a factual allegation that the general admonition to pay timely was not
conveyed to UA" Builders. Dkt. No. 55 at 11. But Plaintiff does allege that this admonition was
relayed to UA Builders. *See* SAC ¶¶ 26–28 ("Upon Information and belief, UA[ Builders]
willfully refused to make payment to [Plaintiff] at the instruction of the Edison
Defendants . . . .").

*Kingstone Cos., Inc.*, 2020 WL 4586792, at *10 (S.D.N.Y. Aug. 10, 2020) (quoting *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004)).  To support its contention that the Edison Defendants' July 2018 promise was false, Plaintiff alleges that, after UA Builders indicated there were no back charges on January 16, 2020, Suriano and Pipia made false statements that Plaintiff "did not properly perform its work on the NYC Construction Project" seven months later without providing "evidence or documentation."  *See* SAC ¶¶ 26, 29–33, Ex. B.  Suriano and Pipia then argued that these "'back charges nullified' any amounts due to [Plaintiff]."  *Id.* ¶¶ 31–32.  These allegations, standing alone, however, amount to nothing more than "falsity by hindsight":  The fact that UA Builders ultimately held back payment allegedly without justification a year and a half after the Edison Defendants stated that they would instruct future GCs to timely pay Plaintiff, does not mean that Suriano's statement in July 2018 was false when made.  *See Coppelson v. Serhant*, 2021 WL 148088, at *8 (S.D.N.Y. Jan. 15, 2021) (finding that the fact property did not ultimately appreciate as much as anticipated insufficient to allege with the required specificity that defendant's statement that property was a "gold mine" was false when made).  Even if after July 2018, the Edison Defendants developed an intent that Plaintiff not be paid on its invoices, a later-developed intent cannot retroactively make an earlier statement knowingly or recklessly false.

Additionally, Plaintiff's allegations ask the Court "to accept the implausible and economically irrational."  *Kraft v. Third Coast Mistream*, 2021 WL 860987, at *14 (S.D.N.Y. Mar. 8, 2021).  According to Plaintiff, the Edison Defendants intended to induce Plaintiff "to sign the contract with UA [Builders] and to work on the NYC Construction Project and any other subsequent projects."  *Id.* ¶ 39.  Plaintiff was Edison's "'preferred' HVAC subcontractor" and was hired on at least two projects.  *Id.* ¶¶ 14, 16.  At the same time, however, Plaintiff would ask

a jury to accept that at the time Suriano made the promise in July 2018, the Edison Defendants intended to "cripple" Plaintiff and "damage [Plaintiff's] liquidity" to prevent it from continuing in business. *Id.* ¶¶ 17, 39, 42, 52. So understood, the alleged scheme would be self-defeating. If, as Plaintiff alleges, the intent behind the scheme was to put Plaintiff out of business, Plaintiff would not be able to take on "any future projects requested," which Plaintiff alleges was the motive behind the July 2018 statement. *Id.* ¶ 16. At a certain point, not only would Plaintiff understand that it would not be paid on its last invoice at that point but—if the scheme were successful—there would be no Plaintiff to take on future projects requested.

Plaintiff is thus left with its allegations of a widespread scheme by the Edison Defendants to defraud subcontractors of their final invoice payments. These allegations are not sufficient to raise a "strong inference" of intent under either of *Lerner*'s two tests. *See Lerner*, 459 F.3d at 290. Plaintiff alleges that the Edison Defendants stood to gain "millions of dollars of savings." *Id.* ¶ 17. Most contractors would prefer not to pay invoices of their subcontractors if they can avoid it—whether the invoices were properly stated or not. By definition, the withholding of payment will save the invoice-debtor money. However, motive must "entail concrete benefits that could be realized by one or more of the false statements." *Shields*, 25 F.3d at 1130. And a general motive to increase profits does not suffice. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996); *Landesbank Baden–Wurttemberg v. Goldman, Sachs & Co.*, 478 F. App'x 679, 681 (2d Cir. 2004) (summary order) ("[A] general profit motive common to all corporations . . . does not suffice."); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *25 (E.D.N.Y. Aug. 29, 2013) ("[A] court cannot infer from allegations showing that the wrong-doer made more money a motive and opportunity to commit fraud.").[6] Thus, the

---

[6] Plaintiff claims that the Edison Defendants also had "the opportunity to defraud

notion that the Edison Defendants wanted to save money on their construction projects is insufficient to support the inference that they intended to do so by fraud or that the alleged promise the Edison Defendants made was known to be false when made.

Plaintiff's "circumstantial evidence" of "conscious misbehavior" is similarly insufficient. The SAC points to the Edison Final-Payment Fraud scheme as evidence of the Edison Defendants' fraudulent intent.  SAC ¶ 17.  However, these allegations are speculative and conclusory.  *See In re Axis Cap. Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 586 (S.D.N.Y. 2006) ("[B]ald allegations of a scheme . . . are far too conclusory to satisfy the requirements of Rule 9.").  The only facts that Plaintiff marshals to support its allegations of this widespread scheme are two specific subcontractors—Control Services LLC and Starlight Electric Inc.—who did not receive payment on their final invoices from "Edison and/or its affiliated entities."  *Id.* ¶¶ 18–19.  But Plaintiff does not allege facts to support that those subcontractors performed the services necessary for them to be owed payment on their final invoices, much less that the Edison Defendants (as opposed to the unnamed and unidentified "affiliated entities") had any involvement in the knowing failure to pay an invoice that was properly due.  Stated differently, the SAC claims that these subcontractors had "fallen victim to the Edison Final-Payment scheme," *id.* ¶ 19, but it provides no factual allegations to support Plaintiff's contention that the

---

subcontractors . . . with near impunity" because of a "two-layered shield that most subcontractors are not willing to attack": (1) the crippling of subcontractors by holding back the last payment and (2) the difficulties of proving direct damages because the subcontractor is not in privity with the Edison Defendants.  Dkt. No. 64, at 9; *see also* SAC ¶ 17.  That argument lacks merit. Opportunity, in this context, "entail[s] the means and likely prospect of achieving concrete benefits by the means alleged."  *Shields*, 25 F.3d at 1130.  Plaintiff has demonstrated by this very lawsuit that the Edison Defendants' alleged scheme and the effect of it on subcontractors did not succeed in depriving Plaintiff of a means to enforce its rights.  Plaintiff's claim fails because its allegations do not support the existence of a scheme to defraud, not because the Edison Defendants have crippled it from pursuing one.

nonpayment of invoices was related to alleged fraud and that the payments were not withheld for another reason. The SAC itself belies the allegation that failure to make these payments reflects a widespread scheme to defraud subcontractors; the SAC describes how "back charges," "alleged default," and "not properly perform[ing] . . . work" could all justify holding back payments from subcontractors, without mustering facts demonstrating that the two subcontractors in question adequately performed under their contracts. *See* SAC ¶¶ 26–31. In the absence of any allegation of fact that would support the theory that the Edison Defendants acted by predetermined design, the most plausible inference is that the two final invoices were not paid because the GCs believed that payment was not due or perhaps were concerned about performance, not that the Edison Defendants intended to defraud Control Services LLC and Starlight Electric Inc. *See Loreley*, 797 F.3d at 176–77.

Although a pattern of consistently holding back final payments (as opposed to references to two specific occasions) could theoretically bespeak a widespread scheme, Plaintiff's reference to "numerous additional subcontractors . . . [that] have fallen victim to the Edison Final Payment Fraud scheme," SAC ¶¶ 18–19, does not support the existence of such a widespread scheme; Plaintiff makes the allegation upon "information and belief" without providing further factual support or identifying the basis for its information and belief. *See Caldwell v. Archdiocese of New York*, 2021 WL 1999421, at *7 (S.D.N.Y. May 19, 2021) ("Although the rule that Rule 9(b) pleadings cannot be based 'on information and belief' is 'relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded.'" (quoting *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972)).[7] Plaintiff also alleges that Hollister, the GC on the New Jersey Construction Project was

---

[7] The allegation that Plaintiff's "information and belief" was derived from "ongoing

forced to file for bankruptcy "when, upon information and belief, Edison refused to make multiple payments due." SAC ¶ 20. But, not only does Plaintiff once again fail to identify the source of this information and belief, but Plaintiff does not allege facts that would support the inference that the Edison Defendants lacked a reason for refusing payment. Plaintiff alleges no facts to support the implication that the alleged nonpayment of Hollister was for a fraudulent reason, or that it had any connection to the nonpayment of final invoices for different contractors on different projects.

"[C]onsider[ing] the [Second Amended C]omplaint in its entirety," *Loreley*, 797 F.3d at 176–77, Plaintiff provides no basis to infer that the Edison Defendants' promise was false when made or made with fraudulent intent.

### 3.    Reasonable Reliance

It is insufficient for a plaintiff bringing a fraud claim to allege that it relied on defendant's misstatement. A "[p]laintiff must also show that his actual reliance on the misrepresentations was reasonable." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 118–19 (S.D.N.Y. 2009). "[R]easonable reliance is a fact-specific inquiry generally considered inappropriate for determination on a motion to dismiss." *Allied Irish Banks, P.L.C. v. Bank of America, N.A.*, 2006 WL 278138, at *8 (S.D.N.Y. Feb. 2, 2006) (internal quotations and citations omitted); *see also Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) ("The question of what constitutes reasonable reliance is always nettlesome because it is so fact-intensive.").

---

investigations and discussions," SAC ¶ 19, does not provide the Court a basis to credit the allegation in the absence of evidence of what findings from those investigations and discussions gave rise to Plaintiff's information and belief. *Cf. Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 330 n.50 (S.D.N.Y. 2009), *aff'd*, 371 F. App'x 212 (2d Cir. 2010) (holding, in the PLSRA context, "[a]llegations based on the investigation of counsel are deemed to be made on 'information and belief. The phrase 'investigation of counsel' is meaningless. No amount of investigation can transform information and belief—hearsay, essentially—into personal knowledge." (internal quotation marks and citations omitted and alterations accepted)).

However, disposition on a motion to dismiss is appropriate under "certain circumstances." *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 459 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). "In assessing the reasonableness of a plaintiff's alleged reliance, [a court must] consider the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003). Here, the allegations suggest that Plaintiff's reliance on the Edison Defendants' promise was unreasonable as a matter of law.

The SAC alleges that Plaintiff "reasonably and justifiably relied," SAC ¶¶ 44, 55–56, on Suriano's false statement that the Edison Defendants would "instruct the GC on all future projects . . . to pay [Plaintiff] timely without fail on all invoices, so long as [Plaintiff] became the HVAC subcontractor" on all such projects, *id.* ¶ 16. The statement that Plaintiff "reasonably and justifiably" relied on the Edison Defendants' alleged misstatement, however, is a conclusion; alone, it is not enough to create a plausible inference that Plaintiff's reliance was reasonable. *See Sprayregen v. Mangiameli*, 2016 WL 264934, at *7 (E.D.N.Y. Jan. 21, 2016) (finding that "a conclusory allegation of reasonable reliance" would be insufficient to support a fraud claim). Nor do the SAC's allegations establish that Plaintiff's reliance was reasonable.

The Edison Defendants' July 2018 promise was vague and indefinite and cannot support Plaintiff's claims that its reliance was justified. The July 2018 promise was made in connection with another construction project and contained no information about future projects, the specific work Plaintiff was expected to perform, the duration of the alleged promise, or circumstances that would excuse payment.[8] The SAC alleges that Plaintiff had "limited financial resources"

---

[8] Plaintiff acknowledges that such circumstances would exist by identifying a number of

and was concerned that it would face "significant cash-flow problems" and would be "unable to fund the day-to-day operations" if it took on another project and was not paid timely.  SAC ¶ 13. Yet, Plaintiff alleges, in late November 2018, it entered the Subcontract for the NYC Construction Project based on a threadbare promise from Suriano in July 2018.  Even assuming that Plaintiff did actually rely on this promise when deciding to enter the Subcontract for the NYC Construction Project, any such reliance would not have been justifiable.  *See Van Kleeck v. Hammond*, 811 N.Y.S.2d 452, 454 (3d Dep't 2006) (finding that reliance on "vague assurance which was a promise regarding future acts" that plaintiff would be appointed part-time police chief was "unjustifiable"); *FMC Corp. v. Fleet Bank*, 641 N.Y.S.2d 25, 26 (1st Dep't 1996) (concluding that "reliance" on defendant's vague statements regarding client was "unjustified").

What is more, to the extent that Plaintiff understood the July 2018 promise to mean that the Edison Defendants would ensure it would be paid timely on all invoices for all future subcontracts, Plaintiff would have had reason to doubt that the Edison Defendants would fulfill that unqualified commitment when Plaintiff entered the UA Builders' Subcontract in November 2018.  The "most important[]" factor courts look to in determining the reasonableness of a party's reliance is whether "the relevant facts were easily accessible to the relying party." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1542 (2d Cir. 1997).  In particular, "[w]hen a party is aware of circumstances that indicate certain representations may be false, that party cannot reasonably rely on those representations, but must make additional inquiry to determine their accuracy."  *Keywell Corp. v. Weinstein*, 33 F. 3d 159, 164 (2d Cir. 1994); *see also Mallis v. Bankers Tr. Co.*, 615 F.2d 68, 81 (2d Cir. 1980) ("[D]ecisions holding

_____

situations, including those stemming from "back charges," "alleged default," and "not properly perform[ing] . . . work," that would have justified non-payment.  *Id.* ¶¶ 26–27, 29.

that reliance on misrepresentations was not justified are generally cases in which plaintiff was placed on guard or practically faced with the facts.").  According to Plaintiff's own allegations, by the time Plaintiff entered the contract with UA Builders for the NYC Construction Project, Plaintiff was aware of facts that indicated the Edison Defendants would not honor their purported promise:  Hollister, the GC on the New Jersey Construction Project, had already missed at least its first monthly payment in October 2018, a mere four months after the purported promise that Plaintiff would be paid timely on every invoice.[9]  Complaint ¶ 20.  Thus, before Plaintiff entered the contract for the New York Property, Plaintiff knew that—contrary to Suriano's statement—it would not be paid timely on every invoice.  Yet, it took no action to test the Edison Defendants' commitment before entering into the contract for the New York Property.  The SAC alleges that after the missed payment, Plaintiff did not conduct "any investigation of the truthfulness of the statements made by" Suriano.  SAC ¶ 55; *see also id.* ¶ 44.  There is no allegation that it even asked the Edison Defendants to confirm the alleged promise in connection with the NYC Construction Project.

The Second Circuit's decision in *Banque Franco-Hellenique de Commerce International et Maritime, S.A. v. Christophides*, 106 F.3d 22 (2d Cir. 1997), is instructive.  In *Banque Franco-Hellenique*, the defendant guaranteed plaintiff's loan on a ship leased to a third-party company.  *Id.* at 25.  When the lessee stopped making payments to the lessor, the lessor defaulted on the

---

[9] The Complaint alleges that Suriano assured Plaintiff it would be "paid timely on a monthly basis," but there was a "four-month period between progress payments from October of 2018 through February of 2019."  Complaint ¶ 20.  Plaintiff argues that only a single payment (the October 2018 payment) was missed before it entered the contract for the New York Property on November 30, 2018.  Dkt. No. 64 at 20.  However, if as Plaintiff alleges, the promise was that it would be paid timely on a monthly basis on every invoice (regardless whether it was well supported), then missing a single payment—especially, the first payment on the Hollister contract—would be sufficient to put Plaintiff on notice that the Edison Defendants would no longer fulfill their promise.

loan and the plaintiff sued the defendant to enforce the guaranty. *Id.* The defendant raised an affirmative defense of fraud in the inducement. *Banque Franco-Hellenic de Com. Int'l et Mar., S.A. v. Christophides*, 905 F. Supp. 182, 187 (S.D.N.Y. 1995), *vacated sub nom. Banque Franco-Hellenique*, 106 F.3d 22. There was evidence that an earlier loan that the plaintiff had made directly to the lessee was obtained through a bribe, and thus the plaintiff's representations that "no bribes or commissions had been paid" to obtain the earlier loan were fraudulent. *Id.* at 191. The district court held that the defendant relied on this misrepresentation but found that the misrepresentation was not the legal cause of the harm. *Id.* at 193–94. The Second Circuit remanded, finding that the district court applied too restrictive a test of legal causation, and instructed the district court also to reconsider its conclusion concerning the defendant's reasonable reliance. *Banque Franco-Hellenique*, 106 F.3d at 27. Finding that the defendant's own testimony indicated that he had heard about the bribe two months before entering into the guaranty, the Second Circuit held that the defendant "could not have justifiably relied on statements that he had reason to know were false." *Id.* at 27.

Here too, by the time Plaintiff entered into the contract for the New York Property, it knew that it would not be paid timely on every invoice on an Edison project and thus had reason to know that the Edison Defendants' statement were false; the first (and apparently only) payment due in connection with the Edison Defendants' guaranty had not been made. Plaintiff thus could not have justifiably relied on that statement. *See also Giannacopoulos v. Credit Suisse*, 37 F. Supp. 2d 626, 633 (S.D.N.Y.1999) ("[W]here parties have access to information that could expose a misrepresentation, courts will not find their reliance sufficiently justifiable to merit legal protection.").

Finally, in the face of the vagueness of the Edison Defendants' promise and the information that they might not perform on the promise, Plaintiff took no steps to protect itself. The SAC does not allege that Plaintiff asked the Edison Defendants to put their promise in writing after Plaintiff's work on the New Jersey Construction Project allegedly went unpaid. *See* SAC ¶¶ 13, 22. The SAC does not even allege that Plaintiff asked the Edison Defendants to renew the promise, despite Plaintiff's concerns about its liquidity. Nor did Plaintiff try to ensure payment through the Subcontract with UA Builders. "[W]here, as here, a party has been put on notice of the existence of material facts which have not been documented and he nevertheless proceeds with a transaction without . . . inserting appropriate language in the agreement for his protection, he may truly be said to have willingly assumed the business risk that the facts may not be as represented." *Lazard Freres & Co.*, 108 F.3d at 1543 (quoting *Rodas v. Manitaras*, 552 N.Y.S.2d 618, 620 (1st Dep't 1990)); *see also Emergent Capital*, 343 F.3d at 196 ("[H]aving been told that NETV's largest investment was its $14 million purchase of an equity interest in Brightstreet, Emergent should have protected itself by insisting that this representation be included in the stock purchase agreement."); *Van Kleeck*, 811 N.Y.S.2d at 454 (finding plaintiff's reliance unreasonable in part because "[p]laintiff never got any signed writing acknowledging" the "indefinite" and "vague assurance" promise).

Plaintiff's reliance on the Edison Defendants' alleged promise when entering the Subcontract with UA Builders was thus unreasonable as a matter of law.[10]

---

[10] Nor can Suriano's and Pipia's allegedly false statements in July 2020, *see* SAC ¶¶ 30–33, serve as the basis for Plaintiff's fraud claim. Plaintiff alleges that as a result of the Edison Defendants' fraud, it "enter[ed] into its subcontract with UA [Builders'] on the NYC Construction Project." *Id.* ¶¶ 43, 55. The July 2020 statements, however, were made *after* Plaintiff entered into the Subcontract with UA Builders. *See id.* ¶ 22. Plaintiff thus cannot claim that it relied on these statements when entering the contract. *See Zhongneng Imp. & Exp. Co., Ltd v. Koutsobinas*, 509 F. App'x 54, 57–58 (2d Cir. 2013) (summary order) ("The only alleged

### 4.        Damages

Finally, the SAC does not allege cognizable fraud damages.  Plaintiff alleges that it is

"in . . . far worse of a position than prior to the [Edison] Defendants fraudulent conduct, having

suffered direct monetary losses, lost profits, lost business opportunities and other monetary

damages in excess of one million dollars" because Plaintiff "was forced to cease operations and

cancel all then-current and future projects."  SAC ¶ 36; *see also id.* ¶¶ 45, 57.  Both the Edison

Defendants and UA Builders allege that these damages are precluded by New York's "out-of-

pocket" rule.  *See* Dkt. No. 55 at 21–23; Dkt. No. 57 at 5–6.  Plaintiff contends that the

Defendants' arguments are "[p]remature" on a motion to dismiss.  *See* Dkt. No. 64 at 14–15.

"Under New York law, a plaintiff must have suffered damages in order to have a

recognizable fraud claim."  *Semerdjian v. McDougal Littell*, 2008 WL 110942, at *2 (S.D.N.Y.

Jan. 2, 2008); *see also Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 599

(E.D.N.Y. 2000) ("[D]amages are an essential element of a fraud claim under New York law.").

Thus, unless Plaintiff has adequately alleged cognizable damages, Plaintiff cannot maintain its

fraud and fraudulent inducement claims.

The measure of damages for fraud in New York State is governed by the "out-of-pocket"

rule, which permits "indemnity for the actual pecuniary loss sustained as a direct result of the

wrong."  *Hudson Optical Corp. v. Cabot Safety Corp.*, 1998 WL 642471, at *2 (2d Cir. Mar. 25,

1998) (summary order) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373

(N.Y. 1996)).  Under this rule, the loss is computed by ascertaining the difference between the

value of the bargain which a plaintiff was induced by fraud to make and the amount or value of

---

misrepresentations made by [defendant] occurred *after* [plaintiff] had already performed under
the contract.  Thus even if [plaintiff's] claims were read as something more than a restated
breach of contract claim, they fail to make out a cause of action against [defendant] because
[plaintiff] could not have relied on any of [defendant's] representations.").

the consideration exacted as the price of the bargain." *Lama Holding Co.*, 668 N.E.2d at 1373

(internal quotation marks and citation omitted).  New York law does not permit recovery for lost

profits that would have been realized in the absence of the fraud.  *See id.*; *FA Protective Sys.,*

*Inc. v. Am. Tel. & Tel. Co.*, 442 N.E.2d 1268, 1269 (N.Y. 1982) ("[A]ll elements of profit are

excluded from a computation of damages in an action grounded in fraud." (internal citation

omitted)).  "In the rare case, fraud damages based on the relinquishment of an alternative bargain

have been recognized, but only because the fraud caused the plaintiff to give up some

quantifiable, concrete alternative opportunity." *Financial Guaranty Ins. Co. v. Putnam Advisory*

*Co., LLC*, 2020 WL 5518146, at *99 (S.D.N.Y. Sept. 14, 2020) (quoting *Spilthogianis v. Haj-*

*Darwish*, 2008 WL 82188, at *7 (S.D.N.Y. Jan. 7, 2008)).

     Plaintiff fails to identify any specific business opportunities that were lost or any other

out-of-pocket expenses it suffered in more than a conclusory fashion.  Nor are Plaintiff's claims

for "lost profits" cognizable under New York law.  Plaintiff thus has failed to allege injury with

the particularity necessary to sustain a fraud-based claim.  *See Variblend Dual Dispensing Sys.*

*LLC v. Crystal Int'l (Grp.) Inc.*, 2021 WL 1198834, at *6 (S.D.N.Y. Mar. 30, 2021) (dismissing

fraud counterclaim because defendant "has not alleged facts indicating the actual existence of

[business] opportunities during the period of . . . alleged fraud."); *Spencer Trask Software &*

*Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 455 (S.D.N.Y. 2003) (dismissing fraud

claim because "plaintiffs' conclusory allegation of a decrease in the value of their investment,

without any factual allegations to support a finding that the value of the plaintiffs' investment

has in fact declined or is worth less than what the plaintiffs paid for it, does not constitute an

adequate allegation of injury").[11]

---

[11] The Edison Defendants argue that Plaintiff cannot recover for punitive damages under its fraud

For the reasons state above, the Court dismisses Plaintiff's fraud and fraudulent

inducement claims.

### B.    Count Three: Aiding and Abetting Fraud

Plaintiff brings a claim of aiding and abetting fraud against UA Builders.  SAC ¶¶ 58–65.

"To establish liability for aiding and abetting fraud under New York law, 'the plaintiffs must

show (1) the existence of a fraud; (2) the defendant's knowledge of the fraud; and (3) that the

defendant provided substantial assistance to advance the fraud's commission.'"  *Krys v. Pigott*,

749 F.3d 117, 127 (2d Cir. 2014) (alteration accepted) (quoting *Lerner*, 459 F.3d at 292).  "The

particularity requirements of Federal Rule of Civil Procedure 9(b) apply to claims of aiding and

abetting fraud no less than to direct fraud claims."  *IMG Fragrance Brands, LLC v. Houbigant,

Inc.*, 759 F. Supp. 2d 363, 383 (S.D.N.Y. 2010).

Because, as discussed above, Plaintiff has not sufficiently alleged fraudulent inducement

or fraud against the Edison Defendants, Plaintiff's aiding and abetting fraud claim against UA

Builders must necessarily fail.  *See Brainbuilders LLC v. EmblemHealth, Inc.*, 2022 WL

3156179, at *10 (S.D.N.Y. Aug. 8, 2022) ("Plaintiffs' civil conspiracy and aiding and abetting

claims both depend on the survival of the SAC's fraud claim. As that claim fails, so too do

Plaintiffs' claims for civil conspiracy and civil aiding and abetting.");  *Amusement Indus., Inc. v.*

---

and fraudulent inducement claims.  Dkt. No. 55 at 22.  Plaintiff counters that its punitive
damages claim is not ripe for dismissal at the motion to dismiss stage "[b]ecause punitive
damages are a form of damages, not an independent cause of action."  Dkt. No. 61 at 14 (quoting
*Farina v. Metro. Transportation Auth.*, 409 F. Supp.3d 173, 220 (S.D.N.Y. 2019).  Although the
Court acknowledges the "conceptual debate" about whether it is appropriate to bring challenges
to punitive damages at the motion to dismiss stage, *see Doe v. Indyke*, 457 F. Supp. 3d 278, 284
(S.D.N.Y. 2020), the Court need not settle this debate here.  "A punitive damages claim is not a
cause of action but is instead a form of relief."  *Horowitz v. Spark Energy, Inc.*, 2020 WL
4917180, at *6 (S.D.N.Y. Aug. 21, 2020).  Without the fraud or fraudulent inducement claims,
there is no separate action for punitive damages.  *See Rocanova v. Equitable Life Assurance Soc.
of U.S.*, 634 N.E.2d 940, 945 (N.Y. 1994) ("A demand or request for punitive damages is
parasitic and possesses no viability absent its attachment to a substantive cause of action[.]").

*Midland Ave. Assocs., LLC*, 820 F. Supp. 2d 510, 539 (S.D.N.Y. 2011) ("Because [plaintiff] has not sufficiently alleged the existence of a primary fraud, [plaintiff's] claim against [defendant] for aiding and abetting fraud must fail.").

Even assuming, *arguendo*, that Plaintiff had adequately stated a claim for fraud, Plaintiff has not alleged UA Builders' knowledge of the fraud with the required specificity. "While actual knowledge of the underlying fraud may be averred generally under Rule 9(b), the plaintiff must accompany the general allegation with allegations of specific 'facts giving rise to a strong inference of actual knowledge regarding the underlying fraud.'" *ICD Cap., LLC v. CodeSmart Holdings, Inc.*, 2020 WL 3961617, at *6 (S.D.N.Y. July 13, 2020), *aff'd*, 842 F. App'x 705 (2d Cir. 2021) (quoting *Berman v. Morgan Keegan & Co., Inc.*, 2011 WL 1002683, at *7 (S.D.N.Y. Mar. 14, 2011), *aff'd*, 455 F. App'x 92 (2d Cir. 2012)) (internal quotation marks omitted). "The requirement that a plaintiff allege 'actual knowledge' to state a claim for aiding and abetting fraud is 'a distinct requirement from the scienter required to allege the underlying fraud.'" *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021) (quoting *In re Agape Litig.*, 773 F. Supp. 2d 298, 308 (E.D.N.Y. 2011)).

Plaintiff alleges that UA Builders had "actual knowledge" that the statements made by Suriano and Pipia in July 2020 concerning back charges and the quality of Plaintiff's work were "in fact false." SAC ¶¶ 60–63. Plaintiff further alleges that UA Builders "knew that [the Edison Defendants] would not make payment on [Plaintiff's] final invoice without justification in furtherance of the Edison Final-Payment Scheme." *Id.* ¶ 63. Contrary to Plaintiff's contentions, "[a]t this early stage of the litigation, these allegations are" not sufficient. Dkt. No. 65 at 8. Plaintiff never alleges that UA Builders had knowledge of the underlying fraud: The alleged promise that the Edison Defendants made to Plaintiff in July 2018 about timely payments on

future subcontracts.  No representatives of UA Builders were present at the July 2018 meeting, *id.* ¶ 15, and there are no allegations that UA Builders learned of the purported promise in some other manner.  Nor can the allegation that UA Builders was aware of the falsity of statements made in 2020 give rise to an inference that it was aware of the statements made in 2018, much less the falsity of those statements.  *See Chemtex, LLC v. St. Anthony Enterprises, Inc.*, 490 F. Supp. 2d 536, 547 (S.D.N.Y. 2007) ("[E]ven alleged ignorance of obvious warning signs of fraud will not suffice to adequately allege 'actual knowledge.'"); *see also Rosner v. Bank of China*, 349 F. App'x 637, 639 (2d Cir. 2009) (summary order) ("Even if [defendant] had reason to suspect that [a fraudster] was [engaged in activities in furtherance of fraud], this does not mean that [defendant] had actual knowledge of the fraudulent scheme perpetrated by [the fraudsters]."). Even if knowledge of the falsity of the 2020 statement were sufficient, Plaintiff fails to adequately allege that UA Builders had knowledge that the statements were false; Plaintiff provides no factual support beyond its "information and belief."  And "conclusory" allegations of knowledge cannot support a claim for aiding and abetting fraud.  *See Krys*, 749 F.3d at 130.

Because Plaintiff has failed to adequately allege either the underlying fraud or UA Builders' knowledge of the fraud, UA Builders' motion to dismiss this claim is granted.

### C.    Count Four: Tortious Interference with Contracts

Plaintiff's fourth cause of action alleges that the Edison Defendants tortiously interfered with Plaintiff's contract because "Suriano and Pipia each intentionally and maliciously procured UA[ Builders'] breach of its contract with Green Star" on the NYC Construction Project by instructing UA Builders not to make final payment, refusing to make payment to UA Builders on the work performed by Plaintiff or instructing UA Builders to use a different subcontractor for warranty work based on false accusations.  SAC ¶ 70.

Under New York law, the elements of tortious interference with contract are: "(i) the existence of a contract; (ii) defendants' knowledge of that contract; (iii) defendants' intentional inducement of a breach of that contract; (iv) a breach; (v) but for the defendants' actions, that contract would not have been breached; and (vi) damages." *Conte v. Emmons*, 895 F.3d 168, 171 (2d Cir. 2018).

The Edison Defendants make a single targeted argument for dismissal of the fourth cause of action: "[a] party 'procuring the breach of a contract in the exercise of an equal or superior right is acting with just cause or excuse.'" Dkt. No. 55-1 at 23 (quoting *Felsen v. Sol Cafe Mfg. Corp.*, 249 N.E.2d 459, 461 (N.Y. 1969)). The Edison Defendants argue that even if they directed UA Builders not to pay Plaintiff and the non-payment resulted in a breach of contract, the Edison Defendants cannot be liable because they "clearly had an economic interest in the breached contract, and did not act illegally or in a manner motivated by malice." *Id.*

That argument cannot support dismissal of Plaintiff's claim at this stage. It is true that "when a complaint supports a defendant's economic interest in the breaching party's business, it is 'insufficient' for a complaint merely to allege the elements of tortious interference; rather, 'the plaintiff must also adequately allege that the defendant either acted maliciously, fraudulently, or illegally.'" *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 30 (S.D.N.Y. 2017), *aff'd*, 712 F. App'x 85 (2d Cir. 2018) (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F.Supp.2d 395, 405–06 (S.D.N.Y. 2009)). "For purposes of Rule 12(b)(6) motions, all of the elements of a defendant's economic interest defense must be discernable on the face of the complaint in order to warrant dismissal of the underlying tortious interference claim." *Horowitz v. Nat'l Gas & Elec.*, LLC, 2018 WL 4572244, at *6 (S.D.N.Y. Sept. 24, 2018). At the motion to dismiss stage, this wall is often a difficult one to climb. *See Hildene*

*Capital Mgmt., LLC v. Friedman, Billings, Ramsey Grp., Inc.*, 2012 WL 3542196, at \*9
(S.D.N.Y. Aug. 15, 2012) ("Several courts in the Second Circuit have refused to apply the
economic interest defense at the pleading stage to dismiss complaints for tortious interference
with contract, explaining that the facts of the pleadings were not sufficiently developed to show
entitlement to the defense.").

Plaintiff argues that the economic interest defense is limited to "situations where the
defendant is a parent of a wholly owned corporate subsidiary." Dkt. No. 64 at 15 (citing *Felsen
v. Sol Cafe Mfg. Corp.*, 249 N.E.2d 459, 461 (N.Y. 1969)). The New York Court of Appeals has
provided a non-exhaustive list of situations where the economic interest defense has been found
viable, which reaches beyond parent-subsidiary relationships: "where defendants were
significant stockholders in the breaching party's business; where defendant and the breaching
party had a parent-subsidiary relationship; where defendant was the breaching party's creditor;
and where the defendant had a managerial contract with the breaching party at the time
defendant induced the breach of contract with plaintiff." *White Plains Coat & Apron Co.*, 8
N.Y.3d at 426 (footnotes omitted). But it does not follow that the Edison Defendants are entitled
to this defense simply because they have a "germane or genuine interest in the underlying
contract." Dkt. No. 74 at 13. This right must be "equal or superior" to conclude that the Edison
Defendants were acting with "just cause or excuse." *Felsen*, 249 N.E.2d at 461. It is not
categorical that the existence of the Edison Defendants general contract with UA Builders gives
rise to an "equal or superior right" in UA Builders' Subcontract with Plaintiff, which would
justify "what would otherwise be an actionable wrong." *Id.*

Moreover, the SAC does allege illegal or malicious conduct. It alleges that the Edison
Defendants instructed UA Builders not to pay Plaintiff "despite knowing that [Plaintiff] was

entitled to payment on its final requisition," SAC ¶ 28, and made "false statements that [Plaintiff] did not properly perform its work on the NYC Construction Project," *id.* ¶ 29.  Those allegations are sufficient, for now, to sustain Plaintiff's cause of action.

Because Plaintiff has adequately stated a claim for tortious interference with contract, the Edison Defendants' motion to dismiss this claim is denied.

### D.      Count Six: Quantum Meruit (Pled in the Alternative)

In the alternative to its contract claim, Plaintiff brings a claim for quantum meruit.  To state a claim for quantum meruit under New York law, a plaintiff must allege "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services."  *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (Sotomayor, J.) (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000)) (internal quotation marks omitted).  The existence of an enforceable contract that governs the same subject matter as the quantum meruit claim bars recovery in quasi contract. *Id.* (citing *Clark–Fitzpatrick, Inc.*, 516 N.E.2d at 193).  As the New York Court of Appeals has held, "It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."  *Clark-Fitzpatrick, Inc.*, 516 N.E.2d at 193.

This prohibition extends to quasi-contractual claims against third-party non-signatories to the contract.  *See Gravier Prods., Inc. v. Amazon Content Servs., LLC*, 2019 WL 3456633, at *5 (S.D.N.Y. July 31, 2019) (quoting *22 Gramercy Park, LLC v. Michael Haverland Architect, P.C.*, 96 N.Y.S.3d 196, 198 (1st Dep't 2019)).  Thus, "a claim of [quantum meruit] cannot be sustained if a valid contract governs the relevant subject matter, even against a non-signatory to

the contract." *Hildene Cap. Mgmt., LLC*, 2012 WL 3542196, at *10 (collecting cases); *see also Gravier Prods., Inc.*, 2019 WL 3456633, at *6 ("Under New York law, a [quasi-contractual claim] may not be asserted even against a third-party where the subject matter of that claim is governed by contract.").

Under these principles, Plaintiff's quantum meruit claim must be dismissed.  Plaintiff does not dispute the validity of the contract with UA Builders nor that the contract covers the same subject matter as Plaintiff's quantum meruit claim.  *Compare* SAC ¶ 22 ("UA [Builders] entered into . . . an HVAC subcontract with Green Star [Energy] for the renovation of the New York Property."), *with* SAC ¶ 79 ("Green Star [Energy] designed and installed the HVAC system for the NYC Construction Project.").  The factual allegations surrounding both claims are identical.  Plaintiff's only argument is that it should be permitted to maintain a claim of quantum meruit because of the lenient alternative pleading provisions of Federal Rule of Civil Procedure 8(d).  *See* Dkt. No. 64 at 13.  "Where, as here, however, the parties agree that a contract governs their dispute, a plaintiff may not continue to litigate a duplicative [quasi-contractual] claim." *Gravier Prods., Inc., LLC*, 2019 WL 3456633, at *6; *see also Air Atlanta Aero Eng'g Ltd. v. SP Aircraft Owner I, LLC*, 637 F. Supp. 2d 185, 196 (S.D.N.Y. 2009) ("While plaintiffs are generally free to plead alternative and contradictory theories of recovery pursuant to Federal Rules of Civil Procedure 8(d)(2) and (3), [Plaintiff's] failure to allege that the contracts at issue are invalid or unenforceable precludes it . . . from seeking quasi-contractual recovery for events arising out of the same subject matter.").

Thus, Plaintiff's quantum meruit claim must be dismissed.

### E.    Dismissal With Prejudice

The Edison Defendants argue that Plaintiff's claims should dismissed with prejudice because further amendment would be "futile."  Dkt. No. 55 at 26.  The Court agrees.

"Dismissal with prejudice is appropriate when the flaws in pleading are incurable." *Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) (internal quotation marks omitted).  Plaintiff has had two opportunities to amend its complaint:  Once, after this Court severed certain claims and transferred them to the District of New Jersey and the second after Defendants had submitted memoranda of law in support of their motions to dismiss.  Although Plaintiff characterizes its first amendment as an attempt "to 'clean up' the pleadings" after severance, Dkt. No. 64 at 18–19, the Court had already identified deficiencies in Plaintiff's fraud-based claims.  *See Green Star Energy, LLC*, 2021 WL 4555353, at *2 (S.D.N.Y. Oct. 1, 2021).[12]  Because Plaintiff had the opportunity to amend its first amended complaint after Defendants' first motion to dismiss and because Plaintiff identifies no facts that could cure the defects in their pleading, dismissal with prejudice is appropriate.  *See, e.g., Treppel v. Biovail Corp.*, 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) ("[T]he Court finds that leave to amend would be futile because plaintiff has already had two bites at the apple and they have proven fruitless.").

Counts 1, 2, 3 and 6 are thus dismissed with prejudice.

## II.    Edison Defendants Motion to Strike

The Edison Defendants argue that Paragraphs 17–20 of the SAC should be stricken because "[t]hese paragraphs lack any factual basis and consist of nothing more than lurid, detail-free speculation."  Docket No. 55 at 26.  They further argue that these allegations "have no bearing on the case, as they are totally unconnected to the facts at issue."  *Id.* at 27.  Plaintiff counters that (1) the allegations are admissible; (2) the allegations have bearing on its fraud and

---

[12] As the Court stated in its order to sever the claims: "Plaintiffs do not allege that the same allegedly fraudulent statements led them to enter into the two subcontracts; instead, they allege that one set of allegedly false statements led them to enter the subcontract in connection with the New Jersey Project; they do not allege at all that they were induced by any particular fraudulent statement to enter the subcontract for the New York Project."  *Green Star Energy, LLC*, 2021 WL 4555353, at *2 (S.D.N.Y. Oct. 1, 2021).

fraudulent inducement claims; and (3) Plaintiff, and not the Edison Defendants, would be prejudiced if the paragraphs are stricken because of the difficulty of proving its fraud-based claims.  Dkt. No. 64 at 19–23.

"[M]otions to strike are viewed with disfavor and infrequently granted."  *In re Merrill Lynch & Co., Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003).  As the Second Circuit has cautioned, "[C]ourts should not tamper with the pleadings unless there is a strong reason for doing so."  *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). In general, motions to strike "will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation."  *Ulla–Maija, Inc. v. Kivimaki*, 2003 WL 169777, at *4 (S.D.N.Y. Jan. 23, 2003) (internal quotation marks and citation omitted); *see also G-I Holdings, Inc. v. Baron & Budd*, 238 F. Supp. 2d 521, 555 (S.D.N.Y. 2002) ("[A]llegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones."); *Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136, 144 (E.D.N.Y. 1987) ("A motion to strike will be granted if the disputed matter is irrelevant 'under any state of facts which could be proved in support' of the claims being advanced." (quoting *Trusthouse Forte, Inc. v. 795 Fifth Avenue Corp.*, 1981 WL 1113 (S.D.N.Y. Aug. 31, 1981))).

Paragraphs 17–20 relate to the alleged Edison Final-Payment Fraud scheme. Paragraph 17 details this scheme and Paragraphs 18–20 provide additional facts to support the Plaintiff's allegations about the existence of the scheme.  SAC ¶¶ 17–20.  Although, as Plaintiff's acknowledge, the allegations are particularly relevant to Plaintiff's fraud-based claims, the Court cannot say at this time that they have no relevance to the remaining two claims.  In particular, these allegations could be relevant to Plaintiff's tortious interference with contract

claim because they could be relevant to the Edison Defendants' intentional inducement of UA Builders' breach or to the existence of an illegal or wrongful act in 2020.  Paragraphs 17–20 thus cannot be said to have "no real bearing on the case" at this point.  *G-I Holdings, Inc*, 238 F. Supp. 2d at 555.

The Court thus denies the Edison Defendants' motion to strike Paragraphs 17–20 of the SAC.

## CONCLUSION

The Edison Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  The UA Builders' motion to dismiss is GRANTED.  The Edison Defendants' motion to strike is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 55 and 57.


SO ORDERED.


Dated: October 28, 2022
       New York, New York                      _____
                                                       LEWIS J. LIMAN
                                                 United States District Judge